**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

NATIONAL RAILROAD PASSENGER                    :
CORPORATION,                                    :
                                               :
                            Plaintiff,         :
                                               :
            v.                                  :
                                               :
ARCH SPECIALTY INSURANCE COMPANY;              :
ASPEN SPECIALTY INSURANCE COMPANY;             :   14 Civ. 7510 (JSR)
COMMONWEALTH INSURANCE COMPANY;                :
FEDERAL INSURANCE COMPANY; LEXINGTON           :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE         :
INSURANCE COMPANY; CERTAIN                      :
UNDERWRITERS AT LLOYD'S OF LONDON and          :
CERTAIN LONDON MARKET COMPANIES                 :
Subscribing to Policy Nos. 507/N11NA08240,     :
507/N11NA08241, 507/N11NA08242,                :
507/N11NA08244, 507/N11NA08244,                :
507/N11NA08245 and GEP 2944; MAIDEN            :
SPECIALTY INSURANCE COMPANY; MAXUM             :
INDEMNITY COMPANY; NAVIGATORS                   :
INSURANCE COMPANY; PARTNER                      :
REINSURANCE EUROPE plc; RSUI INDEMNITY         :
COMPANY; SCOR GLOBAL P&C SE; STEADFAST         :
INSURANCE COMPANY; TORUS SPECIALTY             :
INSURANCE COMPANY; and WESTPORT                :
INSURANCE CORPORATION,                          :
                                               :
                            Defendants.         :
                                               :
------------------------------------------------------------------------x

## MAXUM INDEMNITY COMPANY COMPANY'S ANSWER AND ADDITIONAL/AFFIRMATIVE DEFENSES

Maxum Indemnity Company ("Maxum"), by its undersigned attorneys, hereby answers and asserts the following defenses to the Complaint filed by Plaintiff National Railroad Passenger Corporation ("Plaintiff" or "Amtrak").

Maxum denies each and every allegation in the Complaint not expressly admitted herein.

To the extent allegations are directed at other defendants, no response is required and, to the extent a response is deemed required, Maxum states that it lacks knowledge or information

46054156_6

sufficient to form a belief as to the truth or falsity of the allegations directed at other defendants and, based thereon, denies such allegations.

Maxum's response to each of the numbered paragraphs of the Complaint is as follows:

## AS TO "PRELIMINARY STATEMENT"

1.      Maxum admits that this action relates to disputed coverage obligations under a policy issued by Maxum (herein, the "Policy").  Maxum responds by incorporating the terms, conditions, limitations and exclusions of the Policy, and denies any allegation inconsistent with the Policy or its terms, conditions, limitations and exclusions.  Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 1 relating to Policies not issued by Maxum.

2.      There are no factual allegations in Paragraph 2 that require a response from Maxum. To the extent a response is deemed to be required, Maxum admits that Amtrak seeks relief in the form of declarations and determinations and denies that Amtrak is entitled to the relief it seeks.

3.      Maxum admits that Sandy made landfall on October 29, 2012, causing property damage in states including New York and New Jersey.  Maxum further admits that October 29, 2012 was during the December 1, 2011 to December 1, 2012 policy period of Maxum's Policy. Maxum denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 3, including but not limited to those relating to policies not issued by Maxum.

4.      Maxum admits that Sandy caused damage to certain Amtrak property, and that certain of that property is on the route referred to by Amtrak as the Northeast Corridor.  Maxum denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 4.

5.      Maxum admits that Amtrak shut down a portion of its operations on October 29, 2012 and that there were service limitations thereafter, and that Amtrak has submitted claims for business interruption and extra expense losses.   Responding further, Maxum incorporates the Policy's terms, conditions, limitations and exclusions as regards the scope of coverage for business interruption and extra expense and denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 5.

6.      Maxum admits that Amtrak sustained certain limited damage as a result of wind. Responding further, on information and belief, the total amount of such damage is less than $1 million.  Maxum denies the remaining allegations in Paragraph 6.

7.      Maxum admits that during Sandy, flood water entered portions of: East River Tunnel, Line 1 tube; East River Tunnel, Line 2 tube; North River Tunnel, North tube; and North River Tunnel, South tube.  To the extent Amtrak alleges in Paragraph 7 that the inundation of these tunnel tubes was not flood, Maxum denies that allegation and incorporates the Policy's terms, conditions, limitations and exclusions.  Maxum denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 7.

8.      Maxum admits that during Sandy, flood water entered portions of: East River Tunnel, Line 1 tube; East River Tunnel, Line 2 tube; North River Tunnel, North tube; and North River Tunnel, South tube and that the Line 3 tube and Line 4 tube of the East River Tunnel did not experience flooding.  Responding further, Maxum admits that there are ventilation and/or egress shafts and other components that are associated with what Amtrak refers to as the East River Tunnel and North River Tunnel.  Maxum denies any remaining allegations in Paragraph 8.

9.      Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 9.

10.     Maxum admits that each of the tunnel tubes contains so-called "bench wall" and/or "bench duct" constructed principally of concrete (with reinforcing steel in certain locations), and which houses certain cables, wires and other equipment.  Maxum denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 10.

11.     Maxum admits that flooding in the tunnels caused certain damage to the mechanical and electrical equipment, including signal and power equipment.  Maxum responds further, on information and belief, that underlying policies of insurance have paid and/or offered to pay the insured damage Amtrak sustained to mechanical and electrical equipment.  Maxum denies any remaining allegations in Paragraph 11.

12.     Maxum admits that the water was removed from each flooded tube of the ERT and NRT and denies knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 12.

13.     Maxum denies the allegations in Paragraph 13 and, responding further, alleges that to the extent any elevated levels of chlorides and sulfates were present in the tunnels, such conditions could have been addressed by power-washing, a step Amtrak elected not to perform.

14.     Maxum denies the allegations in Paragraph 14 and, responding further, alleges that to the extent any elevated levels of chlorides and sulfates were present in the tunnels, such conditions could have been addressed by power-washing, a step Amtrak elected not to perform.

15.     Maxum admits that Amtrak provided a "Notice of Potential Claim or Loss for Hurricane Sandy and related events" to its broker on or about November 2, 2012, and admits that Amtrak engaged Goodman, Gable & Gould as public adjuster.  Responding further, Maxum denies any remaining allegations in Paragraph 15.

16.     Maxum admits that it engaged the independent adjusting firm of York International ("York").  Responding further, Maxum admits that York has provided to Amtrak Requests for Information and requests for inspections, and that Amtrak has provided responses to certain of those requests, including certain inspections, although many requests remain outstanding.  Maxum denies any remaining allegations in Paragraph 16.

17.     Maxum denies the allegations contained in Paragraph 17 of the Complaint, except admits that underlying insurers have paid Amtrak $30,000,000, net of a $10,000,000 deductible, for those parts of Amtrak's claim that Amtrak has been able to support with verifiable information, and admits that no further payments have been made by underlying insurers to Amtrak because Amtrak declined further payment despite underlying insurers' offers to pay certain additional sums.

18.     Maxum denies the allegations contained in Paragraph 18 of the Complaint, except admits that Amtrak has not submitted verified support for any insured losses in excess of the amounts already paid or offered to be paid, that Amtrak is not entitled to flood coverage in excess of the $125,000,000 sublimit, that Plaintiff's Cat 90-Sandy loss constitutes one occurrence under Maxum's Policy, and Plaintiff's flood loss is subject to the flood Program Limits of Insurance, which has a $125,000,000 sublimit of liability for flood, and refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations, and refers all questions of law to the Court.

19.     Maxum denies the allegations contained in Paragraph 19 of the Complaint and refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations.

20.     Maxum admits that there is an active dispute regarding the application of certain provisions of the Policy to Amtrak's Sandy claim that is susceptible to resolution by this Court and denies the remaining allegations in Paragraph 20.

21.     Maxum denies the allegations in Paragraph 21.

## AS TO "PARTIES"

22.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 22.

23.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 23, and, responding further, states that ACE Bermuda Insurance, Ltd. was voluntarily dismissed without prejudice from this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

24.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 24.

25.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 25.

26.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 26.

27.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 27.

28.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 28.

29.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 29.

30.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 30.

31.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 31.

32.     Maxum admits the allegations in Paragraph 32.

33.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 33.

34.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 34.

35.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 35.

36.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 36.

37.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 37.

38.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 38.

39.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 39.

## AS TO "JURISDICTION AND VENUE"

40.     The Paragraph contains legal arguments and conclusions to which a response is not required.  To the extent a response is required, Maxum admits its principal place of business is not located in Washington D.C., and the disputed claim amount exceeds $75,000.  Maxum denies

knowledge or information sufficient to form a belief with respect to the remaining allegations in Paragraph 40.

41.     Maxum admits that venue lies in this district.

42.     Maxum admits that personal jurisdiction is proper in New York as to Maxum.

## AS TO "BACKGROUND"

## AS TO "THE INSURANCE POLICIES"

43.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 43 and, responding further, states ACE Bermuda Insurance, Ltd. was voluntarily dismissed without prejudice from this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i).

44.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 44.

45.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 45.

46.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 46.

47.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 47.

48.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 48.

49.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 49.

50.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 50.

51.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 51.

52.     Maxum denies the allegations contained in Paragraph 52 of the Complaint, and denies that the policy attached as Exhibit 19 is a complete and accurate copy of the Policy, except admits that it issued the Maxum Policy to Amtrak, and refers the Court to the issued Maxum Policy for its terms, conditions, exclusions, endorsements, and limitations.

53.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 53.

54.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 54.

55.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 55.

56.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 56.

57.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 57.

58.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 58.

59.     Maxum denies knowledge or information sufficient to form a belief with respect to the allegations in Paragraph 59.

60.     Maxum admits that the Policies are all based on a common manuscript form drafted by Amtrak and/or its brokers and provided to each of the insurers by Amtrak's broker, denies that the Policy issued by Maxum is identical and incorporates herein the full terms, conditions,

limitations and exclusions of the Policy it issued.  Maxum denies any remaining allegations in Paragraph 60.

61.     Maxum admits that, subject to their full terms, conditions, limitations and exclusions, the Policies insure against risk of direct physical loss or damage and, responding further, incorporates the full terms, conditions, limitations and exclusions of the Policies.  Maxum denies any remaining allegations in Paragraph 61.

62.     Maxum admits that, subject to the full terms, conditions, limitations and exclusions, Amtrak's first-party property insurance policies collectively provide up to $675,000,000 in limits per occurrence, subject to a program sublimit of $125,000,000 per occurrence and in the annual aggregate for flood, and incorporates the full terms, conditions, limitations and exclusions of the Policies.  Maxum denies any remaining allegations in Paragraph 62.

63.     Maxum admits that the quoted words appear within the occurrence definition in the Policy issued by Maxum, denies that there is any coverage under the Policy for "indirect" losses, as the "PERILS INSURED AGAINST" are "all risk of direct physical loss of or damage to property described herein . . .", and, responding further, incorporates the full terms, conditions, limitations and exclusions of the Policy.  Maxum denies any remaining allegations in Paragraph 63.

64.     Maxum admits that the quoted words appear within the Valuation section of the Policy issued by Maxum at ¶12.B.1 as respects adjustment of loss insured against for buildings, structures, fixtures, machinery and equipment, denies any remaining allegations in Paragraph 64 and, responding further, incorporates the full terms, conditions, limitations and exclusions of the Policy.

65.     Maxum admits that the words "cost of new units of like kind and quality as of the date of replacement" appear in the Valuation section of the Policy at ¶12.B.6(A), denies that the excerpt quoted in Paragraph 65 or the excerpt quoted in Paragraph 64 (above) can be read in insolation from the rest of the contracts, denies any remaining allegations in Paragraph 65 and, responding further, incorporates the full terms, conditions, limitations and exclusions of the Policy.

66.     Maxum denies the allegations contained in Paragraph 66 of the Complaint as to it, except admits that Maxum's Policy provides certain time-element coverages, refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations, refers all questions of law to the Court, and denies knowledge or information sufficient to form a belief as to the truth of the allegations concerning any insurance policies other than Maxum's Policy and as to the truth of the allegations contained in the last two sentences of Paragraph 66 of the Complaint.

67.     Maxum admits that there is a program sublimit for flood, admits that the Policy includes a flood definition, and denies the allegation in Paragraph 67 that the flood sublimit does not encompass wind-driven storm surge.  Responding further, Maxum alleges that the inundation of the East River Tunnel tubes, North River Tunnel tubes and other Amtrak property falls squarely within the definition of flood in the Policy, and incorporates the full terms, conditions, limitations and exclusions of the Policy as respects flood.  Maxum denies any remaining allegations in Paragraph 67.

68.     Maxum admits that the quoted language appears in the Policy in the section "LIMITS OF LIABILITY', denies that any substantial portion of Amtrak's losses are properly categorized as "ensuing loss or damage not otherwise excluded herein", incorporates the full terms, conditions, limitations and exclusions of the Policy, and denies the remaining allegations in Paragraph 68.

-11-

69.     Maxum admits that the Policy provides for partial payment(s) of undisputed estimates of loss or damage, incorporates the full terms, conditions, limitations and exclusions of the Policy and denies any remaining allegations in Paragraph 69.

70.     Maxum admits that the Policy provides for partial payment(s) of undisputed estimates of loss or damage, incorporates the full terms, conditions, limitations and exclusions of the Policy, and denies any remaining allegations contained in Paragraph 70.

71.     Maxum admits that the policy form prepared by Amtrak and/or its brokers contains a provision called "Policy Authors," which states: "Regardless of who may have drafted or prepared this policy, or any portions thereof, the provisions contained herein shall be deemed to have been authored by this Company."  Maxum denies any remaining allegations in Paragraph 71.

72.     Maxum avers that Paragraph 72 is a legal argument to which no response is required.  To the extent a response is deemed required, Maxum denies that it (or any other insurer) drafted the policy form in which the Policy Authors clause appears as that form was drafted by Amtrak and/or its brokers, denies that Amtrak is entitled to the benefit of *contra proferentem* in application of policy terms in the form drafted by Amtrak and/or its brokers, and denies any remaining allegations in Paragraph 72.

## AS TO "SUPERSTORM SANDY"

73.     Maxum admits that on or about October 22, 2012, the National Weather Center issued a Tropical Storm Watch for a storm that was, at that time, moving through the Caribbean and denies knowledge or information sufficient to form a belief as to any remaining allegations in Paragraph 73.

74.     Maxum admits that the storm that was named "Sandy" moved parallel to the coast of the United States for a period of time before turning towards land and denies knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 74.

75.     Maxum admits that the storm known as Sandy made landfall on October 29, 2012 near Brigantine, New Jersey and, responding further, admits that October 29, 2012 was during the policy period of the Policy.  Maxum denies any remaining allegations in Paragraph 75.

76.     Maxum admits that there was flooding during Sandy in the New York metropolitan area and denies any remaining allegations in Paragraph 76.

77.     Maxum admits that there was flooding during Sandy in the New York metropolitan area and denies knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 77.

## AS TO "AMTRAK'S INSURANCE CLAIM"

78.     Maxum denies the allegations contained in Paragraph 78 of the Complaint, except admits that Amtrak provided a "Notice of Potential Claim or Loss for Hurricane Sandy and related events" to its broker on or about November 2, 2012, and that partial interim payments have been made to Amtrak to the extent that Amtrak has supported parts of its claim with verifiable information.

79.     Maxum denies the allegations contained in Paragraph 79 of the Complaint.

80.     Maxum denies the allegations contained in Paragraph 80 of the Complaint, except admits that Amtrak sustained certain property damage and business income losses as a result of flooding.

81.     Maxum denies the allegations contained in Paragraph 81 of the Complaint, except admits that Amtrak sustained certain property damage requiring repair and incurred costs to remove flood waters from certain tubes within the NRT and ERT.

82.     Maxum denies the allegations in Paragraph 82.

83.     Maxum denies the allegations in Paragraph 83.

84.     Maxum denies the allegations in Paragraph 84.

85.     Maxum denies the allegations in Paragraph 85.

86.     Maxum denies the allegations in Paragraph 86.

87.     Maxum denies the allegations contained in Paragraph 87 of the Complaint, except admits that Amtrak's public adjuster has worked with Maxum's independent loss adjuster in connection with the adjustment and calculation of Amtrak's claim subject at all times to Maxum's full reservation of rights.

88.     Maxum admits that Amtrak has provided certain access for inspections and certain documentation and information, denies that the responses provided are complete, and denies any remaining allegations in Paragraph 88.

89.     Maxum denies the allegations contained in Paragraph 89 of the Complaint, except admits that Amtrak claimed that it had sustained $54,000,000 in repair costs and other loss and damage, and that its adjuster sent Amtrak an Interim and Partial Proof of Loss in the amount of $10,000,000 in July 2013, advised Amtrak that its agreed interim supported losses were $20,000,000, and that Amtrak would be paid $10,000,000, net of the $10,000,000 per occurrence deductible.

90.     Maxum denies the allegations contained in Paragraph 90 of the Complaint, except admits that in July 2013 Amtrak submitted a Proof of Loss, and underlying insurers paid to Amtrak their share of the $10,000,000 interim payment, net of the $10,000,000 per occurrence deductible.

91.     Maxum admits that, from time to time, Amtrak's public adjuster sent certain correspondence styled as "submissions", denies that the "submissions" properly documented Amtrak's claim, and denies any remaining allegations in Paragraph 91.

92.     Maxum denies the allegations contained in Paragraph 92 of the Complaint, except admits that Amtrak signed two additional Proofs of Loss, and that underlying insurers paid Amtrak their shares of $10,000,000 in December 2013 and $10,000,000 in March 2014.

93.     Maxum denies the allegations contained in Paragraph 93 of the Complaint, except admits that underlying insurers offered to pay additional sums to Amtrak, which Amtrak declined to accept, and no further payments have been made to Amtrak because Amtrak declined further payment despite offers to pay certain additional sums.

94.     Maxum denies the allegations contained in Paragraph 94 of the Complaint, except admits that in September 2013 Amtrak provided Maxum with a preliminary estimate of its total losses without sufficient verifiable information to support the estimate.

95.     Maxum denies the allegations contained in Paragraph 95 of the Complaint, except admits that Maxum, via the York independent adjuster, sent Amtrak a reservation of rights letter on October 24, 2013, and Maxum refers the Court to the October 24, 2013 reservation of rights letter for its content.

96.     Maxum admits that Amtrak indicated for the first time in or about June 2014 that it had retained an engineering firm named HNTB, denies that Amtrak provided information regarding the scope of HNTB's work, denies that Amtrak provided access to HNTB

representatives or their testing activities at any point before the Complaint was filed, denies that Amtrak provided any report from HNTB at any point before the Complaint was filed, denies that Amtrak has provided the data and information used by HNTB in preparing the report HNTB issued on or about September 18, 2014 and denies and remaining allegations in Paragraph 96.

97.     Maxum admits that Amtrak has continually shifted the amount and components of its claim, admits Amtrak did so again after the HTNB report was issued, admits that Amtrak has recently doubled its claim (and then some) to more than $1.1 billion, and denies any remaining allegations in Paragraph 97.

98.     Maxum admits that York issued correspondence on July 22, 2014, the contents of which speak for itself, and denies any remaining allegations in Paragraph 98.

99.     Maxum denies the allegations contained in Paragraph 99 of the Complaint, except admits that Amtrak has not agreed to sign the Proof of Loss that underlying insurers sent on July 22, 2014, and avers that Amtrak has declined to accept certain additional sums.

## AS TO "A JUSTICIABLE CASE AND CONTROVERSY"

100.    Paragraph 100 is a legal conclusion and, as such, no answer is required by Maxum. To the extent an answer is deemed necessary, Maxum admits that there is a justiciable case and controversy, denies that Amtrak is entitled to the declarations and relief it seeks, and denies any remaining allegations in Paragraph 100.

101.    Maxum admits that the quoted words appear within the occurrence definition in the Policy issued by Maxum, denies that there is any coverage under the Policy for "indirect" losses, as the "PERILS INSURED AGAINST" are "all risk of direct physical loss of or damage to property described herein . . .", and, responding further, incorporates the full terms, conditions,

limitations and exclusions of the Policy.  Maxum denies any remaining allegations in Paragraph 101.

102.    Maxum denies each and every allegation in Paragraph 102 and, responding further, incorporates the terms, conditions, limitations and exclusions of the Policy and further alleges that, despite requests from its insurers, Amtrak repeatedly refused to identify whether it was claiming more than one occurrence and, if so, on what basis, ultimately claiming only after it filed the instant lawsuit that it is claiming that its Sandy loss is three separate occurrences.  Maxum denies any remaining allegations in Paragraph 102.

103.    Maxum denies the allegations contained in Paragraph 103 of the Complaint, except admits that a justiciable controversy exists concerning the applicability of the flood sublimit and the Program sublimit, that Maxum's position is that Amtrak's claimed loss constitutes a single "Occurrence" under the Policy and that the flood sublimit in the Policy applies to the loss.  Maxum refers all questions of law to the Court, refers the Court to the terms, conditions, exclusions, endorsements and limitations of the Policy and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 103 of the Complaint concerning insurance policies other than Maxum's Policy.

104.    Maxum admits that there is a definition of flood in the Policy, denies the allegation that the definitions of flood "do not include storm surge or wind-driven waves within their scope", denies that the flood sublimit "establishes coverage", denies any remaining allegations in Paragraph 104 and, responding further, incorporates the terms, conditions, limitations and exclusions of the Policy.

105.    The allegations of Paragraph 105 state a legal conclusion and, as such, no answer is required by Maxum.  To the extent an answer is deemed necessary, Maxum admits that there is

an active dispute regarding certain provisions in the Policy that is susceptible to judicial resolution, denies that Amtrak is entitled to the declarations and relief it seeks, and denies any remaining allegations in Paragraph 105.

### AS TO FIRST CAUSE OF ACTION (DECLARATORY JUDGMENT)

106.    Maxum repeats and reincorporates their responses to the allegations set forth in Paragraphs 1 to 105 as though fully set forth herein.

107.    Maxum admits that there is a justiciable case and controversy regarding the applicability of certain provisions in the Policy to Amtrak's Sandy claim, denies that Amtrak is entitled to the declarations and relief it seeks and denies any remaining allegations in Paragraph 107.

108.    Maxum denies the allegations in Paragraph 108.

109.    Maxum denies the allegations in Paragraph 109.

110.    Maxum denies the allegations in Paragraph 110.

111.    Maxum denies the allegations in Paragraph 111.

112.    Maxum admits that it has reserved its rights on the basis of the terms, conditions, limitations and exclusions in the Policy, denies the remaining allegations in Paragraph 112, and, responding further, incorporates the terms, conditions, limitations and exclusions in the Policy.

113.    The allegations of Paragraph 113 state mixed conclusions of law and fact, and as such, no answer is required by Maxum.  To the extent an answer be deemed necessary, Maxum denies the allegations in Paragraph 113 as written.

114.    The allegations of Paragraph 114 state mixed conclusions of law and fact, and as such, no answer is required by Maxum.  To the extent an answer be deemed necessary, Maxum

admits that the Plaintiff seeks certain judicial declarations, but denies the allegations in Paragraph 114 as written.

### AS TO SECOND CAUSE OF ACTION (BREACH OF CONTRACT)

115.    Maxum repeats and reincorporates its responses to the allegations set forth in Paragraphs 1 to 114 as though fully set forth herein.

116.    Maxum denies the allegations contained in Paragraph 116 of the Complaint as to it, except admits that the Policy is a valid and enforceable contract, refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations, refers all questions of law to the Court, and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 116 of the Complaint concerning insurance policies other than its Policy.

117.    Maxum denies the allegations contained in Paragraph 117 of the Complaint,  except admits that certain of Amtrak's claimed losses have been verified and determined to be covered under the Policy and other of Amtrak's claimed losses have not.  Maxum refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations, refers all questions of law to the Court, and denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 117 of the Complaint concerning insurance policies other than its Policy.

118.    Maxum denies the allegations in Paragraph 118.

119.    Maxum denies the allegations contained in Paragraph 119 of the Complaint as to it, denies that the allegations in Paragraph 119 fully describe the partial payment provisions of the Policy, refers the Court to the Policy for its terms, conditions, exclusions, endorsements, and limitations, and refers all questions of law to the Court and denies knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 119 of the Complaint concerning insurance policies other than its Policy.

120.    Maxum denies the allegations contained in Paragraph 120 of the Complaint, except admits that Amtrak submitted an estimate of approximately $504,000,000 in September 2013.

121.    Maxum denies the allegations in Paragraph 121.

122.    Maxum denies the allegations contained in Paragraph 122 of the Complaint, except admits that to date underlying insurers have paid Amtrak $30,000,000 in partial interim payments, and avers that Amtrak has declined insurers' offers for further payment.

123.    Maxum denies the allegations contained in Paragraph 123 of the Complaint, except admits that to date underlying insurers have paid Amtrak $30,000,000 in partial interim payments, and avers that Amtrak has declined insurers' offers for further payment.

124.    Maxum denies the allegations contained in Paragraph 124 of the Complaint, except admits that to date underlying insurers have paid Amtrak $30,000,000 in partial interim payments, and avers that Amtrak has declined insurers' offers for further payment.

125.    Maxum denies the allegations contained in Paragraph 125 of the Complaint, except admits that Amtrak has declined underlying insurers' offers for further payment.

126.    Maxum denies each and every allegation in Paragraph 126.

127.    Maxum denies the allegations of breach, denies that Amtrak is entitled to any damages under the Policy, denies that Amtrak is entitled to any consequential damages and/or attorneys' fees and costs, denies that Amtrak is entitled to any of the relief it seeks and denies any remaining allegations in Paragraph 127 and/or the prayer for judgment which follows.

## ADDITIONAL/AFFIRMATIVE DEFENSES

Without assuming any burden of proof that properly sits with another party, Maxum asserts the following additional defenses:

## FIRST DEFENSE

The Complaint fails in whole or in part to state a claim on which relief can be granted to Amtrak, and Maxum incorporates herein Insurers' Partial Motion to Dismiss (Consequential Damages).

## SECOND DEFENSE

Amtrak fails to satisfy conditions precedent and to meet its other obligations necessary to establish and support a valid claim under the Policy.

## THIRD DEFENSE

Amtrak fails to bring a claim in whole or in part under the terms, conditions, limitations and exclusions of the Policy, which are expressly incorporated herein as if recited in full, and include but are not limited to provisions which (i) define flood; (ii) incorporate a "program limit" for flood; (iii) define "OCCURRENCE"; (iv) provide under "PERILS EXCLUDED" that "This policy does not insure . . .   B. against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material, or faulty workmanship . . . D. against ordinary wear and tear, or gradual deterioration unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage . . E. against normal settling or normal shrinkage of walls, floors, or ceilings unless loss or damage not otherwise excluded ensues and then this policy shall cover for such ensuing loss or damage," all as more fully set out in the Policy, which must be read as a whole.

## FOURTH DEFENSE

Amtrak has failed, in whole or in part, to properly mitigate, restore and/or repair its losses under the Policy and, accordingly, Plaintiff's claim for such losses is barred.

## FIFTH DEFENSE

Amtrak is barred by the doctrines of waiver, estoppel and/or laches from asserting some or all of the claims made in the Complaint.

## SIXTH DEFENSE

The doctrine of "unclean hands" bars any equitable relief Amtrak seeks in the Complaint.

## SEVENTH DEFENSE

On information and belief, Amtrak has sought or considered seeking to recover for the same losses alleged here through other claims; Amtrak is estopped from seeking any double recovery with respect to its alleged losses.

## EIGHTH DEFENSE

Maxum reserves the right to raise any other additional defense that cannot now be reasonably determined or which may become available during future proceedings in this case.

WHEREFORE, having fully answered Plaintiff's Complaint, Maxum asks that judgment be entered against Plaintiff and in favor of Maxum, for its costs and expenses incurred herein, and for any such other and further relief as the Court deems just and appropriate.

Dated: New York, New York
        December 5, 2014

**BRUCKMAN & VICTORY, L.L.P.**


By:_____/s/_____.
    Arjang Victory (victory@bvlaw.net)
    Timothy G. Church (church@bvlaw.net)
    420 Lexington Avenue, Suite 1621
    New York, NY 10170
    Tel: (212) 850-8500

*Attorneys for Defendants Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Federal Insurance Company, Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. 507/Nl1NA08240 and 507/N11NA08241, Maxum Indemnity Company, Navigators Insurance Company, and RSUI Indemnity Company.*