UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL RAILROAD PASSENGER CORPORATION,

                        Plaintiff,

vs.

ARCH SPECIALTY INSURANCE COMPANY;
ASPEN SPECIALTY INSURANCE COMPANY;
COMMONWEALTH INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY;
LIBERTY MUTUAL FIRE INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON
and CERTAIN LONDON MARKET INSURANCE
COMPANIES subscribing to Policy Nos.
507/N11NA08240, 507/N11NA08241, 507/N11NA08242,
507/N11NA08244, 507/N11NA08244, 507/N11NA08245
and GEP 2944;
MAIDEN SPECIALTY INSURANCE COMPANY;
MAXUM INDEMNITY COMPANY;
NAVIGATORS INSURANCE COMPANY;
PARTNER REINSURANCE EUROPE plc;
RSUI INDEMNITY COMPANY;
STEADFAST INSURANCE COMPANY;
TORUS SPECIALTY INSURANCE COMPANY; and
WESTPORT INSURANCE CORPORATION,

                        Defendants.

Civ. Action No.:14-cv-7510 (JSR)

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING THE OCCURRENCE ENDORSEMENT**

1

dcdocs-89435.2

Pursuant to Rule 56.1(a) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Plaintiff, National Passenger Railroad Corporation ("Amtrak") sets forth the following statement of undisputed material facts in support of its Motion for Partial Summary Judgment Regarding the Occurrence Endorsement. There is no genuine issue to be tried regarding the following material facts:

1. Amtrak is a government-owned entity created under the auspices of the Rail Passenger Services Act of 1970. *See* Annual Report Fiscal Year 2012, copy attached as Ex. 1 to the Affidavit of Rhonda D. Orin (the "Orin Aff."), at p. 5. Congress created Amtrak in 1970 to take over, and independently operate, the nation's intercity rail passenger services. *Id.*

2. For the policy period at issue in this Action, Amtrak purchased a tower of "all-risk" property insurance policies that insured Amtrak's critically important and valuable property. *See* Orin Aff. Ex. 2.

3. Copies of the insurance policies at issue in this Action (the "Policies") are attached to the Orin Aff. as Exs. 3-26.

4. Each of the Policies provides broad coverage for "all risk of direct physical loss of or damage to property described herein . . . except as hereinafter excluded." *See* Orin Aff. Exs. 3-26, at ¶9.

5. Together with other insurance polices that are not at issue in this Action because they call for arbitration of coverage disputes, the Policies provide a total of $675,000,000 in coverage on a "per occurrence" basis – meaning that Amtrak can

collect up to $675,000,000 for each occurrence, as defined in the Policies. *See* Orin Aff. Exs. 2, 3-26.

6. Each of the Policies contains an endorsement that defines "occurrence" as follows:

> Any insured loss or several insured losses *arising directly from* one common cause, event or catastrophe and during the period of this insurance. If such loss or several losses are attributable to several causes in an unbroken chain of causation, the cause which triggered the chain of causation is understood to be the common cause, event or catastrophe. All such loss or losses shall be added up and the result shall be treated as one occurrence irrespective of the period of time or area within which such losses occur. In case of uncertainty over scientific issues, the parties agree to seek expert advice from a neutral and recognized organization.

*See* Orin Aff. Exs. 3-26, at Endorsement No. 9 (emphasis supplied).

7. The Occurrence Endorsement serves the purpose of identifying what types of losses are to be grouped together, or aggregated, under a single set of policy limits. For example, the policy limits of Policy No. 084144000 sold by Lexington Insurance Company ("Lexington") are 28% of $125,000,000. *See* Orin Aff. Ex. 20, at ¶¶1-2. The Lexington policy then provides:

> This Company shall not be liable for more than its proportion [28%] of $125,000,000 in any one occurrence . . .

*See id.* at ¶3. Thus, for each "occurrence," as defined in the policy, Lexington is obligated to pay up to 28% of $125,000,000.

8. The Policies' definition of "occurrence" includes only losses that arise "directly" from one common cause, event or catastrophe. *See* Orin Aff. Exs. 3-26, at Endorsement No. 9.

9. In contrast to the use of the lone word "directly" in the Occurrence Endorsement, other parts of the Policies use the phrase "directly or indirectly." For example:

- Paragraph 10.I excludes coverage for nuclear radiation or radioactive contamination, "whether such loss be *direct or indirect, proximate or remote;*"

- Endorsement No. 1 excludes "Loss of, damage to or loss of use of property *directly or indirectly* resulting from sub-surface operations of the Insured . . .";

- Endorsement No. 2 excludes "Damage or Consequential Loss *directly or indirectly* caused by, consisting of, or arising from the failure of any computer, data processing equipment, media microchip, operating system microprocessors (computer chip), integrated circuit or similar device, or any computer software, whether the property of the Insured or not, and whether occurring before, during or after the year 2000 . . . . Such Damage or Consequential Loss described in A, B, or C above, is excluded regardless of any other cause that contributed concurrently or in any other sequence";

- Endorsement No. 3 excludes "Damage or Consequential Loss *directly or indirectly* caused by, consisting of, or arising from: 1. Any functioning or malfunctioning or the internet or similar facility. . . ";

- Endorsement No. 7 excludes "loss, damage, cost or expense of whatsoever nature *directly or indirectly* caused by, consisting of, or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto"; and

- Endorsement No. 12 excludes "loss, damage, cost or expense of whatsoever nature *directly or indirectly* caused by, consisting of, or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss."

*See, e.g.,* Orin Aff. Ex. 20, at Endorsement Nos. 1, 2, 3, 7, 12 and ¶10.I (emphasis supplied).

10. Other subsections of the Policies use the term "directly" by itself, just like the Occurrence Endorsement. For example:

4

- Business interruption coverage for interruption of research and development activities is limited to "the actual loss sustained of the continuing fixed charges and expenses, including Ordinary Payroll, *directly* attributable to such research and development activities"; and

- Rental value coverage is limited to "loss sustained by the Insured resulting *directly* from loss, damage, or destruction covered herein during the term of this policy to real and personal property as described in Clause 7.A. but not exceeding the reduction in rental value charges and expenses which do not necessarily continue."

*See, e.g.,* Orin Aff. Ex. 20, at ¶¶7.B(3), 7.D(1) (emphasis supplied).

11. Each of the Policies contains a flood sublimit that applies only to losses that arise specifically "with respect to the peril[ ] of flood." That sublimit, however, does not encompass losses that ensue therefrom:

> Even if the peril of flood or earthquake is the predominant cause of loss or damage, *any ensuing loss or damage not otherwise excluded herein shall not be subject to any sublimits* or aggregates specified in this Clause B;

*See* Orin Aff. Exs. 3-26, at ¶3.B (emphasis supplied).

12. All of the Policies contain an express provision called "Policy Authors" which states:

> Regardless of who may have drafted or prepared this policy, or any portions thereof, the provisions contained herein shall be deemed to have been authored by this [Insurance] Company.

*See* Orin Aff. Exs. 3-26, at ¶39. Some of the Policies delete this provision by endorsement.[1]

---

[1] *See* Lexington Policy Nos. 084144000 and 084144282 (Orin Aff. Exs. 20-21, at Endorsement No. 13); Liberty Mutual Insurance Company Policy No. YS2-L9L-447676-011 (Orin Aff. Ex. 22, at Endorsement No. 12); Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies (Lloyd's) subscribing to Policy Nos. 507/N11NA08240, 507/N11NA08241 and 507/N11NA08242 (Orin Aff. Exs. 23-25); and Westport Policy No. 31-3-74264 (Orin Aff. Ex. 26, at Endorsement 13).

5

Dated: December 18, 2014

By: /s/ _____
Rhonda D. Orin, Esq. (RO-0359)
rorin@andersonkill.com
Daniel J. Healy, Esq. (DH-7396)
dhealy@andersonkill.com
Marshall Gilinsky, Esq. (MG-8398)
mgilinsky@andersonkill.com
**ANDERSON KILL, L.L.P.**
1717 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-416-6500

Finley T. Harckham, Esq. (FH-8219)
fharckham@andersonkill.com
**ANDERSON KILL, P.C.**
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

*Attorneys for Plaintiff*

6

dcdocs-89435.2