UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER        :
CORPORATION,        :
       :
                          Plaintiff,        :
       :
                          v.        :
       :
ARCH SPECIALTY INSURANCE COMPANY;        :   14 Civ. 7510 (JSR)
ASPEN SPECIALTY INSURANCE COMPANY;        :
COMMONWEALTH INSURANCE COMPANY;        :
FEDERAL INSURANCE COMPANY; LEXINGTON        :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE        :
INSURANCE COMPANY; CERTAIN        :
UNDERWRITERS AT LLOYD'S OF LONDON and        :
CERTAIN LONDON MARKET COMPANIES        :
Subscribing to Policy Nos.  507/N11NA08240,        :
507/N11NA08241, 507/N11NA08242,        :
507/N11NA08244, 507/N11NA08244,        :
507/N11NA08245 and GEP 2944; MAIDEN        :
SPECIALTY INSURANCE COMPANY; MAXUM        :
INDEMNITY COMPANY; NAVIGATORS        :
INSURANCE COMPANY; PARTNER        :
REINSURANCE EUROPE plc; RSUI INDEMNITY        :
COMPANY; STEADFAST INSURANCE COMPANY;        :
TORUS SPECIALTY INSURANCE COMPANY; and        :
WESTPORT INSURANCE CORPORATION,        :
       :
                          Defendants.        :
       :
       :
------------------------------------------------------------------------x

**DEFENDANT-INSURERS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS
(CONSEQUENTIAL DAMAGES)**

# **TABLE OF CONTENTS**

                                                                                                       **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.............................................................................................................................3

I.     AMTRAK'S ALLEGATIONS OF "WRONGFUL DENIAL" OF COVERAGE AND OF BEING "DELUGED" WITH REQUESTS FOR INFORMATION ARE INSUFFICIENT TO SUPPORT ITS DEMAND FOR CONSEQUENTIAL DAMAGES ...................................................................................3

II.    AMTRAK'S DECISION TO FILE SUIT DOES NOT CREATE A BASIS FOR SEEKING CONSEQUENTIAL DAMAGES ...........................................................6

III.   AMTRAK'S SUGGESTION THAT IT SHOULD BE COMPENSATED FOR POTENTIAL THIRD-PARTY LIABILITY IS MERITLESS .................................6

IV.   AMTRAK'S NEW ALLEGATIONS IN ITS AMENDED COMPLAINT EVIDENCE ITS INABILITY TO STATE A CLAIM FOR CONSEQUENTIAL DAMAGES ......................................................................................8

V.    AMTRAK'S "GROUP PLEADING" APPROACH IS A FURTHER INDEPENDENT GROUND ON WHICH THE MOTION MUST BE GRANTED....................................................................................................................9

CONCLUSION........................................................................................................................10

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Appalachian Enters., Inc. v. ePayment Solutions Ltd.*,
  No. 01 Civ. 11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004)..................................10

*Authelet v. Nationwide Mut. Ins. Co.*,
  No. 03-15522, 2008 WL 4771700, at *4 (Sup. Ct., Suffolk Cty. 2008)...................................6

*Bi-Economy v. Harleysville*,
  10 N.Y.3d 187, 191, 192, 193-94 (2008)......................................................................... passim

*Bianchi v. Florists' Mut. Ins. Co.*,
  422 F. App'x 56, 58 (2d Cir. 2011) .........................................................................................5

*Goldmark, Inc. v. Catlin Syndicate Ltd.*,
  No. 09-cv-3876, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) ...................................2, 5

*HM Hotel Properties v. Peerless Indem. Ins. Co.*,
  874 F. Supp. 2d 850, 854 (D. Ariz. 2012) ........................................................................... 8-9

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
  47 N.Y.2d 12, 21 (1979) .........................................................................................................6

*Nicor Intern. Corp. v. El Paso Corp.*,
  292 F. Supp. 2d 1357, 1378 (S.D. Fla. 2003) .........................................................................9

*Orient Overseas Assocs. v. XL Ins. Am.*,
  2014 N.Y. Slip. Op. 30488(U), 2014 WL 840416, at *4 (Sup. Ct., N.Y. Cty. Feb. 26,
  2014) .......................................................................................................................................5

*Panasia Estates, Inc. v. Hudson Ins. Co.*,
  68 A.D.3d 530, 530 (1st Dep't 2009) .................................................................................3, 4

*Panasia Estates v. Hudson Ins.*,
  10 N.Y.3d 200, 203 (2008) .....................................................................................................5

*Thai v. Cayre Grp.*,
  762 F. Supp. 2d 323, 330 (S.D.N.Y. 2010)............................................................................3

**RULES**

Fed. R. Civ. P. 11..........................................................................................................................10

Fed. R. Civ. P. 12(b)(6).................................................................................................................10

Fed. R. Civ. P. 12(b)(7).................................................................................................................10

Fed. R. Civ. P. 19 ............................................................................................................................. 10

Fed. R. Civ. P. 9(g) ........................................................................................................................ 2, 3

**OTHER AUTHORITIES**

Michael Luo, *Fixing Up the Tunnels While the Trains Run*, N.Y. TIMES (June 2, 2004),
    http://www.nytimes.com/2004/06/02/nyregion/fixing-up-the-tunnels-while-the-trains-
    run.html ..................................................................................................................................... 7

Karen Rouse, *Amtrak rail project keeps right on rolling*, THE RECORD (Apr. 20, 2012),
    http://www.northjersey.com/news/amtrak-rail-project-keeps-right-on-rolling-
    1.526282 .................................................................................................................................... 8

Defendant-Insurers respectfully submit this reply memorandum of law in further support of their motion to dismiss Amtrak's Amended Complaint insofar as it demands consequential damages and attorneys' fees and costs, or, in the alternative, for a more definite statement from Amtrak in its pleading as respects its demand.[1]

## PRELIMINARY STATEMENT

In its Opposition to this Motion, Amtrak confirms that its demand for consequential damages and attorneys' fees rests principally on allegations that Insurers (i) have failed to pay Amtrak's full claim for insurance coverage, and (ii) have requested from Amtrak information and inspections. (Opp. Br. at 2.) Notably absent from Amtrak's pleadings (and from its argument in its Opposition) are allegations sufficient to state a claim for consequential damages under New York law and under the federal pleading standard. Amtrak fails to include allegations that describe the unidentified consequential loss Amtrak has purportedly suffered or expects to suffer in any reasonable detail or specificity, and also fails to allege facts to show:

- Amtrak's unidentified consequential losses were "foreseeable" and the "probable" result of a breach as of the time of contracting;
- Amtrak's unidentified consequential losses are "quantifiable" (*i.e.*, losses that can, at some point be quantified, as opposed to, for example, speculative "lost profits" or alleged injury to the emotions of a corporate entity);
- Amtrak's unidentified consequential losses were "proximately caused by the breach" and not some other cause (such as by Amtrak's own negligence in keeping its property in disrepair); and
- Insurers acted in bad faith in handling Amtrak's claim and in not paying the full sum demanded by Amtrak.

---

[1] Defendants renew this motion as against Amtrak's Amended Complaint (attached for ease of reference as an Appendix hereto), which was filed on the same day as Defendants' moving brief in support of this motion. Capitalized terms not otherwise defined herein have the meaning ascribed to them in Defendants' moving brief.

1

*See Bi-Economy v. Harleysville*, 10 N.Y.3d 187, 193-94 (2008) (requiring that consequential damages be foreseeable, probable, quantifiable, proximately caused by breach, and result from bad faith of insurers); *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-cv-3876, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011); *see also* Rule 9(g) (requiring "special" damages be pleaded with particularity).  *See infra*, Section I, pp. 3-5.

As alternatives to properly pleading its demand for consequential damages, Amtrak argues that (i) the decision it made to bring suit (and thereby incur attorneys' fees) or (ii) the speculative potential for third-party liability due to the (long-standing) disrepair of its property should be considered in connection with this Motion.  Neither argument brings Amtrak's pleading within requirements under New York law.  *See infra,* Section II, Section III.

As set out in Insurers' Motion, *Bi-Economy* holds that consequential damages are "special" damages that do not directly flow from a breach of contract and are therefore recoverable only in "limited circumstances." *Id.* at 192.  Subsequent authority from the New York courts is in accord.  Moving Br. at 5-6.  Amtrak urges a directly contrary result, in which a policyholder would be permitted to state a claim for consequential damages whenever its insurance claim is questioned and/or denied in any part.  That is not a plausible reading of New York law on consequential damage demands in insurance coverage cases.

It is telling that Amtrak has been unable to correct its pleading deficiencies through its Amended Complaint, which Amtrak submitted after receiving notice of Insurers' position that Amtrak's demand for consequential damages should be dismissed because Amtrak failed to plead facts supporting that demand.  Instead of pleading additional facts, Amtrak's Amended Complaint adds two sentences alleging that it has not "enjoyed the peace of mind" and "comfort" that it expected to receive when entering into the insurance contracts and the conclusory

assertion that such novel corporate emotional injury claims were "within the contemplation of the parties" at the time of contracting. Such pleading shows only that Amtrak is unable to state a cognizable demand for consequential damages under New York law or the federal pleading standard. *See infra*, Section IV.

# ARGUMENT

Amtrak's pleadings – which nowhere identify Amtrak's alleged consequential losses – fail to satisfy the basic pleading standard under *Iqbal* and *Twombly*. As explained in *Bi-Economy*, "consequential" damages are a type of special damages under New York law, 10 N.Y.3d at 192,[2] and as Amtrak recognizes in its opposition (at 4 n.5), special damages must be pled with "particularity" under Fed. R. Civ. P. 9(g). *See Thai v. Cayre Grp.*, 762 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (special damages "must be pled with sufficient particularity to identify actual losses," requiring, among other things, an "itemized account" of losses). Amtrak's pleadings come nowhere close to satisfying the "particularity" standard of Rule 9(g), despite the fact that it has already had an opportunity to amend in order to address that deficiency.

**I.   AMTRAK'S ALLEGATIONS OF "WRONGFUL DENIAL" OF COVERAGE AND OF BEING "DELUGED" WITH REQUESTS FOR INFORMATION ARE INSUFFICIENT TO SUPPORT ITS DEMAND FOR CONSEQUENTIAL DAMAGES**

In its Opposition, Amtrak cites allegations from its Complaint and Amended Complaint which boil down to assertions that (i) Insurers – who have paid Amtrak tens of millions of dollars with respect to the insurance claim at issue – denied other portions of the claim as outside of the terms and conditions of their policies, and (ii) Insurers requested information and

---

[2] In *Panasia Estates, Inc. v. Hudson Ins. Co.*, 68 A.D.3d 530, 530 (1st Dep't 2009), the Appellate Division stated, without analysis, that the reference to consequential damages as "special" in *Bi-Economy* "was not intended to establish a requirement of specificity in pleading." However, the reference in *Panasia* cannot contradict the clear statement by the Court of Appeals that consequential damages are "special" damages under New York law. Accordingly, Amtrak should be required to plead its alleged consequential damages with Rule 9(g) particularity.

3

inspections – or, as Amtrak colorfully alleges, "deluged" Amtrak with requests for information and inspections – purportedly causing Amtrak "inconvenience" and "divert[ing] resources from its restoration activities." (Opp. Br. at 2-3.)

*Bi-Economy* stands for the proposition that consequential damages are not available in each and every dispute where a policyholder alleges a wrongful denial of insurance coverage. Instead, they are available only in "limited circumstances" where the damages were "foreseeable and probable;" are subject to quantification and not speculative; were proximately caused by an insurer's breach; and such breach was one in which the insurer has not acted in good faith. 10 N.Y.3d at 193-94. Mere allegations that Insurers denied, or even wrongfully denied, a portion of Amtrak's insurance claim do not support a demand for consequential damages. This point is central to the holdings in New York case law following *Bi-Economy*. Moving Br. at 5-6.

Amtrak also offers a slight variation on the "wrongful denial" argument, asserting that Insurers' denial of its claim has prevented Amtrak from making "critical decisions about current and future railroad operations." (Opp. Br. at 2-3.) Amtrak has not explained what "critical" decisions were allegedly impeded, but appears to be arguing that if it had been paid more money by Insurers, it could have used that money to fund future operations, a point which is undoubtedly true in connection with any disputed claim. It remains the case, though, that non-payment of a disputed claim is not a basis for imposition of consequential damages under the requirements set out in the line of cases following *Bi-Economy* and *Panasia*.

Similarly, Amtrak's allegations regarding Insurers' requests for information and inspections are insufficient to support a demand for consequential damages. Under the property insurance policies at issue here, Amtrak is ***obligated*** to provide information concerning its claimed losses in response to requests from Insurers, and to make evidence (*e.g.*, inspections of

4

the property at issue) available.  *See, e.g.*, Arch Specialty Insurance Policy (Amended Compl. Ex. A) ¶ 23 ("Proof of Loss") and ¶ 28 ("Assistance and Cooperation of the Insured").  Such policy provisions and Insurers' requests are entirely consistent with the principle, "well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss," *Bianchi v. Florists' Mut. Ins. Co.*, 422 F. App'x 56, 58 (2d Cir. 2011).  Amtrak cannot seriously contend that special damages are warranted merely because Insurers requested information and inspections – even if those requests were extensive – when it is now seeking from Insurers more than $1.1 billion in alleged losses.  That there would be requests for inspections and records regarding conditions both before and after Sandy is a natural consequence of Amtrak's recently-developed theory: Amtrak asserts it should be entitled to replace – at Insurers' expense – components throughout 100-year-old, poorly-maintained train tunnels running under the Hudson and East Rivers, regardless of whether those components were damaged during Sandy and regardless of whether those components were in a section of the tunnels where flood waters reached.

Though such information and inspection requests are far from the "gamesmanship, harassment and delay" Amtrak claims (Opp. Br. at 2), if the Court were inclined to permit Amtrak to leverage those as a basis for a consequential damages demand, it remains the case that Amtrak has not addressed the other requirements of the *Bi-Economy* line of cases: whether the damages were "foreseeable and probable" at the time of contracting, susceptible to being quantified, and proximately caused by the breach of Insurers acting in bad faith.  *See Bi-Economy Mkt. Inc.*, 10 N.Y.3d at 191, 193-94; *Panasia Estates v. Hudson Ins.*, 10 N.Y.3d 200, 203 (2008); *Orient Overseas Assocs. v. XL Ins. Am.*, 2014 N.Y. Slip. Op. 30488(U), 2014 WL 840416, at *4 (Sup. Ct., N.Y. Cty. Feb. 26, 2014); *Goldmark*, 2011 WL 743568, at *3.

## II.  AMTRAK'S DECISION TO FILE SUIT DOES NOT CREATE A BASIS FOR SEEKING CONSEQUENTIAL DAMAGES

Amtrak's allegation that it suffered consequential loss in the form of attorneys' fees by being required to bring this action also is at odds with the rule of the *Bi-Economy* line of cases that consequential damages are available in only limited circumstances.  *Any* policyholder that brings a lawsuit seeking recovery for alleged wrongful denial of an insurance claim would necessarily incur attorneys' fees in bringing that suit, and it certainly is not the case that prevailing policyholders are, *ipso facto*, entitled to recover their attorneys' fees.  The rule in New York is that an award of attorneys' fees "may not be had in an affirmative action brought by an insured to settle its rights." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 47 N.Y.2d 12, 21 (1979); *see also Authelet v. Nationwide Mut. Ins. Co.*, No. 03-15522, 2008 WL 4771700, at *4 (Sup. Ct., Suffolk Cty. 2008) (rejecting argument that *Bi-Economy* authorizes claim for attorneys' fees as consequential damages).

## III.  AMTRAK'S SUGGESTION THAT IT SHOULD BE COMPENSATED FOR POTENTIAL THIRD-PARTY LIABILITY IS MERITLESS

In its opposition, Amtrak contends, in a footnote, that its demand for consequential damages should not be dismissed because it may seek recovery from Insurers, as a form of consequential damages, of liability it could owe to third-parties.  (Opp. Br. at 6 n.14.)  Amtrak claims that Insurers' failure to pay its claim in the full amount alleged has caused it to be unable to finance "the large-scale repair/replacement projects that it has identified as necessary," leading to "an increased risk of an incident that could give rise to third-party liability or other liability."  Setting aside that Amtrak has never pleaded this point in its Complaint or Amended Complaint but instead raises the point in the form of attorney argument in its brief, Amtrak has not even attempted to suggest how such damages were foreseeable and probable at the time of contracting; quantifiable (and not merely speculative – indeed, Amtrak's Opposition appears to acknowledge

6

that any such claim *is* speculative); or proximately caused by Insurers' purported breach.  Its attempt to sustain its demand for consequential damages on the basis of these speculative damages fails.

Moreover, it is Amtrak – not its 2011-2012 policy year property Insurers – that is responsible for Amtrak's failure to maintain its property over the course of decades, as overwhelming documentation of conditions before Sandy makes plain.  By way of example, hundreds of millions of dollars of Amtrak's $1.1 billion claim relates to replacement of so-called concrete "bench walls" in train tunnels running under the Hudson River and East River.  With regard to those bench walls, a 2004 Senate Report noted:

> In addition to these [security investment] items is the well-documented need to make fire and life-safety improvements in the New York Penn Station tunnels. **Narrow, spiral staircases and *crumbling walls in the existing tunnels* are inadequate to support the evacuation of passengers and ingress by emergency responders in the event of a train accident or tunnel fire**.  Existing ventilation systems in the tunnels cannot remove smoke or heat effectively.

108th Congress, 2d Session, Senate Report 108-278, Rail Security Act of 2004, Report of the Committee on Commerce, Science and Transportation (May 21, 2004) (emphasis added).

Similar bench wall issues were recorded in December 2000:

> Last March we raised concerns about the longstanding fire safety needs in the six North and East River tunnels that Amtrak, as the owner of the tunnels, had not adequately addressed. Narrow, winding, spiral staircases and crumbling benchwalls are inadequate to support the successful evacuation of what could potentially be thousands of passengers in the event of a serious tunnel fire.

Dec. 18, 2000 Letter from Department of Transportation Inspector General to the Honorable Frank Wolf Chairman, Subcommittee on Transportation and Related Agencies, Committee on Appropriations, United States House of Representatives.[3]

---

[3] *See also* Michael Luo, *Fixing Up the Tunnels While the Trains Run*, N.Y. TIMES (June 2, 2004), http://www.nytimes.com/2004/06/02/nyregion/fixing-up-the-tunnels-while-the-trains-run.html ("The light from the lamps casts a pale glow on the crumbling benchwalls.  Metal

7

In short, through this lawsuit, Amtrak seeks to have its 2011-2012 property Insurers foot the bill to repair and renovate tunnels that it has neglected over decades. While that type of claim is not covered under the Policies and will be addressed by Insurers when the parties reach the merits of this dispute, Amtrak's attempt to suggest that Insurers should also be held responsible for as-yet unmade third-party liability claims for some as-yet unknown circumstances arising from their own poor maintenance is precisely the sort of speculative, unquantifiable consequential demand that New York courts reject for failure to state a claim.

## IV. AMTRAK'S NEW ALLEGATIONS IN ITS AMENDED COMPLAINT EVIDENCE ITS INABILITY TO STATE A CLAIM FOR CONSEQUENTIAL DAMAGES

In response to Insurers' motion to dismiss, Amtrak amended its Complaint to assert additional allegations regarding its claim for consequential damages. Those new allegations, which are found solely in paragraph 122 of its Amended Complaint, consist of only two new sentences. In those two sentences, Amtrak suggests that it is entitled to consequential damages – apparently on a theory of corporate emotional distress – specifically:

> Amtrak has not enjoyed the peace of mind that it expected to receive in return for its payment of premiums, or the comfort of knowing that it promptly would be compensated for its losses pursuant to the Policies. Such consequential damages were within the contemplation of the parties herein, at the time the Policies were sold, as natural probable results of a breach of contract. Amended Compl. ¶ 122.

It is nonsense to assert that a corporation has (or could be deprived of) "peace of mind" and "comfort." *See, e.g., HM Hotel Properties v. Peerless Indem. Ins. Co.*, 874 F. Supp. 2d 850,

---

sheets bridge the most serious depressions, but they are clearly in bad shape . . . [Even after contemplated improvements] more than $500 million in work still needs to be done, including repairing the benchwalls and repairing the tunnels themselves, officials said."); Karen Rouse, *Amtrak rail project keeps right on rolling*, THE RECORD (April 20, 2012), http://www.northjersey.com/news/amtrak-rail-project-keeps-right-on-rolling-1.526282 ("Amtrak's existing 100-year-old tunnels . . . have been plagued with recent infrastructure breakdowns that have caused delays and left commuters stranded under the Hudson for hours….").

854 (D. Ariz. 2012) ("[A] corporate plaintiff cannot suffer emotional distress because 'a corporation lacks the cognizant ability to experience emotions.'") (quoting *FDIC v. Hulsey*, 22 F.3d 1472, 1489 (10th Cir. 1994)); *Nicor Intern. Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1378 (S.D. Fla. 2003) ( "[A] corporation is incapable of suffering any emotional distress."). Moreover, Amtrak's conclusory assertion that consequential damages "were within the contemplation of the parties" does nothing to factually support this point. If Amtrak could in good faith have pled any fact allegations supporting its demand for consequential damages, it would have done so in its Amended Complaint. It has not.

Indeed, Amtrak's Amended Complaint serves principally to establish Amtrak's own dilatory tactics. Amtrak has asserted an insurance claim with moving targets, originally claiming amounts that were well below $100 million for more than ten months after the storm, subsequently leaping to an unspecified level above $125 million, then $504 million. It was that $504 million amount that was cited in Amtrak's original Complaint – filed on September 17, 2014, nearly two years after Superstorm Sandy. However, just a few short months later, when it filed its Amended Complaint on December 5, 2014, Amtrak again dramatically revised that number upward, asserting a more-than-two-fold increase of its claim to $1.1 billion. The bulk of Amtrak's purported loss is based on a report (authored by Amtrak's retained engineering consultant, HNTB), which Amtrak's pleadings acknowledge was first provided to Insurers *after* Amtrak filed its Complaint. Am. Compl. ¶¶ 92-93.

## V. AMTRAK'S "GROUP PLEADING" APPROACH IS A FURTHER INDEPENDENT GROUND ON WHICH THE MOTION MUST BE GRANTED

As set out in Insurers' Answers, certain of Insurers provided policy limits that are impacted only if and when Amtrak exhausts the primary layer of coverage in its insurance

9

program (of $125 million).  Those Insurers (the "Certain Excess Insurers")[4] were not informed until ten months after Sandy that Amtrak had any expectation of making a claim to their excess layers of insurance.  Conduct during that period cannot, therefore, be attributed to them.  Similarly, Partner Re is differently situated in that it – alone among the Defendants – did not issue a policy of insurance to Amtrak.[5]

In its pleadings, as in its Opposition, Amtrak makes no effort to distinguish among Insurers.  This violates the "group pleading" doctrine, requiring that the pleadings specify which defendant has committed which specified act.  *See, e.g.*, *Appalachian Enters., Inc. v. ePayment Solutions Ltd.,* No. 01 Civ. 11502, 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (dismissing complaint that "lump[ed] all the defendants together and fail[ed] to distinguish their conduct") (internal quotation marks omitted).  Amtrak must plead its demand for consequential damages specifically – if it can do so consistent with Rule 11 – so that Insurers can respond accordingly.  As to Certain Excess Insurers and against Partner Re, they see no allegations concerning their purported liability for any consequential damages and Amtrak's Opposition does nothing to address this gap in the pleading.

## CONCLUSION

For the reasons discussed above and in Insurers' moving brief, Insurers respectfully request that the Court dismiss Amtrak's demand for "consequential" damages and for attorneys' fees and costs pursuant to Rule 12(b)(6), without leave to replead.

---

[4] Certain Excess Insurers are Defendants Partner Re, Torus Specialty Insurance Co., Westport Insurance Corp., and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244, and 507/N11NA08244.

[5] *See* Defendant Partner Re's Memorandum of Law in Support of its Motion for Joinder and/or to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) and 19 [Dkt. # 96] (Partner Re did not insure Amtrak, but reinsured Amtrak's captive reinsurer, Passenger Railroad Insurance, Ltd., an entity which is not a party to this suit and which Amtrak has refused to join).

Dated:  New York, New York
December 29, 2014

        ROPES & GRAY LLP

        By:  /s/ Catherine A. Mondell
        Catherine A. Mondell
        (catherine.mondell@ropesgray.com)
        800 Boylston Street
        Boston, MA  02199
        Telephone: (617) 951-7000

        Evan P. Lestelle
        (evan.lestelle@ropesgray.com)
        1211 Avenue of the Americas
        New York, NY 10036
        Telephone: (212) 596-9000

*Attorneys for Defendants Partner Reinsurance Europe plc, Torus Specialty Insurance Company, Westport Insurance Corporation, and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244, and 507/N11NA08244.*

All other signatories listed, and on whose behalf this filing is submitted, consent to its filing.

MOUND COTTON WOLLAN & GREENGRASS

By:  /s/ Costantino P. Suriano
Costantino P. Suriano
(csuriano@moundcotton.com)
Bruce R. Kaliner
(bkaliner@moundcotton.com)
One New York Plaza
New York, New York 10004
Telephone: (212) 804-4200

*Attorneys for Defendants Commonwealth Insurance Company, Lexington Insurance Company, Maiden Specialty Insurance Company, Steadfast Insurance Company, and International Insurance Company of Hannover SE.*

11

BRUCKMANN & VICTORY, L.L.P

By: /s/ Arjang Victory_____
Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel: (212) 850-8500

*Attorneys for Defendants Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Federal Insurance Company, Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. 507/Nl1NA08240 and 507/N11NA08241, Maxum Indemnity Company, Navigators Insurance Company, and RSUI Indemnity Company.*

FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC

By: /s/ Christopher S. Finazzo_____
Christopher S. Finazzo
(christopher.finazzo@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (646) 378-2033

*Attorneys for Defendant Liberty Mutual Fire Insurance Company.*