UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL RAILROAD PASSENGER CORPORATION,

                         Plaintiff,

        vs.

ARCH SPECIALTY INSURANCE COMPANY;
ASPEN SPECIALTY INSURANCE COMPANY;
COMMONWEALTH INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY;
LIBERTY MUTUAL FIRE INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON
and CERTAIN LONDON MARKET INSURANCE
COMPANIES subscribing to Policy Nos.
507/N11NA08240, 507/N11NA08241, 507/N11NA08242,
507/N11NA08244, 507/N11NA08244, 507/N11NA08245
and GEP 2944;
MAIDEN SPECIALTY INSURANCE COMPANY;
MAXUM INDEMNITY COMPANY;
NAVIGATORS INSURANCE COMPANY;
PARTNER REINSURANCE EUROPE plc;
RSUI INDEMNITY COMPANY;
STEADFAST INSURANCE COMPANY;
TORUS SPECIALTY INSURANCE COMPANY; and
WESTPORT INSURANCE CORPORATION,

                         Defendants.

Civ. Action No.:14-cv-7510 (JSR)

---

**MEMORANDUM OF LAW IN OPPOSITION TO PARTNER RE'S
MOTION FOR JOINDER AND/OR TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

FACTUAL BACKGROUND ......................................................................... 3

ARGUMENT ............................................................................................... 6

I.     PRIL IS NOT A NECESSARY PARTY BECAUSE AMTRAK HAS A DIRECT RIGHT OF ACTION AGAINST PARTNER RE ....................................... 6

     A.     The Allegations in the Amended Complaint – Which Must Be Accepted as True – Establish the Basis for Amtrak's Direct Right of Action Against Partner Re .......................................................... 7

     B.     Evidence Beyond the Amended Complaint Further Establishes Amtrak's Direct Right of Action Against Partner Re ................................ 10

          1.     The evidence supports Amtrak's position that the Reinsurance Policy is the reinsurance policy ................................ 10

          2.     Even if the Partner Re Binder is the reinsurance policy, it still names Amtrak as "The Insured" and provides for direct payment by Partner Re to Amtrak ................................................. 12

          3.     Amtrak has a direct right of action because Partner Re assumed responsibility for handling Amtrak's claim ...................... 14

II.     THE MOTION FAILS TO SHOW THAT PRIL IS A NECESSARY PARTY UNDER RULE 19 ...................................................................................... 16

CONCLUSION ........................................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<small>CASES</small>

*Aetna Cas. & Sur. Co. v. Home Ins. Co.*,
    882 F. Supp. 1328 (S.D.N.Y 1995) ......................................................... 17

*Allstate Ins. Co. v Administratia Asigurarilor De Stat*,
    948 F. Supp. 285 (S.D.N.Y. 1996) .................................................... 14, 15

*Breeden v. Sphere Drake Ins. PLC (In re Bennett Funding Group)*,
    270 B.R. 126 (S.D.N.Y. 2001) ................................................................. 8

*Bruckner-Mitchell, Inc. v. Sun Indem. Co.*,
    82 F.2d 434 (D.C. Cir. 1936) .................................................................... 8

*Callon Petroleum Co. v. Nat'l Indem. Co.*,
    472 Fed. Appx. 57 (2d Cir. 2012) ............................................................. 8

*China Union Lines, Ltd. v. American Marine Underwriters, Inc.*,
    755 F.2d 26 (2d Cir. 1986) ....................................................................... 8

*Consolidated Brokerage Corp. v. Commodore General Ins. Co.*,
    No. 81 Civ. 595 (MJL), 1981 U.S. Dist. LEXIS 15678 (S.D.N.Y. 1981) ...................... 7

*Greenwich Life Settlements, Inc. v Viasource Funding Group, LLC*,
    742 F. Supp.2d 446 (S.D.N.Y. 2010) ...................................................... 16

*Hospital Bldg. Co. v. Trustees of Rex Hosp.*,
    425 U.S. 738 (1976) ................................................................................. 7

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*,
    555 F.3d 87 (2d Cir. 2009) ....................................................................... 8

*Klockner Stadler Hurter, Ltd. v. Insurance Co. of Pa.*,
    785 F. Supp. 1130 (S.D.N.Y. 1990) ..................................................... 14, 15

*Mercantile & Gen. Reinsurance Co. v. Colonial Assurance Co.*,
    184 A.D.2d 177 (1st Dep't 1992), *rev'd on other grounds* 82 N.Y.2d 248 (1993)...... 14

*Trans-Resources, Inc. v. Nausch Hogan & Murray*,
    298 A.D.2d 27 (1st Dep't 2002) ........................................................ 8, 14

*World Omni Financial Corp. v. Ace Capital Re., Inc.*,
    2002 U.S. Dist. LEXIS 16870 (S.D.N.Y. Sept. 10, 2002) .................................. 14, 15

dcdocs-89584.1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(7) & 19 .......................................................................... 1

Ostrager and Vyskocil, MODERN REINSURANCE LAW AND PRACTICE ................................. 8

dcdocs-89584.1

Plaintiff National Railroad Passenger Corporation ("Amtrak) submits this Memorandum of Law in opposition to the Motion for Joinder and/or To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7) & 19 (the "Motion") filed by Defendant Partner Reinsurance Europe plc ("Partner Re").  For the reasons discussed herein, Plaintiff respectfully requests that this Court deny the Motion in its entirety.

## PRELIMINARY STATEMENT

The Motion wrongly contends that Amtrak's claims cannot go forward against Partner Re without the joinder of Amtrak's captive insurance company: Passenger Railroad Insurance, Ltd. ("PRIL").  Contrary to Partner Re's position, Amtrak has a direct right of action against Partner Re, which undermines Partner Re's claim that PRIL is a necessary party under Rule 19.

Under New York law, a policyholder can assert a direct right of action against a reinsurer where the policyholder is entitled to direct payment from the reinsurer or where the reinsurer assumes responsibility for handling the policyholder's claim. Because both of those circumstances exist here, Amtrak has a direct right of action against Partner Re.

The factual basis for Amtrak's direct right of action is both alleged in the Amended Complaint and shown through the evidence before the Court.  Because the allegations in the Amended Complaint must be accepted as true for the purpose of deciding a Motion made under Rules 12(b) and 19, the fact that the Amended Complaint alleges the factual basis and existence of a direct right of action should end the analysis and warrant denial of the Motion.

dcdocs-89584.1

Even if the Court were to look at evidence outside the Amended Complaint, the evidence before the Court shows that Amtrak has a right to receive direct payment and, therefore, can sue Partner Re directly under New York law.  Most significantly, the Reinsurance Policy expressly provides that Amtrak is "The Insured" and that loss shall be made payable to Amtrak.  The Partner Re Binder further provides that "reinsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance."  These documents clearly show that Amtrak has a right to receive policy benefits directly from Partner Re.

Partner Re argues that the Reinsurance Policy is not a reinsurance policy, but that argument is defective for two reasons.  First, the evidence shows that the Reinsurance Policy *is* a reinsurance policy.  Second, the terms of the Partner Re Binder – which Partner Re contends is the actual reinsurance policy – incorporate the same terms in the other policies that expressly provide that Amtrak is "The Insured" and that loss shall be made payable to Amtrak.  Accordingly, regardless of whether the Court agrees with Amtrak or Partner Re about what document represents the operative reinsurance contract – both documents expressly provide that Amtrak is the "Insured" and is entitled to direct payment from Partner Re.  Under settled New York law, where a policyholder is entitled to direct payment from a reinsurer, that policyholder has a direct right of action against the reinsurer.

New York law also conveys a direct right of action where a reinsurer assumes responsibility for handling a policyholder's claim.  Here, Partner Re directly participated alongside all the other insurance companies in the investigation and handling of Amtrak's insurance claim.  Indeed, the adjuster retained to represent the insurance

2

companies reported directly to Partner Re and *refused* to report to or interact with PRIL.
Accordingly, because it was Partner Re and not PRIL that controlled the handling of the
claim under the PRIL / Partner Re policies, Amtrak has a direct right of action against
Partner Re under New York law.

## FACTUAL BACKGROUND

This Action involves an insurance coverage dispute between Amtrak and 22
insurance company Defendants that provided Amtrak with all-risk property insurance
coverage – all based on a common insurance policy form.  The insurance policies at
issue are part of a $675,000,000 per-occurrence tower of insurance that Amtrak
purchased for the policy year 2011-2012.  One of the policies in this tower was issued
by Amtrak's captive insurance company – Passenger Railroad Insurance, Ltd. ("PRIL")
– which acted as a "fronting" insurance company for Defendant Partner Re.  Under this
fronting arrangement, it was Partner Re, not PRIL, which provided the actual insurance.
PRIL ceded 100% of the risk – along with 100% of the premium – to Partner Re.[1]

There are three key documents relevant to the contractual relationship among
Amtrak (the policyholder), PRIL (the fronting insurance company) and Partner Re (the
reinsurance company).  The first document is the direct insurance policy that PRIL
issued to Amtrak (the "PRIL Policy").  A copy of the PRIL Policy is attached to the
Rawlings Aff. as Ex. 1.  The PRIL Policy bears policy number 1-20003-00(2011), which

---

[1]     *See* PRIL Policy, copy attached as Ex. 1 to the Affidavit of Cathy Rawlings in Opposition to
Partner Re's Motion for Joinder and/or To Dismiss (the "Rawlings Aff."), at AMT00046024
(showing Annual Premium of $97,500, being 7.5% of the total $1,300,000 premium for the first
excess layer); the Partner Re Binder, Rawlings Aff. Ex. 2, at AMT00026325 (showing Partner
Re's "order hereon" as a matching 7.5% and PRIL's ceding commission as 0%); and the Partner
Re Policy, Rawlings Aff. Ex. 3, at p. 1 (showing Annual Premium of $97,500, being 7.5% of the
total $1,300,000 premium for the first excess layer); *see also* Marsh Premium Invoice, Rawlings
Aff. as Ex. 4 (invoice sent to Amtrak for $97,500 in premiums owed to Partner Re).

3

follows PRIL's standard numbering scheme,[2] and match the policy number set forth on the binder issued by PRIL at or about the time that coverage incepted.[3]

The reinsurance arrangement between PRIL and Partner Re initially was confirmed via a binder approved and executed by Partner Re on November 28, 2011 and designated under "Unique Market Reference" number B0507N11NA08246 (the "Partner Re Binder").  A copy of the Partner Re Binder is attached to the Rawlings Aff. as Ex. 2 and to the Bollier Declaration as Ex. A.  The "Policy Number" (N11NA08246) and "Unique Market Reference" number (B0507N11NA08246) included on the Partner Re Binder match the numbering sequence used by the other London Market Syndicates and Companies that sold coverage to Amtrak for policy year 2011-2012.  *See* Policy Nos. 507/N11NA08240, 507/N11NA08241, 507/N11NA08242, 507/N11NA08244 and 507/N11NA08245 attached to the Amended Complaint at Exs. 9-14.  The Partner Re Binder states that "reinsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance."  Rawlings Aff. Ex. 2 at AMT00026332.

On December 6, 2011, Partner Re approved and executed policy number NRPC-N11NA08246 (the "Reinsurance Policy").  A copy of the Reinsurance Policy is attached to the Rawlings Aff. as Ex. 3.  The policy number of the Reinsurance Policy corresponds to the policy number and "unique market reference" in the Partner Re Binder (*see* Rawlings Aff. Ex. 2), and is in sequence with the other policies that Amtrak purchased

---

[2]    *See* Rawlings Aff. at ¶2.  For the sake of comparison, a nearly identical policy covering a different portion of Amtrak's $675,000,000 insurance tower and reinsured via another reinsurer – SCOR Re – bore Policy No. 1-20002-00(2011).  See policy no. 1-20002-00(2011), copy attached to the Rawlings Aff. as Ex. 5.

[3]    *See* Rawlings Aff. Ex. 6.

dcdocs-89584.1

from the London insurance market (*see* Amended Complaint at Exs. 9-14).  The Reinsurance Policy is comprised of 47 sequentially numbered pages, each of which bears the signature of Partner Re's underwriter in the lower right hand corner.  *See* Rawlings Aff. Ex. 3.  Page two of the Reinsurance Policy is comprised of two standard forms commonly used in the London market – NMA 5062 and NMA2419 – neither of which is found in the PRIL Policy.  *See id.* at p. 2.  The Reinsurance Policy defines "The Insured" to be "National Railroad Passenger Corporation (Amtrak)" (*see* Rawlings Aff. Ex. 3, at p. 3) and provides that "Loss, if any, shall be adjusted with and payable to National Railroad Passenger Corporation" (*see id.* at ¶5).

The PRIL Policy expressly mentions the separate Reinsurance Policy issued by Partner Re.  Specifically, the Declarations Page on the PRIL Policy states that the coverage thereunder is "as more fully described in follow form Partner Reinsurance Europe plc policy NRCP-N11NA08246."  Rawlings Aff. Ex. 1 at AMT00046024.

All of the policies in Amtrak's property insurance program included a provision stating that the insurance companies would use Ratcliff Property Adjusting ("Ratcliff") to adjust all claims made by Amtrak under the policies.  *See* Exs. 3-26 to the Amended Complaint at ¶25.  After Amtrak provided notice to Defendants of the insurance claim at issue, the insurance companies appointed Ratcliff to act on their behalf in the adjustment of Amtrak's claim.  Rawlings Aff. at ¶10.  Soon thereafter, the insurance companies decided that Ratcliff's role would be taken over by York Specialized Loss Adjusting ("York") and Amtrak agreed to York's substitution for Radcliff.  *Id.* at ¶11.  In that role, York was responsible for investigating the loss on behalf of the insurance companies, compiling the necessary information and documentation, and reporting its

5

findings and analysis to the insurance companies. *Id.* at ¶12.  In carrying out those responsibilities, York reported directly to Partner Re and specifically did not report to PRIL.  *See* Letter, dated October 25, 2013, from York to Amtrak, copy attached to the Rawlings Aff. as Ex. 7 (authorized on behalf of a schedule of insurance companies including Partner Re, but not including PRIL); and letter, dated June 26, 2014, from York to PRIL, copy attached to the Rawlings Aff. as Ex. 8 ("York reports only to AMTRAK's direct property insurers, together with SCOR and Partner Re.  York does not represent PRIL in this matter . . . .").

## ARGUMENT

### I.   PRIL IS NOT A NECESSARY PARTY BECAUSE AMTRAK HAS A DIRECT RIGHT OF ACTION AGAINST PARTNER RE

Partner Re incorrectly argues that Amtrak's claims against Partner Re cannot go forward without PRIL being joined as a party because only PRIL – and not Amtrak – has direct contractual rights vis-à-vis Partner Re.  Contrary to Partner Re's faulty argument, the New York cases on point and the allegations in the Amended Complaint clearly establish a direct right of action by Amtrak against Partner Re because the reinsurance contract at issue names Amtrak as "The Insured" and provides that claims "shall be adjusted with and payable to" Amtrak.  To the extent that the Court considers evidence outside the Amended Complaint in deciding the Motion, such evidence simply bolsters the conclusion that Amtrak enjoys a direct right of action against Partner Re and undermines the argument that PRIL is "necessary" for Amtrak to pursue its claims against Partner Re.

6

**A.      The Allegations in the Amended Complaint – Which Must Be Accepted as True – Establish the Basis for Amtrak's Direct Right of Action Against Partner Re**

In deciding Partner Re's Motion – which is brought under Rules 12(b)(7) and Rule 19 – the Court must accept as true the allegations in Amtrak's Amended Complaint.[4]

Amtrak's Complaint alleges that Partner Re undertook direct contractual obligations to Amtrak under the Reinsurance Policy.  Specifically, the Amended Complaint attaches and quotes from terms of the Reinsurance Policy that identify Amtrak as "The Insured" thereunder and promise that "Loss, if any, shall be adjusted with and payable to National Railroad Passenger Corporation" (Amended Complaint at ¶51; Mondell Decl. Ex. 4 at ¶5).  Accepting these allegations as true, as the Court must for purposes of the Motion, there is no disputing that Partner Re owed direct contractual obligations to Amtrak.

The allegations in the Amended Complaint and the documents attached thereto also establish that the insurance arrangement among Amtrak, PRIL and Partner Re was a pass-through fronting arrangement under which Partner Re – not PRIL – was the true insurer on the risk.  As noted above, PRIL ceded 100% of the risk – along with 100% of the premium – to Partner Re.[5]  Although fronting arrangements are common, it is

---

[4]      *See Consolidated Brokerage Corp. v. Commodore General Ins. Co.*, No. 81 Civ. 595 (MJL), 1981 U.S. Dist. LEXIS 15678 at *1, n.2, *9-10 (S.D.N.Y. 1981) (assuming that the allegations in the complaint are true in determining whether certain entities are indispensable parties under Rule 19, *citing Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738, 740 (1976)); Davis Cos. v. Emerald Casino, Inc., 268 F.3d 477, 479, n. 2 (7th Cir. 2001) ("For purposes of a motion to dismiss for failure to join a party under Rule 19, we accept the allegations in the complaint as true.").

[5]      *See* Rawlings Aff. Ex. 1, at AMT00046024 (showing Annual Premium of $97,500, being 7.5% of the total $1,300,000 premium for the first excess layer); Rawlings Aff. Ex. 2, at AMT00026325

unusual for an insurance company to cede 100% of the premium to the reinsurer; the

fronting company typically cedes only 95-98% of the premium to the reinsurer and retain

the difference as a "fronting commission" or "fronting fee."[6] Accordingly, the allegations

in the Amended Complaint and the attachments thereto further emphasize the direct

contractual obligations that Partner Re owed to Amtrak.

Under New York law, a direct right of action exists not only where the

reinsurance policy includes a "cut through" provision, but also where the reinsurance

policy provides for direct payment by the reinsurer to the policyholder.[7]

Cases holding that a direct right of action does *not* exist typically are based on

the fact that the policyholder is not a named insured under the reinsurance agreement

or entitled to direct payment from the reinsurance company[8] – a situation that does *not*

exist here.  Here, as noted above, the Reinsurance Policy expressly defines Amtrak as

"The Insured" (*see* Rawlings Aff. Ex. 3, at p. 3) and states that losses "shall be adjusted

---

(showing Partner Re's "order hereon" as a matching 7.5% and PRIL's ceding commission as 0%); and Rawlings Aff. Ex. 3, at p. 1 (showing Annual Premium of $97,500, being 7.5% of the total $1,300,000 premium for the first excess layer); *see also* Marsh Premium Invoice, Rawlings Aff. as Ex. 4 (invoice sent to Amtrak for $97,500 in premiums owed to Partner Re).

[6]   *See* Ostrager and Vyskocil, MODERN REINSURANCE LAW AND PRACTICE, 2d Ed. §1.05[a] (Glasser Legal Works 2000).

[7]   *See Trans-Resources, Inc. v. Nausch Hogan & Murray*, 298 A.D.2d 27, 32-33 (1st Dep't 2002); *see also Bruckner-Mitchell, Inc. v. Sun Indem. Co.*, 82 F.2d 434, 442-44 (D.C. Cir. 1936); *accord Jurupa Val. Spectrum, LLC v Nat'l Indem. Co.*, 555 F.3d 87, 89 (2d Cir. 2009) (noting the significance of the direct payment provision at issue in *Trans- Resources*); *China Union Lines, Ltd. v. American Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir. 1986) (affirming the District Court's ruling in favor of the policyholder and its captive insurance company, who had sued the reinsurer together, noting that "it made little difference, as a practical matter, whether [the policyholder] was entitled to recover in its own name" as opposed to the captive).

[8]   *Callon Petroleum Co. v. Nat'l Indem. Co.*, 472 Fed. Appx. 57, (2d Cir. 2012); *Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, 555 F.3d 87, 90 (2d Cir. 2009); *Breeden v. Sphere Drake Ins. PLC (In re Bennett Funding Group)*, 270 B.R. 126, 131 (S.D.N.Y. 2001).

8

with and payable to" Amtrak (*see id.* at ¶5).  Of course, these obligations are consistent with the fact that the fronting insurance arrangement among Amtrak, PRIL and Partner Re involved a 100% pass-through – whereby100% of Amtrak's premiums were paid over to Partner Re, which in turn promised to make payment directly to Amtrak and to do so "simultaneously with insurers participating in the original insurance."  *Id.*  Accordingly, the contractual documents at issue clearly demonstrate that Amtrak is entitled to direct payment from Partner Re and, therefore, has a direct right of action against Partner Re under New York law.

In addition to their focus on "cut through" clauses and provisions promising direct payment to the policyholder, the New York cases analyzing a policyholder's direct right of action against a reinsurer also focus on "negating" provisions that expressly state that no third parties have any rights under the reinsurance agreement.[9]  When included by a reinsurer in the reinsurance policy, these "negating" provisions expressly state that nothing in the reinsurance policy "shall be construed to confer upon . . . any person . . . (other than the parties hereto or their permitted assigns or successors) any rights or remedies under . . . this Reinsurance."[10]

Here, however, Partner Re did not include a "negating" provision in either the Partner Re Binder or the Reinsurance Policy.  *See generally* Rawlings Aff. Exs. 2, 3; Bollier Decl. Ex. A.  On the contrary, as noted above, the Reinsurance Policy expressly does the opposite by designating Amtrak as "The Insured" and promising direct

---

[9]   *See, e.g., Jurupa*, 555 F.3d at 90; *Canal Ins. Co. v. Montello, Inc.*, 826 F. Supp. 2d 1264, 1269-70 (N.D. Okla. 2011) (applying New York law).

[10]   *See, e.g., Jurupa*, 555 F.3d at 89.

dcdocs-89584.1

payment to Amtrak.  Accordingly, the absence of a "negating" provision in the Reinsurance Policies further cements Amtrak's argument that it is entitled to a direct right of action against Partner Re here.

**B.   Evidence Beyond the Amended Complaint Further Establishes Amtrak's Direct Right of Action Against Partner Re**

A key part of the dispute over Partner Re's direct contractual obligations to Amtrak revolves around Partner Re's contention that the Reinsurance Policy is not a reinsurance policy.  *See* Motion at pp. 3-4.  Partner Re's argument is based largely on evidence from outside the Amended Complaint.  *Id.* at pp. 4-5; Bollier Decl. at ¶9. Because the allegations in the Amended Complaint must be accepted as true for purposes of the Motion, any conflicting evidence presented by Partner Re from outside the Amended Complaint does not trump Amtrak's allegations or justify the granting of the Motion.  In fact, to the extent that the Court is willing to consider evidence beyond the Amended Complaint and the documents attached thereto, such evidence actually buttresses Amtrak's proof that it has a direct right of action against Partner Re and that PRIL is not a necessary party to this Action.

**1.    The evidence supports Amtrak's position that the Reinsurance Policy is the reinsurance policy**

The policy numbers on the relevant documentation undermine Partner Re's contention that the Partner Re Binder constitutes a reinsurance agreement in and of itself, and that the Reinsurance Policy merely is a version of the direct insurance issued by PRIL.  The PRIL Policy bears policy number 1-20003-00(2011), which follows PRIL's standard numbering scheme.  *See* Rawlings Aff. at ¶2; *compare* Rawlings Aff. Ex. 1 (bearing policy no. 1-20003-00(2011)) *with* Rawlings Aff. Ex. 5 (bearing Policy No. 1-

10

20002-00(2011)).  In contrast, both the Partner Re Binder and the Reinsurance Policy use a completely different numbering scheme – one that corresponds with the other policies that Amtrak purchased from the London insurance market.  Specifically, the Partner Re Binder bears "Unique Market Reference" number B0507N11NA08246 (*see* Rawlings Aff. Ex. 2 at AMT00026330]), and refers to "Policy Number" N11NA08246 (*see id.* at AMT00026325) – which matches the numbering sequence used by the other London Market Syndicates and Companies (*see* Policy Nos. 507/N11NA08240, 507/N11NA08241, 507/N11NA08242, 507/N11NA08244 and 507/N11NA08245 attached to the Amended Complaint at Exs. 9-14).   These facts show that PRIL provided direct insurance to Amtrak (under PRIL Policy #1-20003-00(2011), that Partner Re confirmed its agreement to reinsure that risk via a binder (that referenced the number for the reinsurance contract: B0507N11NA08246) and subsequently signed off on the Reinsurance Policy (bearing policy no. NRPC-N11NA08246).  The contrast in policy numbering conventions show that the direct insurance issued by PRIL was denominated under one set of policy numbers, whereas the reinsurance issued by Partner Re – including the Reinsurance Policy – was denominated under a separate set of policy numbers reflecting the reinsurance contract, not the direct insurance contract.

Partner Re's fingerprints are found on other aspects of the Reinsurance Policy as well – offering further proof that it is a reinsurance contract sold by Partner Re and not a direct insurance policy prepared by PRIL.  As noted above, the second page of the Reinsurance Policy is comprised of two standard form clauses commonly used in the London market – NMA 5062 and NMA2419.  *See* Rawlings Aff. Ex. 3 at p. 2.  These London market forms are not used by PRIL or found anywhere in the PRIL Policy, and

11

are a clear indication that the Reinsurance Policy is a separate agreement prepared by

Partner Re – not PRIL.[11]

>    **2.    Even if the Partner Re Binder is the reinsurance policy, it still names Amtrak as "The Insured" and provides for direct payment by Partner Re to Amtrak**

Partner Re contends that the Partner Re Binder, in and of itself, is the

reinsurance policy because it provides: "This document details the Contract Terms

entered into by the Insurer(s) and constitutes the Contract Documentation."  *See* Motion

at pp. 4-5.  But this vague reference to the terms entered into by the "Insurer(s)" does

not overwhelm the evidence discussed above showing that Partner Re subsequently

issued the Reinsurance Policy consistent with the terms of the binder.

Nevertheless, even if the Partner Re Binder *did* constitute the reinsurance policy

in and of itself, the terms of that binder explicitly incorporate the terms of the policy form

that name Amtrak as "The Insured" and provide that that payment shall be made directly

to Amtrak.  Specifically, the Partner Re Binder, as initially issued, provided as follows

regarding the governing terms of coverage: "All terms as per Original Policy Number

……. As provided to and on file with Price Forbes and Partners Limited on ….."  Bollier

Decl. Ex. A at p. 7 of 21 (ellipses in original).  This provision was deleted via

endorsement on March 7, 2012 and replaced with the following: "All terms as per

Original Policy Number 084144000 (Lexington Insurance Company) As provided to and

on file with Price Forbes and Partners Limited."  *Id.* at Ex. B.  The Lexington Policy

---

[11]    Partner Re's argument that the Reinsurance Policy is not a contract extending rights to Amtrak is also undermined by the very documents that Partner Re cites in its Motion.  For example, the email that Partner Re's underwriter used to forward the Reinsurance Policy was sent under the subject line: "Amtrak policy" – which is not consistent with Partner Re's position that it owes no obligations to Amtrak.  *See* Bollier Aff. Ex. E.

incorporated via this endorsement also names Amtrak as "The Insured" and provides

that losses "shall be adjusted with and payable to" Amtrak.  *See* Ex. 20 to the Amended

Complaint, at p. 1, ¶5.  Then, in October 2013 – nearly a year *after* Sandy struck New

York – this same provision was changed *again* and replaced with the following: "All

terms as per Original Policy Number NRCP – N11NA08246 (Passenger Railroad

Insurance Limited) As provided to and on file with Price Forbes and Partners Limited."

Bollier Decl. Ex. D.  No matter whether this endorsement refers to the PRIL Policy or the

Reinsurance Policy (given the ambiguous reference to PRIL on the one hand and the

number of the Reinsurance Policy on the other), the policy form incorporated by

reference still names Amtrak as "The Insured" and provides that losses "shall be

adjusted with and payable to" Amtrak.  *See* Rawlings Aff. Exs. 1 and 3, at p. 1 and ¶5.

Thus, under any and all of the policy forms referenced in the Binder and the

endorsements thereto, Amtrak is "The Insured" and payment is to be made directly to

Amtrak.

The incorporation into the Partner Re Binder of the terms expressly naming

Amtrak as "The Insured" and providing for direct payment of claims to Amtrak is

consistent with other express terms in the Partner Re Binder, namely the provision

stating that "reinsurers agree to pay their share of any loss hereon simultaneously with

insurers participating in the original insurance."  Rawlings Aff. Ex. 2, at AMT00026332.

Of course, it is also consistent with the fronting arrangement among Amtrak, PRIL and

Partner Re, whereby all premiums were paid, and all risk was transferred, directly from

Amtrak to Partner Re[12].

---

[12]      *See supra* at n. 1.

13

As discussed above, under New York law, where a policyholder is entitled to direct payment from a reinsurer, that policyholder has a direct right of action against the reinsurer.[13]  Because both the Reinsurance Policy and the Partner Re Binder give Amtrak the right to receive direct payment from Partner Re, Amtrak has a direct right of action against Partner Re regardless of whether the Court agrees with Partner Re about what document represents the operative reinsurance contract.  Both documents expressly provide that Amtrak is "The Insured" and is entitled to direct payment from Partner Re and, therefore, both documents support Amtrak's direct right of action against Partner Re.

> **3.    Amtrak has a direct right of action because Partner Re assumed responsibility for handling Amtrak's claim**

Under New York law, a direct right of action by a policyholder against a reinsurer also exists where the reinsurer assumes responsibility for handling the policyholder's claim.[14]  Indeed, this Court has held that where a captive insurance company standing between the policyholder and the reinsurer is a "nominal intermediary and was never

---

[13]    *Trans-Resources*, 298 A.D.2d at 32-33.

[14]    *See World Omni Financial Corp. v. Ace Capital Re., Inc.*, 2002 U.S. Dist. LEXIS 16870 at *6-7 (S.D.N.Y. Sept. 10, 2002) (*rev'd on other grounds* 64 Fed. Appx. 809, 812, n. 4 (2d Cir. 2003); *Allstate Ins. Co. v Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 307-09 (S.D.N.Y. 1996); *Klockner Stadler Hurter, Ltd. v. Insurance Co. of Pa.*, 785 F. Supp. 1130, 1134 (S.D.N.Y. 1990); *see also Mercantile & Gen. Reinsurance Co. v. Colonial Assurance Co.*, 184 A.D.2d 177, 180 (1st Dep't 1992) (jury was entitled to conclude that the policyholder had a direct right of action against the reinsurer because "[t]he language employed in these documents, to the effect that the plaintiff would handle claims directly with the original assured in the event the original reassureds failed, created an ambiguity as to the parties' intent which was for the jury, not the court to resolve."), *reversed on other grounds* 82 N.Y.2d 248 (1993).

14

intended by either party to be the actual insurer," the policyholder has a direct right of action against the reinsurer.[15]

Here, the Reinsurance Policy expressly provides that claims "shall be adjusted with" Amtrak.  *See* Rawlings Aff. Ex. 3, at ¶5.  This is true no matter whether the Court agrees with Amtrak that the Reinsurance Policy is the reinsurance policy, or whether it agrees with Partner Re that the Partner Re Binder is the insurance policy – since both documents incorporate ¶5 from the standard policy form.  *See supra* at pp. 12-13.

Consistent with its contractual obligation to adjust claims with Amtrak, Partner Re assumed responsibility for handling Amtrak's claim following Superstorm Sandy – to the exclusion of any involvement by PRIL.  *See* Rawlings Aff. Ex. 8 ("York reports only to AMTRAK's direct property insurers, together with SCOR and Partner Re.  York does not represent PRIL in this matter . . . .").  Because Partner Re assumed direct responsibility for handling Amtrak's claim, New York law affords Amtrak a direct right of action against Partner Re.[16]

This conclusion is especially clear here, because the fronting insurance provided by PRIL was a 100% pass-through and PRIL was never intended to assume any risk or be the actual insurer.  As this Court held *World Omni*, where a captive is a "nominal intermediary and was never intended by either party to be the actual insurer," the policyholder has a direct right of action against the reinsurer.[17]  Because Amtrak has a

---

[15]     *World Omni*, 2002 U.S. Dist. LEXIS 16870 at *6. Notably, the captive insurance company that issued the direct insurance in *World Omni v. Ace Capital Re* was not a defendant in that coverage lawsuit.

[16]     *See World Omni*, 2002 U.S. Dist. LEXIS 16870 at *6-7; *Allstate v Administratia Asigurarilor De Stat*, 948 F. Supp. at 307-09; *Klockner*, 785 F. Supp. at 1134.

[17]     *World Omni*, 2002 U.S. Dist. LEXIS 16870 at *6.

15

direct right of action against Partner Re, there is no reason why PRIL is a necessary

party to this Action.

## II.   THE MOTION FAILS TO SHOW THAT PRIL IS A NECESSARY PARTY UNDER RULE 19

As the moving party, Partner Re bears the burden of proving that PRIL must be

joined for one of the reasons specified in Rule 19.[18]  Partner Re fails to meet its burden.

The Motion offers neither facts nor precedent to show that the requirements of Rule 19

are met here.

A party is "necessary" and must be joined under Rule 19 only if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

The Motion offers no facts showing that any of these requirements are met here.

First, there is no showing that the Court cannot accord complete relief among the

existing parties.  On the contrary, because Amtrak has a direct right of action against

Partner Re, complete relief is available to Amtrak for Partner Re's share of the losses at

issue.  Second, there is no showing that PRIL even claims any interest relating to the

subject of the Action.  On the contrary, because PRIL is merely a fronting insurance

---

[18]    *Greenwich Life Settlements, Inc. v Viasource Funding Group, LLC*, 742 F. Supp.2d 446, 455 (S.D.N.Y. 2010).

dcdocs-89584.1

company that serves as a 100% pass through to Partner Re, PRIL has no vested interest in the outcome of this case.  If the insurance companies prevail, then there would be no liability under the PRIL Policy; and if Amtrak prevails, then the loss is paid directly by Partner Re "simultaneously with insurers participating in the original insurance."  Rawlings Aff. Ex. 2 at AMT00026332.  Third, there is no showing that disposing of the Action in PRIL's absence may impair PRIL's ability to protect its interests.  As noted above, PRIL's interests are secure whether or not it is a party in this Action.  In the worst case scenario for PRIL – where Amtrak prevails in this Action but Partner persists in its wrongful refusal to pay the claim – PRIL simply would pay the claim under the PRIL Policy and proceed to collect from Partner Re based on Partner Re's unequivocal obligation to follow the fortunes of PRIL under bedrock principles of reinsurance law.[19]  Fourth, there is no showing that disposing of the Action in PRIL's absence may leave Partner Re (or any other party) subject to a substantial risk of double liability.  On the contrary, a payment by Partner Re to Amtrak pursuant to the terms of the Reinsurance Policy would completely resolve any obligation that PRIL theoretically would have to cover Amtrak's losses and would eliminate any obligation that Partner Re would have to PRIL under the Reinsurance Policy.  It is inconceivable that Partner Re faces the potential for double liability here – let alone a "substantial risk" of double liability, as required under Rule 19.

---

[19]     *See Aetna Cas. & Sur. Co. v. Home Ins. Co.*, 882 F. Supp. 1328, 1347 (S.D.N.Y 1995) ("It is only when the ceding company pays a claim that is *manifestly* outside the scope of the cedent's policy coverage that the reinsurer may successfully challenge the ceding company's interpretation and void the obligation to follow its settlement fortunes.") (emphasis in original).

17

Consistent with the Motion's failure to present any facts that meet the requirements for compulsory joinder under Rule 19, the Motion also fails to cite any case law holding that the requirements of Rule 19 are met under the facts present here. Because the Motion offers neither facts nor precedent to show that the requirements of Rule 19 are met here, the Motion should be denied.

## CONCLUSION

For all of the foregoing reasons, Amtrak respectfully requests that this Court deny the Motion in its entirety.

Dated:   December 29, 2014

By:   /s/
_____
      Rhonda D. Orin, Esq. (RO-0359)
      rorin@andersonkill.com
      Daniel J. Healy, Esq. (DH-7396)
      dhealy@andersonkill.com
      Marshall Gilinsky, Esq. (MG-8398)
      mgilinsky@andersonkill.com
      **ANDERSON KILL, L.L.P.**
      1717 Pennsylvania Avenue, N.W.
      Washington, DC  20006
      Telephone:  202-416-6500

      Finley T. Harckham, Esq. (FH-8219)
      fharckham@andersonkill.com
      **ANDERSON KILL, P.C.**
      1251 Avenue of the Americas
      New York, NY  10020
      Telephone:  212-278-1000

      *Attorneys for Plaintiff*

dcdocs-89584.1