UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER :
CORPORATION, :
 :
                        Plaintiff, :
 :
           v. :
 :
ARCH SPECIALTY INSURANCE COMPANY; : 14 Civ. 7510 (JSR)
ASPEN SPECIALTY INSURANCE COMPANY; :
COMMONWEALTH INSURANCE COMPANY; :
FEDERAL INSURANCE COMPANY; LEXINGTON :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE :
INSURANCE COMPANY; CERTAIN :
UNDERWRITERS AT LLOYD'S OF LONDON and :
CERTAIN LONDON MARKET COMPANIES :
Subscribing to Policy Nos. 507/N11NA08240, :
507/N11NA08241, 507/N11NA08242, :
507/N11NA08244, 507/N11NA08244, :
507/N11NA08245 and GEP 2944; MAIDEN :
SPECIALTY INSURANCE COMPANY; MAXUM :
INDEMNITY COMPANY; NAVIGATORS :
INSURANCE COMPANY; PARTNER :
REINSURANCE EUROPE plc; RSUI INDEMNITY :
COMPANY; STEADFAST INSURANCE COMPANY; :
TORUS SPECIALTY INSURANCE COMPANY; and :
WESTPORT INSURANCE CORPORATION, :
 :
                        Defendants. :
 :
------------------------------------------------------------------------x

**<u>MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR THE
ISSUANCE OF LETTER OF REQUEST ON BEHALF OF INSURERS</u>**

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| PRELIMINARY STATEMENT | | 1 |
| FACTUAL BACKGROUND | | 3 |
| ARGUMENT | | 5 |
| I. | COURTS ROUTINELY ISSUE LETTERS OF REQUEST TO PERMIT PARTIES TO OBTAIN DISCOVERY OF RELEVANT INFORMATION LOCATED ABROAD | 5 |
| II. | A LETTER OF REQUEST IS WARRANTED HERE BECAUSE INSURERS SEEK INFORMATION FROM PRICE FORBES THAT IS RELEVANT TO THIS DISPUTE | 6 |
| CONCLUSION | | 9 |

# TABLE OF AUTHORITIES

**CASES**

*Abbott Labs v. Teva Pharms. USA, Inc.*,
  No. Civ. A. 02-1512-KAJ, 2004 U.S. Dist. LEXIS 13480, at * 2 (D. Del. July 15,
  2004) ................................................................................................................................. 6

*In re Urethane Antitrust Litig.*,
  267 F.R.D. 361, 365 n.17 (D. Kan. 2010) ....................................................................... 6

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241, 248 n.1 (2004) .......................................................................................... 5

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
  841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012) ..................................................................... 6

*Netherby Ltd. v. Jones Apparel Group, Inc.*,
  No. 04 Civ. 7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005) ............... 6

*Newmarkets Partners, LLC v. Oppenheim*,
  No. 08 Civ. 04213 (WHP) (THK), 2009 WL 1447504, at *1 (S.D.N.Y. May 22,
  2009) ................................................................................................................................ 6

**STATUTES**

23 U.S.T. 2555 ........................................................................................................................ 1, 3

28 U.S.C. §1781(b)(2) ......................................................................................................... 1, 3, 5

**RULES**

Fed. R. Civ. P. 28(b) .................................................................................................................. 5

Fed. R. Civ. P. 28(b)(2) ...................................................................................................... 1, 3, 6

Defendants-Insurers (the "Insurers") respectfully submit this memorandum of law in support of their unopposed motion, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"), 23 U.S.T. 2555, 28 U.S.C. §1781(b)(2), and Federal Rule of Civil Procedure 28(b)(2), for the issuance of a Letter of Request.[1]

## PRELIMINARY STATEMENT

The Insurers seek the issuance of a Letter of Request to obtain the following evidence in England: the production of documents from Price Forbes & Partners, Ltd. ("Price Forbes") and the taking of the oral testimony of current or former executives or employees of Price Forbes most knowledgeable about certain relevant matters identified in the Letter of Request (the "Price Forbes Witnesses"). Price Forbes has documents and witnesses with information relevant and material to this dispute as a result of its role as the broker for the National Railroad Passenger Corporation ("Amtrak") and its captive insurer, Passenger Railroad Insurance, Limited, in placing Amtrak's first-party 2011-2012 property insurance program with insurers and reinsurers located in England and Europe.

Amtrak has brought suit for breach of contract and declaratory judgment under seven of the contracts placed by Price Forbes in connection with Amtrak's "Superstorm Sandy" claim ("Sandy Claim") with the following companies: Certain Underwriters at Lloyd's of London, and Certain London Market Companies Subscribing to Policy Nos. 507/N11NA08240,

---

[1] The Insurers are Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Commonwealth Insurance Company, Federal Insurance Company, Lexington Insurance Company, Liberty Mutual Fire Insurance Company, Certain Underwriters at Lloyd's of London, and Certain London Market Companies Subscribing to Policy Nos. 507/N11NA08240, 507/N11NA08241, 507/N11NA08242, 507/N11NA08244, 507/N11NA08244, 507/N11NA08245 and GEP 2944, Maiden Specialty Insurance Company, Maxum Indemnity Company, Navigators Insurance Company, Partner Reinsurance Europe plc, RSUI Indemnity Company, Steadfast Insurance Company, Torus Specialty Company, and Westport Insurance Corporation.

1

507/N11NA08241, 507/N11NA08242, 507/N11NA08244, 507/N11NA08244, 507/N11NA08245; and Partner Reinsurance Europe plc (the "European Insurers/Reinsurers").

Although certain Insurers have paid Amtrak tens of millions of dollars for covered property damage and business interruption sustained by Amtrak during the storm, the Insurers dispute that the remainder of Amtrak's insurance claim is covered by the policies. Of particular relevance to the discovery sought through this motion, the parties dispute (i) whether Amtrak's claim should be treated as three separate "occurrences" rather than a single occurrence (allowing it to bypass the per-occurrence coverage limit of $675 million and other per-occurrence sublimits); and (ii) whether damage Amtrak sustained was "flood" damage (subjecting it to sublimits and exclusions for flood in the policies) or caused by some other peril. Price Forbes, acting as Amtrak's broker in the European market,[2] has information in its possession bearing on relevant topics, including the intent of the parties in entering into the insurance policies and the interpretation, meaning, and negotiation of those policies. Price Forbes also has information concerning post-loss communications among or between Amtrak, Marsh, and Price Forbes, which could bear on such relevant topics (among others) as those parties' views on whether Amtrak's purported loss was caused by damage from Superstorm Sandy or resulted from pre-existing damage and whether its loss was caused by a covered peril.

Amtrak has represented to Insurers that it does not intend to oppose this motion. Insurers have obtained Price Forbes' agreement to voluntarily produce relevant documents to the parties, and to make witnesses available for depositions, without need to resort to formal judicial process. Declaration of Catherine Mondell, Ex. 2 (12/19/14 Email from Alex Traill, Esq., Price Forbes' counsel). Amtrak, however, insists that it will object to use of any documents or testimony

---

[2] Amtrak's broker for the 2011-12 policy period was Marsh. Marsh, in turn, retained Price Forbes to assist with the placement in the European market.

obtained from Price Forbes outside of the Letter of Request process. Insurers file this motion for Letter of Request to address Amtrak's purported objection, without waiver of any rights with respect to Amtrak's purported objection, which Insurers view as wholly meritless and designed primarily as a delay tactic.

Accordingly, pursuant to the Hague Evidence Convention, 23 U.S.T. 2555, 28 U.S.C. §1781(b)(2), and Federal Rule of Civil Procedure 28(b)(2), this Court should issue a Letter of Request in the form attached as Exhibit 1 to the Mondell Decl. to permit the Insurers to seek the requested documents and testimony in England because the information sought from Price Forbes is material or will likely lead to the discovery of material evidence.

## FACTUAL BACKGROUND

Amtrak has brought suit against the Insurers for breach of contract and for a declaration as to the parties' rights and obligations under more than twenty first-party all-risk primary and excess insurance policies (the "Policies") issued by the Insurers, including the European Insurers and Reinsurers, for its insurance claim for loss and damage allegedly arising from "Superstorm Sandy" on or around October 29, 2012 ("Sandy Claim").

In this action, Amtrak seeks coverage under the Policies for its alleged "property damage, business interruption and other covered losses arising directly from the gale-force winds, including wind-driven storm surge, of Superstorm Sandy" and "from the ongoing chemical attack to essential components of the ERT . . . [and] NRT." Am. Compl. ¶¶ 104-106. Amtrak claims that, as of September 18, 2014, it has submitted documentation to support approximately $270 million in losses to the Insurers, and contends that its Sandy Claim totals approximately $1.1 billion. *Id.* ¶ 116. To date, certain Insurers have paid Amtrak $30,000,000, net of a

$10,000,000 deductible, for the components of Amtrak's claim supported with verifiable information.[3] *Id.* ¶ 118.

Amtrak alleges that its losses and damage are not subject to the $125,000,000 flood sublimit in the Policies. Am. Compl. ¶ 110. Amtrak further asserts that, although its 2011-12 first-party property insurance program contains a $675 million per occurrence limit of liability, its Sandy Claim consists of multiple occurrences, and otherwise falls within the "ensuing loss" exception to certain flood sublimits in the Policies. *Id.* ¶ 100.

The Insurers dispute Amtrak's allegations and take the position that Amtrak's claimed losses constitute a single occurrence and that the majority of Amtrak's losses were caused by flood and are therefore subject to the Program Limits of Insurance of $125,000,000 per occurrence and in any one policy year for flood losses. In addition, certain Insurers issued Policies containing a flood exclusion, including several of the European Insurers/Reinsurers. Although not mentioned in its Amended Complaint, Amtrak contends that these policies insure flood loss, even though they include provisions such as "Perils Insured . . . All Risks of Direct Physical Loss or Damage Excluding Flood, Earthquake…" Am. Compl., Ex. 13.

Accordingly, the heart of this lawsuit is the parties' dispute regarding the interpretation and application of these policy provisions. Insurers submit that the policy provisions should be plainly read and applied, but to the extent that Amtrak persists in its strained readings or argues that this Court should find an ambiguity in the policy provisions, information regarding the parties' communicated intent at the time of contracting will be necessary.

Amtrak's first-party property insurance program was placed with insurers located in both the United States and in Europe. Amtrak retained Marsh USA, Inc. ("Marsh") to act as its broker

---

[3] This $30 million was paid to Amtrak by certain Defendants and by other entities that provided coverage under Amtrak's first-party property insurance program that have not been named as Defendants in this lawsuit.

4

in the United States and Marsh retained Price Forbes in London to place policies with insurers and reinsurers located in London and Europe.

In that role, Price Forbes acted on behalf of Amtrak in placing the contracts issued by the European Insurers/Reinsurers. In accordance with custom and practice in the insurance industry, Amtrak had limited direct contact with the European Insurers/Reinsurers. Instead, representatives of Price Forbes, acting on behalf of Amtrak and Marsh, negotiated the terms and conditions of the Policies with the European Insurers/Reinsurers. After the loss, other representatives of Price Forbes were involved in submitting Amtrak's claim to the European Insurers/Reinsurers.

By this motion, the Insurers request that this Court issue a Letter of Request in the form attached as Exhibit 1 to the Mondell Decl. to obtain (i) documents concerning the terms, conditions, limits and premiums for the Amtrak 2011-2012 Policies, and (ii) testimony from Charlotte Todd, Tim Savill, Malcolm Goddard, James Masterton, and Stephen Oakley and/or any other current or former executive or employee of Price Forbes most knowledgeable about the matters identified in the Request.

## ARGUMENT

### I. Courts Routinely Issue Letters of Request to Permit Parties to Obtain Discovery of Relevant Information Located Abroad

Pursuant to 28 U.S.C. § 1781(b)(2) and Federal Rule of Civil Procedure 28(b), this Court may issue Letters of Request (also referred to interchangeably as "Letters Rogatory") seeking the assistance of a foreign court to obtain non-party discovery from a witness in a foreign jurisdiction. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 248 n.1 (2004) ("[A] letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness."). The Hague Evidence Convention, of which both the United States and

the United Kingdom are signatories, provides the mechanism for gathering evidence abroad through the issuance of Letters of Request. *See Newmarkets Partners, LLC v. Oppenheim*, No. 08 Civ. 04213 (WHP) (THK), 2009 WL 1447504, at *1 (S.D.N.Y. May 22, 2009) (noting that the procedures of the Hague Convention or other applicable treaty must be utilized to compel the deposition of a non-party witness located overseas).

Fed. R. Civ. P. 28(b)(2) provides, in relevant part, that a Letter of Request "shall be issued on appropriate terms after an application and notice of it" and "without a showing that taking the deposition in another manner is impracticable or inconvenient." A party opposing an application for a Letter of Request bears the burden of showing "good reason" why the request for issuance of letters should be denied. *See In re Urethane Antitrust Litig.*, 267 F.R.D. 361, 365 n.17 (D. Kan. 2010).

Accordingly, "[c]ourts routinely issue such letters where the movant makes a reasonable showing that the evidence sought may be material or may lead to the discovery of material evidence." *See Netherby Ltd. v. Jones Apparel Group, Inc.*, No. 04 Civ. 7028 (GEL), 2005 WL 1214345, at *1 (S.D.N.Y. May 18, 2005); *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 776 (S.D.N.Y. 2012) ("[i]n considering the issuance of letters rogatory, U.S. courts apply the discovery principles contained in Rule 26."). Motions for letters of request have been granted where the defendant identified the subject matter and relevance of the testimony to be elicited from each witness. *See Abbott Labs v. Teva Pharms. USA, Inc.,* No. Civ. A. 02-1512-KAJ, 2004 U.S. Dist. LEXIS 13480, at * 2 (D. Del. July 15, 2004).

II. **A Letter of Request is Warranted Here Because Insurers Seek Information from Price Forbes That Is Relevant to this Dispute**

Here, the evidence sought from Price Forbes is material or will lead to the discovery of material evidence. Price Forbes served as Amtrak's broker in the European market, and helped

Amtrak place a significant portion its first-party 2011-2012 property program with insurers and reinsurers located in England and Europe. Key issues in this action include the meaning and intent of the parties with respect to certain provisions (including the "flood" provisions and "occurrence" endorsements) of the insurance policies. Documents and testimony from Price Forbes will shed light on such issues as the parties' intent at the time of contracting; their interpretation of key provisions of the contract; and their views on the enforceability of such provisions. In addition, here, Insurers also seek information from Price Forbes concerning communications among or between Price Forbes, Marsh, and Amtrak, following Amtrak's purported loss. Such communications could, among other things, shed light on Amtrak's knowledge of the terms, conditions and limitations in the Policies; the amount of Amtrak's alleged losses; whether Amtrak (or its brokers) believed that its alleged losses resulted from pre-existing deterioration or other negative conditions at Amtrak's property, rather than from any coverable damage from Superstorm Sandy; and the adequacy of Amtrak's efforts to mitigate damages, cooperate with the Insurers in their investigation of its claim, and timely submit its claim to Insurers.

In addition to the relevant documents sought by Insurers from Price Forbes, the witnesses identified in the Letter of Request sought here are likely to testify as to this relevant information. Insurers seek issuance of a Letter of Request for testimony from two categories of Price Forbes witnesses: (1) the current or former executives or employees of Price Forbes most knowledgeable regarding the placement and negotiation of the policies, which would likely include Charlotte Todd, Stephen Oakley, and/or James Masterson (the "Broking Witnesses"); and (2) the current or former executives or employees of Price Forbes most knowledgeable regarding Amtrak's claim submitted to the European Insurers/Reinsurers, which would likely include Tim Savill and/or Malcolm Goddard (the "Claim Witnesses").

7

Ms. Todd, as an Insurance Broker at Price Forbes, was the primary Price Forbes employee who placed the Policies with the European Insurers/Reinsurers on behalf of Amtrak. The Insurers understand that Ms. Todd had a high level of involvement in negotiations for the terms, limits, conditions and premiums for the Policies on behalf of Amtrak and will have personal knowledge regarding the placement, drafting, negotiation, meaning, and interpretation of the terms and conditions of the Policies. Both Mr. Masterton, as the Director of Non-Marine at Price Forbes, and Mr. Oakley, as an Insurance Broker at Price Forbes, also were involved in the negotiations of the terms, conditions, limits and premiums of the 2011-2012 Amtrak Policies. The Insurers also understand that Mr. Masterton and Mr. Oakley will have personal knowledge regarding the placement, drafting, negotiation, meaning, and interpretation of the terms and conditions of the Policies.

After the loss, Tim Savill as Claims Director at Price Forbes and Malcolm Goddard as Divisional Director at Price Forbes were involved in presenting Amtrak's Sandy Claim to the European Insurers/Reinsurers. The Insurers also understand that Mr. Savill and Mr. Goddard will have personal knowledge regarding the information they provided to the European Insurers/Reinsurers regarding the policy layers affected by the claim, the timing of notice of locations involved in the loss, and the amount of the claim. To the extent that none of the identified Broking Witnesses or Claim Witnesses is able to provide the necessary information, other employees or executives employed by Price Forbes would undoubtedly have this information.

In light of the foregoing, the evidence sought by the Insurers is material to this action, and there is "good reason" to grant the Insurers' application for a Letter of Request in the form attached as Exhibit 1 to the Mondell Decl.

**CONCLUSION**

For the foregoing reasons, the Insurers respectfully request that their unopposed motion for the issuance of a Letter of Request be granted.

Dated: New York, New York
January 2, 2015

ROPES & GRAY LLP

By:  /s/ Catherine A. Mondell
Catherine A. Mondell
(catherine.mondell@ropesgray.com)
800 Boylston Street
Boston, MA  02199
Telephone: (617) 951-7000

Evan P. Lestelle
(evan.lestelle@ropesgray.com)
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000

*Attorneys for Defendants Partner Reinsurance Europe plc, Torus Specialty Insurance Company, Westport Insurance Corporation, and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244, and 507/N11NA08244.*

All other signatories listed, and on whose behalf this filing is submitted, consent to its filing.

MOUND COTTON WOLLAN & GREENGRASS

By:  /s/ Costantino P. Suriano
Costantino P. Suriano
(csuriano@moundcotton.com)
Bruce R. Kaliner
(bkaliner@moundcotton.com)
One New York Plaza
New York, New York 10004
Telephone: (212) 804-4200

*Attorneys for Defendants Commonwealth Insurance Company, Lexington Insurance Company, Maiden Specialty Insurance Company, SCOR GLOBAL*

9

*P&C SE, Steadfast Insurance Company, and International Insurance Company of Hannover SE.*

BRUCKMANN & VICTORY, L.L.P

By: /s/ Arjang Victory
Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel: (212) 850-8500

*Attorneys for Defendants Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Federal Insurance Company, Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. 507/Nl1NA08240 and 507/N11NA08241, Maxum Indemnity Company, Navigators Insurance Company, and RSUI Indemnity Company.*

FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC

By: /s/ Christopher S. Finazzo
Christopher S. Finazzo
(christopher.finazzo@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (646) 378-2033

*Attorneys for Defendant Liberty Mutual Fire Insurance Company.*