UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER                    :
CORPORATION,                                   :
                                               :
                          Plaintiff,           :
                                               :
            v.                                 :
                                               :
ARCH SPECIALTY INSURANCE COMPANY;              :   14 Civ. 7510 (JSR)
ASPEN SPECIALTY INSURANCE COMPANY;             :
COMMONWEALTH INSURANCE COMPANY;                :
FEDERAL INSURANCE COMPANY; LEXINGTON           :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE         :
INSURANCE COMPANY; CERTAIN                     :
UNDERWRITERS AT LLOYD'S OF LONDON and          :
CERTAIN LONDON MARKET COMPANIES                :
Subscribing to Policy Nos.  507/N11NA08240,    :
507/N11NA08241, 507/N11NA08242,                :
507/N11NA08244, 507/N11NA08244,                :
507/N11NA08245 and GEP 2944; MAIDEN            :
SPECIALTY INSURANCE COMPANY; MAXUM             :
INDEMNITY COMPANY; NAVIGATORS                  :
INSURANCE COMPANY; PARTNER                     :
REINSURANCE EUROPE plc; RSUI INDEMNITY         :
COMPANY; STEADFAST INSURANCE COMPANY;          :
TORUS SPECIALTY INSURANCE COMPANY; and         :
WESTPORT INSURANCE CORPORATION,                :
                                               :
                          Defendants.          :
                                               :
                                               :
------------------------------------------------------------------------x

**DEFENDANT PARTNER RE'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR JOINDER AND/OR TO DISMISS PURSUANT TO
FED. R. CIV. P. 12(B)(7) & 19**

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| I. AMTRAK DELIBERATELY MISLABELS THE PRIL WORDING POLICY AS THE "REINSURANCE POLICY" | 2 |
| II. AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER RE | 5 |
|     A. The Partner Re Contract Contains No "Cut-Through" Provision | 5 |
|     B. Partner Re Never "Assumed Responsibility" for Amtrak's Claim | 6 |
| III. AMTRAK'S CASES DO NOT SUPPORT ITS POSITION | 7 |
| IV. PRIL IS A NECESSARY PARTY TO CLAIMS AGAINST PARTNER RE | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat*,
   948 F. Supp. 285, 308 (S.D.N.Y. 1996)......................................................................................8

*Bruckner-Mitchell v. Sun Indemnity Co.*,
   82 F.2d 434, 445 (D.C. Cir. 1936) .............................................................................................7

*China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.*,
   755 F.2d 26, 30 (2d Cir. 1985) ...............................................................................................7, 8

*Delcon Const. Corp. v. U.S. Dep't of Hous. & Urban Dev.*,
   205 F.R.D. 145, 146 (S.D.N.Y. 2002) .......................................................................................5

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*,
   555 F.3d 87, 89 (2d Cir. 2009) ...................................................................................................5

*Klockner Stadler Hurter Ltd. v. Ins. Co. of Pennsylvania*,
   785 F. Supp. 1130, 1134 (S.D.N.Y. 1990) ................................................................................7

*Mazzio v. Kane*,
   No. 14 Civ. 616, 2014 WL 2866040, at *6 (E.D.N.Y. June 24, 2014) ......................................9

*Mercantile & Gen. Reins. Co., plc. v. Colonial Assur.*,
   184 A.D.2d 177, 180 (1st Dep't 1992) ......................................................................................7

*Rahman v. Shiv Darshan, Inc.*,
   No. 12 Civ. 3457, 2013 WL 654189, at *5 (E.D.N.Y. Feb. 22, 2013) ......................................2

*Ryan v. Volpone Stamp Co., Inc.*,
   107 F. Supp. 2d 369, 387 (S.D.N.Y.2000) ................................................................................9

*Toney-Dick v. Doar*,
   No. 12 Civ. 9162, 2013 WL 1314954, at *7 (S.D.N.Y. Mar. 18, 2013).....................................2

*Trans-Res., Inc. v. Nausch Hogan & Murray*,
   298 A.D.2d 27, 32-33 (1st Dep't 2002) .....................................................................................7

*World Omni Fin. Corp. v. Ace Cap. Re., Inc.*,
   No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002) ...............................7, 8

**RULES**

Fed. R. Civ. P. 19................................................................................................................ 1, 2, 9, 10

Fed. R. Civ. P. 12(b)(7) ................................................................................................................2

**OTHER DOCUMENTS**

*Lloyd's Market Bulletin* (Oct. 20, 2006), *available at*
http://www.lloyds.com/~/media/files/the%20market/communications/market%20bull
etins/market%20bulletins%20pre%2005%202010/2006/y3897.pdf#search='Lloyd's
market 0507'.................................................................................................................4

Partner Re respectfully submits this reply memorandum of law in further support of its motion pursuant to Fed. R. Civ. P. 19 to join Amtrak's captive insurer, Passenger Railroad Insurance Limited ("PRIL") to the instant action as a necessary party, or, in the alternative, to dismiss claims against Partner Re, eliminating the need to join PRIL.

## PRELIMINARY STATEMENT

In its Opposition to this Motion, Amtrak ignores the general rule that, absent exceptional circumstances that do not exist here, an insured has no direct right of action against a reinsurer. Amtrak concedes that PRIL issued the relevant insurance policy to Amtrak. Opp. Br. at 3. Accordingly, its right of action is against PRIL. To the extent that Amtrak wishes to keep Partner Re as a party to this suit, it must join PRIL. PRIL may, in turn, assert its claims under the contract of reinsurance between PRIL and Partner Re.[1]

Against this plain logic, Amtrak continues to mislabel documents in an effort to distort the record. Amtrak focuses on the PRIL Policy Wording – which is nothing more than a draft of the PRIL Policy – that was reviewed by Partner Re in its capacity as one of PRIL's reinsurers.[2] Amtrak wrongly argues that this document is a "Reinsurance Policy" issued by Partner Re, even though the document plainly states that the "Insurer" is "Passenger Railroad Insurance Limited." *See infra*, Section I. Building on this false premise, Amtrak insists that it has a right of direct payment from Partner Re. It does not: Amtrak's right of direct payment is from PRIL, as the PRIL Policy and PRIL Policy Wording show. *See infra*, Section II.A. As an alternate argument for a direct right of action, Amtrak asserts Partner Re "assumed responsibility" for Amtrak's claim. That argument fails because Amtrak has not pled that position and because documents it

---

[1] Partner Re disputes that such claims have any merit, though accepts that they would be procedurally proper if asserted by PRIL.

[2] When Amtrak amended its Complaint, it dropped as a defendant the other reinsurer it had included as a defendant in its Original Complaint.

submits with its briefing actually show the opposite: Partner Re proceeded subject to a full reservation of rights. *See infra*, Section II.B.

Simply put, without PRIL, there is no link between Amtrak and Partner Re, and the parties' contractual rights cannot be adequately addressed. The cases Amtrak cites do not provide otherwise. *See infra*, Section III. PRIL must be joined as a party in order to afford complete relief to Amtrak and Partner Re, protect PRIL's own rights, and avoid subjecting Partner Re to multiple litigations; if joinder is not possible, Amtrak's claims against Partner Re must be dismissed. *See infra*, Section IV. Amtrak's resistance to these alternatives is perhaps understandable: it would be awkward for Amtrak to have PRIL as a party given that PRIL has apparently taken the position that Amtrak has no covered claim under the excess-layer policy PRIL issued, consistent with the position of Amtrak's other excess-layer insurers.

## ARGUMENT

### I. AMTRAK DELIBERATELY MISLABELS THE PRIL WORDING POLICY AS THE "REINSURANCE POLICY"

In its Opposition, Amtrak attempts to argue that the Court should not look beyond the Amended Complaint to decide this Motion. *See* Opp. Br. at 1, 7. That position is incorrect as a matter of law,[3] but, in any event, would require that the Court grant Partner Re's Motion. Amtrak does not – and cannot – plead contractual privity between itself and Partner Re. *See* Moving Br. at 3. Moreover, the document it relies on as the supposed Partner Re "Reinsurance Policy" actually lists the "Insurer" as "Passenger Railroad Insurance Limited," not Partner Re.

---

[3] A court may consider documents outside the pleadings when ruling on a motion to dismiss under Rule 19 or 12(b)(7). *Rahman v. Shiv Darshan, Inc.*, No. 12 Civ. 3457, 2013 WL 654189, at *5 (E.D.N.Y. Feb. 22, 2013) ("District courts have broad discretion in applying Rule 19 because of the fact-based analysis of the effects of non joinder, and matters outside the pleadings may be considered."); *accord Toney-Dick v. Doar*, No. 12 Civ. 9162, 2013 WL 1314954, at *7 (S.D.N.Y. Mar. 18, 2013) ("When reviewing a motion to dismiss under Rule 12(b)(7), the Court may consider documents and facts outside the pleadings.").

*See* Affidavit of Cathy Rawlings ("Rawlings Aff.") ¶ 4, Ex. 3 at 1, 35 ("Attached to and forming part of Passenger Railroad Insurance, Limited Policy No NRPC-N11NA08246[.]").

Though no more is required to decide this Motion in Partner Re's favor, should this Court choose to exercise its broad discretion to consider documents outside the pleadings, those documents underscore that Amtrak's position is based on a false premise. Specifically, the document Amtrak consistently mislabels as the Partner Re "Reinsurance Policy" is actually the PRIL Policy Wording – *i.e.*, a draft of the PRIL Policy. *See* Moving Br. at 3-4. Partner Re submitted a sworn declaration from its Senior Underwriter, Daniel Bollier, to address this point by providing facts from his first-hand knowledge. *See* Declaration of Daniel Bollier ("Bollier Decl.") ¶ 9 ("[T]he document that is attached to Amtrak's Complaint as Exhibit 21 and Amtrak's Amended Complaint as Exhibit 19 . . . is *not* a true and correct copy of the Facultative Reinsurance Contract between Partner Re and PRIL.") (emphasis in original). Mr. Bollier goes on to attest that the "Noted and Agreed" stamp he placed on the PRIL Wording Policy is "not a type of stamp that I use when binding Partner Re to a contract as . . . it has no space for an internal Partner Re policy reference number." *Id.* at ¶ 8. The stamp merely indicates that Partner Re reviewed the PRIL Wording Policy before issuing reinsurance to PRIL. *Id.* The actual Partner Re Facultative Reinsurance Contract is attached to Mr. Bollier's Declaration as Exhibit A. *See also* Rawlings Aff., Ex 2 (attaching a copy of the same document, though with cover materials added by Amtrak's broker, Price Forbes, and without a full set of the Endorsements). Amtrak cannot seriously contend that the Facultative Reinsurance Contract is something other than the operative contract when it provides on its face: "This document . . . constitutes the Contract Documentation." Bollier Decl. ¶ 3, Ex. A at PAR00000004; Rawlings Aff., Ex. 2 at AMT00026333.

3

Rather than correct its errors after a review of Mr. Bollier's Declaration, Amtrak continues to cling to the false premise that the PRIL Wording Policy is Partner Re's "Reinsurance Policy." *See* Rawlings Aff. ¶ 4, Ex. 3.  Amtrak attaches the document to the affidavit of its risk manager, Cathy Rawlings, and has her label it as the "Partner Re Policy." However, Ms. Rawlings has given no indication that she has personal knowledge regarding Partner Re's issuance of policies, nor is there any Bates stamp or other indication showing how it came to be found in Amtrak's files.  Ms. Rawling's statement that the document is a "true and correct" copy of the "Partner Re Policy" is nothing more than an unsupported and conclusory label, not evidence.  In sum, nothing in the Rawlings Affidavit contradicts the facts sworn to in the Bollier Declaration.

In the absence of any actual evidence, Amtrak engages in extended speculation regarding policy numbering systems, arguing that the PRIL Policy wording bears a set of numbers that "matches the numbering sequence used by other London Syndicates and Companies." Opp. Br. at 11.  Based on this, Amtrak falsely concludes that Partner Re assigned the number and, therefore, must have "signed off" on the PRIL Wording Policy.  *See id.*  Partner Re does not dispute that this type of numbering sequence is used in the London market, but such numbers are not assigned by Partner Re.  To the contrary, it is Amtrak's broker, Price Forbes, that assigned both the policy number, NRPC-N11NA08246, to the PRIL Wording Policy, and the similar Unique Market Reference ("UMR") number, B0507N11NA08246, to the Facultative Reinsurance Contract.  Bollier Decl. ¶¶ 3, 8, Ex. E; Moving Br. at 5 n.6.[4]  The only number

---

[4] *See also Lloyd's Market Bulletin* (Oct. 20, 2006), *available at* http://www.lloyds.com/~/media/files/the%20market/communications/market%20bulletins/market%20bulletins%20pre%2005%202010/2006/y3897.pdf#search='Lloyd's market 0507' (announcing the formation of Price Forbes as a London broker and listing the numerical prefix it must use on all policies it places in the London insurance market: 0507).

4

assigned by *Partner Re* is the internal reference number on page ten of the Facultative Reinsurance Contract. *Id.* ¶ 3, Ex. A at PAR00000019. As Mr. Bollier attests, page ten shows the stamp he used "to bind Partner Re to this contract . . . and . . . provide[] an internal Partner Re policy reference number." *Id.* ¶ 3. Amtrak's unfounded policy number theory fails to show that Partner Re "issued" the PRIL Wording Policy as a reinsurance contract. The Court should not accept Amtrak's conclusory assertions over Mr. Bollier's sworn Declaration, based on his first-hand knowledge of the documents and of Partner Re's underwriting practices.

## II. AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER RE

Though Amtrak's Opposition is based principally on the false premise that the PRIL Wording Policy is the Partner Re Contract, Amtrak also argues that it has a direct right of action based on (i) payment provisions in the PRIL Policy Wording (which it continues to mislabel as the Partner Re contract); and (ii) information Partner Re received regarding Amtrak's claim. Neither argument sustains a direct right of action here.

### A. The Partner Re Contract Contains No "Cut-Through" Provision

Under New York law, Amtrak cannot sue reinsurer Partner Re unless the reinsurance contract contains an express "cut-through" provision. Moving Br. at 1. Although Amtrak identifies no such provision, it contends that it may still sue because the PRIL Policy Wording provides that losses insured by PRIL are payable to Amtrak. *See* Opp. Br. at 12-14.

Amtrak's position contravenes both applicable law and the relevant contact language. In *Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, the original insured argued that it had a direct right of action against the reinsurer because the Reinsurance Policy stated, "[T]he parties to this Reinsurance intend that Reinsurer . . . shall pay all amounts . . . due Insureds and other persons as and when due directly on behalf of the Reinsured[.]" 555 F.3d 87, 89 (2d Cir. 2009). The

5

Second Circuit found that even a provision as specific as this could not overcome the presumption that an original insured has no direct right of action against a reinsurer. *Id.*

Here, the Partner Re Reinsurance Contract provides that "[r]einsurers agree to pay their share of any loss herein simultaneously with insurers participation in the original Insurance." Bollier Decl. ¶ 3, Ex. A at PAR00000003. That language is entirely consistent with the fact that PRIL is the payee under the Partner Re Reinsurance Contract, a point reinforced by the Insolvency Clause. *Id.* at PAR00000005 ("In the event of insolvency of the reinsured Company, this reinsurance shall be payable directly to the Company, or its liquidator . . . ."). Nothing in the Reinsurance Contract suggests that the parties intended for Partner Re to be directly liable to Amtrak.[5]

### B.     Partner Re Never "Assumed Responsibility" for Amtrak's Claim

Amtrak contends it may sue Partner Re because Partner Re "assumed direct responsibility for handling Amtrak's claim[.]" Opp. Br. 15. Although Amtrak has nowhere pled this, its Opposition Brief identifies a letter stating that the independent adjuster investigating Amtrak's claim is providing facts to both Amtrak's insurers and reinsurers. Opp. Br. at 15. This argument is meritless. That Partner Re has exercised its rights as PRIL's reinsurer to receive information about claim investigations in no way suggests that it "assumed responsibility" for handling Amtrak's claim.

---

[5] Amtrak's Opposition Brief also points to endorsements to the Reinsurance Contract, specifically a March 7, 2012 Endorsement ("Endorsement No. 3"), which incorporates the terms of a Lexington Policy. Opp. Br. at 12-13. Endorsement No. 3 was replaced by Endorsement No. 6, which incorporates the terms of the PRIL Wording Policy. Bollier Decl. ¶ 7, Ex. D (this endorsement is omitted from the version of the same document attached to the Rawlings Aff. at Ex. 2). In either case, the fact that Partner Re incorporated the "terms of" another insurer's contract in its reinsurance agreement does not alter the fundamental premise of that reinsurance contract between Partner Re and PRIL such that Amtrak would become a direct insured or Partner Re a direct insurer.

6

**III.     AMTRAK'S CASES DO NOT SUPPORT ITS POSITION**

None of Amtrak's cases suggest that Amtrak is exempt from the general rule barring direct actions by insureds against reinsurers. *See China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir. 1985) (reciting this general rule). In *Trans-Res., Inc. v. Nausch Hogan & Murray*, the insured alleged that the reinsurance contract included "a cut-through clause" and further specified *through allegations in its operative complaint* that this cut-through clause reflected the agreement of the reinsurers "to pay directly to the named insured . . . with respect to any claim under said policy" because it "stipulates direct liability and creates a direct procedural privity as between the original insured and the reinsurer." 298 A.D.2d 27, 32-33 (1st Dep't 2002). By contrast, Amtrak's Amended Complaint fails to: reference or attach the Partner Re Reinsurance Contract; allege the existence of a cut-through clause; or allege direct contractual privity between itself and Partner Re. Am. Compl. ¶ 51.[6]

In a variation on this argument, Amtrak contends that Partner Re was intended to be Amtrak's actual insurer because "PRIL was a 100% pass through." Opp. Br. at 15. For this

---

[6] Similarly, Amtrak's reliance on cases that involve contracts with cut-through provisions or other language that make the reinsurers directly liable is misplaced. *See Klockner Stadler Hurter Ltd. v. Ins. Co. of Pennsylvania*, 785 F. Supp. 1130, 1134 (S.D.N.Y. 1990) (finding a direct cause of action where reinsurer agreed to "Contractor's All Risks Policy, which apparently assigns to [the original insured] the right to sue reinsurers directly . . . . [the reinsurer] seems to have consented to being sued by insureds."); *Mercantile & Gen. Reins. Co., plc. v. Colonial Assur. Co.*, 184 A.D.2d 177, 180 (1st Dep't 1992), *rev'd sub nom., Mercantile & Gen. Reins. Co., plc v. Colonial Assur. Co.*, 82 N.Y.2d 248 (1993) (denying summary judgment because "[t]he language employed in these documents, to the effect that the [reinsurer] would handle claims directly with the original assured in the event the original reassureds failed, created an ambiguity as to the parties' intent"); *Bruckner-Mitchell v. Sun Indemnity Co.*, 82 F.2d 434, 445 (D.C. Cir. 1936) (analyzing what was labeled as "reinsurance" for surety bonds where materialmen claimed that non-payment of their fees was an "event of default" under the bonds that justified payment by reinsurers; acknowledging the general presumption "that typical reinsurance agreements do not operate in favor of the original insured," and rejecting materialmen's arguments under certain of the reinsurance contracts, but permitting claims to proceed under certain of the agreements which were "not typical agreements but were special" in including provisions which the court deemed required direct payment to materialmen on behalf of the bondholder).

7

argument, Amtrak relies on *World Omni Fin. Corp. v. Ace Cap. Re., Inc.*, in which the court found that World Omni's captive insurer was "a nominal intermediary and was never intended by either party to be the actual insurer." No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002). To determine whether the reinsurer had any liability to the original insured on the facts of that case, the court considered "(1) whether the reinsurance agent was the ultimate, consistent reimburser of losses of the insured; and (2) whether this status was conveyed to the insured." *Id.* (citing *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 308 (S.D.N.Y. 1996)). In deciding that these factors were met, the Court emphasized that World Omni dealt directly with the reinsurer. *Id.* at *1. Specifically, the reinsurer "(1) negotiated and was involved in the drafting of both the insurance policy and the reinsurance agreement; (2) was involved in the creation of [the captive] as the passive insurer; (3) has requested and accepted numerous reports and information from [the original insured] regarding losses; and (4) has had its outside auditors review a wide variety of documentary materials and information provided by [the original insured]." *Id.* at *2. By contrast, Amtrak has neither alleged facts nor adduced evidence that it dealt directly with Partner Re (much less showing dealings anywhere near the extent in *World Omni*). Based on Amtrak's attorney arguments alone and absent discovery, the Court cannot determine that the parties intended Partner Re, rather than PRIL, to be Amtrak's actual insurer.

Amtrak also touts a case – *China Union Lines Ltd. v. Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir. 1985), in which the Second Circuit allowed an insured to sustain a claim against reinsurers – but fails to note the decision turned on the reinsurer's failure to argue lack of privity at the trial court level. *Id.* By contrast, Partner Re has timely filed this Motion at its first opportunity, arguing lack of privity with Amtrak and presenting proper evidence in support.

8

Thus, this case falls well within the general presumption that an original insured has no direct right of action against a resinsurer. *Id*. (reciting the general presumption).

## IV. PRIL IS A NECESSARY PARTY TO CLAIMS AGAINST PARTNER RE

Finally, Amtrak argues that PRIL is not a necessary party. Opp. at 16-17. This argument is based on the incorrect assumptions that (i) Amtrak has a direct right of action against Partner Re; and (ii) the Reinsurance Contract between Partner Re and PRIL is precisely coextensive with the PRIL Policy between PRIL and Amtrak. Since neither assumption is correct, Rule 19 dictates that PRIL is a necessary to any claims based on the Reinsurance Contract.

Because Amtrak concedes that it placed its insurance with PRIL (not Partner Re), it is plain that the court "cannot accord complete relief among [the] existing parties." Fed. R. Civ. P. 19(a)(1)(A). "It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." *Mazzio v. Kane*, No. 14 Civ. 616, 2014 WL 2866040, at *6 (E.D.N.Y. June 24, 2014); *accord Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y.2000) (collecting cases). Unless PRIL is joined, the Court cannot afford relief among the existing parties with whom PRIL separately contracted (Amtrak in the PRIL Policy, and Partner Re in the separate Reinsurance Contract).

Moreover, Amtrak ignores differences in the scope of the PRIL Policy versus the Partner Re Reinsurance Contract. Since the PRIL policy sublimits flood (but does not exclude flood loss), while the Partner Re Reinsurance Contract excludes flood entirely, there is a real risk that the parties would not be afforded complete relief in PRIL's absence. *See* Moving Br. at 6 (citing the contrasting policy provisions). Despite these provisions, Amtrak asserts without support or reasoned analysis that Partner Re's payment to Amtrak would cover Amtrak's losses and "completely resolve any obligation that PRIL would have to cover Amtrak's losses." Opp. at 17. But since PRIL could be liable to Amtrak for flood loss under the PRIL Policy, and PRIL cannot

9

look to Partner Re to cover those losses under the Reinsurance Contract, PRIL cannot "protect [its] interest" in this litigation unless it is joined. *See* Fed. R. Civ. P. 19(a)(1)(B)(i). Alternately, PRIL could potentially dispute the outcome of this case and attempt to seek recovery for flood loss from Partner Re despite the plain exclusion in the Reinsurance Contract. Partner Re would then be subject to multiple obligations – a situation Rule 19 operates to avoid. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii). Partner Re cannot rely on the argument of Amtrak's counsel that PRIL will not assert such a claim and should not be required to do so.

It is unsurprising that in similar scenarios involving three separate entities linked by two separate contracts, courts have held that all three entities are necessary parties to a dispute between the two entities who are not in direct contractual privity. For example, in *Delcon Const. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, a construction company contracted with a building owner, who, in turn, entered into a loan agreement with HUD's predecessor-in-interest. 205 F.R.D. 145, 146 (S.D.N.Y. 2002). The construction company attempted to sue HUD directly, alleging meruit/unjust enrichment and conversion of trust funds. *Id.* However, the Court ruled that the property owner should be joined as a necessary party because (i) the Court needed to determine the "rights and obligations of [company] and [building owner] under the construction contract" to resolve the issues; and (ii) without joinder, HUD could be subject to "inconsistent and duplicative obligations" to the company in this action and to the building owner in another. *Id.* at 148. As the same difficulties would arise in PRIL's absence here, the Court should either join PRIL as a necessary party or dismiss Amtrak's claims against Partner Re.

## CONCLUSION

For the reasons discussed above and in Partner Re's moving brief, Partner Re respectfully requests that the Court either (i) join PRIL as a plaintiff to this suit; or (ii) require Amtrak to dismiss its claims against Partner Re, and grant such other relief as the Court deems appropriate.

Dated: New York, New York
January 5, 2015

        ROPES & GRAY LLP

        By: /s/ Catherine A. Mondell
        Catherine A. Mondell
        (catherine.mondell@ropesgray.com)
        800 Boylston Street
        Boston, MA  02199
        Telephone: (617) 951-7000

        Evan P. Lestelle
        (evan.lestelle@ropesgray.com)
        1211 Avenue of the Americas
        New York, NY 10036
        Telephone: (212) 596-9000

*Attorneys for Defendant Partner Reinsurance Europe plc*