UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>                   Plaintiff,<br><br>     vs.<br><br>ARCH SPECIALTY INSURANCE COMPANY;<br>ASPEN SPECIALTY INSURANCE COMPANY;<br>COMMONWEALTH INSURANCE COMPANY;<br>FEDERAL INSURANCE COMPANY;<br>LEXINGTON INSURANCE COMPANY;<br>LIBERTY MUTUAL FIRE INSURANCE COMPANY;<br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON<br>and CERTAIN LONDON MARKET INSURANCE<br>COMPANIES subscribing to Policy Nos.<br>507/N11NA08240, 507/N11NA08241, 507/N11NA08242,<br>507/N11NA08244, 507/N11NA08244, 507/N11NA08245<br>and GEP 2944;<br>MAIDEN SPECIALTY INSURANCE COMPANY;<br>MAXUM INDEMNITY COMPANY;<br>NAVIGATORS INSURANCE COMPANY;<br>PARTNER REINSURANCE EUROPE plc;<br>RSUI INDEMNITY COMPANY;<br>STEADFAST INSURANCE COMPANY;<br>TORUS SPECIALTY INSURANCE COMPANY; and<br>WESTPORT INSURANCE CORPORATION,<br><br>                   Defendants. | Civ. Action No.:14-cv-7510 (JSR) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
THE OCCURRENCE ENDORSEMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

ARGUMENT ........................................................................................................ 1

I.  Amtrak's Interpretation Gives Meaning to All Parts of the Occurrence
    Endorsement, Including the Second and Third Sentences. ................................ 3

II. Defendants Are Unable to Posit an Alternative Construction Without
    Altering the Occurrence Endorsement's Plain Language. ................................. 5

III. All of Defendants' Remaining Arguments Lack Merit. ........................................... 7

    A.   Amtrak Does Not Seek an Impermissible Advisory Decision. .................... 7

    B.   This Motion Can Be Decided Without Extrinsic Evidence. ......................... 8

    C.   Amtrak's Position is Not Contrary to New York Law ................................. 9

    D.   There is No Ambiguity about the Relief Amtrak Seeks. ........................... 10

CONCLUSION ................................................................................................. 10

i

## TABLE OF AUTHORITIES

Page(s)

CASES

*Cummins, Inc. v. Atl. Mut. Ins. Co.*,
  56 A.D.2d 288 (N.Y. App. Div. 2008) ....................................................................... 8

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  261 F. Supp. 2d 293 (S.D.N.Y. 2003) ...................................................................... 7

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  503 F. Supp. 2d 699 (S.D.N.Y. 2007), *aff'd* 600 F.3d 190 (2d Cir. 2010).................. 7

*Fed. Ins. Co. v. PGG Realty, LLC,*
  538 F. Supp. 2d 680 (S.D.N.Y. 2008), *aff'd Fed. Ins. Co. v. Keybank Nat'l
  Ass'n*, 340 F. App'x 5 (2d. Cir. 2009) ....................................................................... 8

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*,
  906 F.2d 884 (2d Cir. 1990) ..................................................................................... 8

*Pac. Emplrs. Ins. Co. v. Troy Belting & Supply Co.*,
  No. 1:11-CV-912, 2014 U.S. Dist. LEXIS 84065 (N.D.N.Y. June 20, 2014 ............... 7

*Parks Real Estate Purchasing Group v. St. Paul Fire and Marine Ins. Co.*,
  472 F.3d 33 (2d Cir. 2006) ....................................................................................... 9

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,*
  No. 01 Civ. 9291, 2005 U.S. Dist. LEXIS 13001 (S.D.N.Y. Oct. 17, 2005) .............. 7

*World Trade Ctr. Props. L.L.C. v. Hartford Fire Ins. Co.*,
  345 F.3d 154, 188 (2d Cir. 2003) ............................................................................. 9

*Zurich Amer. Ins. Co. v. ABM Indus., Inc.*,
  397 F.3d 158 (2d Cir. 2005) ..................................................................................... 8

OTHER AUTHORITY

*A Reinsurance Perspective: The Aggregation of Losses Following the Tohoku
  Earthquake and Tsunami*, 22 Mealey's Litigation Report: Reinsurance
  (December 9, 2011) ............................................................................................... 3-4

# **ARGUMENT**

Defendants' Opposition takes issue with the anticipated application of the Occurrence Endorsement to the underlying facts, but the underlying facts are not at issue. At issue is only Plaintiff National Railroad Passenger Corporation's ("Amtrak") request for a two-part declaration, based on policy language, that: (1) any loss or losses arising *directly* from one common cause, event or catastrophe constitute a single occurrence, grouped together under a single set of policy limits; and (2) any loss or losses arising *indirectly* constitute separate occurrences, grouped together based on whatever cause(s), event(s) or catastrophe(s) they arise from directly.[1]

To put this Motion into context, the Occurrence Endorsement is unique among reported insurance cases. The standard occurrence definition in insurance policies is "arising directly *or indirectly*." Research disclosed none that use "directly" alone.

Defendants' Opposition establishes that Amtrak's motion should be granted. Defendants concede the first declaration requested above: that losses will be aggregated as one occurrence when they arise directly from one common cause, event or catastrophe and that "directly" means "directly."[2] The second declaration Amtrak requests is merely the inverse of the first – that indirect losses will be treated as occurrences separate from direct losses. But Defendants fail to address that second declaration, alleging it was never raised.[3]

---

[1]    *See* Moving Br. at 4 (emphasis supplied).

[2]    Defendants' Opposition Brief ("Opp. Br.") at 20.

[3]    Opp. Br. at 7, 20. *(*stating that, while the issue was not raised, Amtrak may be "hoping" that the Court "will apply the Occurrence Endorsement and hold that indirect losses cannot be aggregated as part of the same occurrences as direct losses").

Defendants' focus on the second and third sentences of the Endorsement does not alter this outcome, as those sentences cannot change the "arising directly from" limitation. The first sentence of the Endorsement explains how to treat a loss that arises directly from a single cause, the second sentence explains how to treat a loss that arises directly from several causes, and the third sentence explains how to treat continuing damage. Defendants struggle to rewrite the second and third sentences into a substitute for "or indirectly," and do so only by disregarding words and adding new ones.  If Defendants meant "directly or indirectly," then that is what they should have had their policies say.

Lacking a viable reading of the Occurrence Endorsement, Defendants then try to prevent this Court from deciding the Motion.  Defendants argue that a ruling would be an impermissible advisory opinion;[4] the plain language cannot be understood outside of the underlying facts;[5] and the Amtrak is not actually seeking the relief the Motion identies.[6] All three arguments are incorrect.  Defendants also strive to distract the Court's attention by devoting entire sections of their brief to refuting arguments not at issue.  Those irrelevant sections can and should be disregarded.

Because the declaratory judgment that Amtrak seeks is a fair and reasonable interpretation of the Occurrence Endorsement, Amtrak's Motion should be granted.

---

[4]     Opp. Br. at 7-9.

[5]     *See id.* at 20-23.

[6]     *See id.* at 20.

dcdocs-89688.3

I.      **Amtrak's Interpretation Gives Meaning to All Parts of the Occurrence Endorsement, Including the Second and Third Sentences.**

Amtrak's Motion does not ignore the second sentence of the Occurrence Endorsement, as Defendants allege.  The first and second sentences do not conflict and Amtrak discusses them both in the Motion.[7]  The first sentence applies when a loss or losses arise directly "from *one* common cause, event or catastrophe."[8]  The second sentence applies only "*if*" a loss or losses are attributable to "*several* causes."[9]

The key to understanding these sentences is that the second sentence starts with the word "If." The second sentence does not apply to every loss; it applies only if there are "several causes."[10]  Without several causes, the first sentence stands alone.[11]

Under the first sentence, aggregation is limited to "losses arising directly."  This construction is unusual and there are no U.S. cases are on point.  Even in England, where the words "directly occasioned by" are used to aggregate losses in reinsurance policies, commentators note "the absence of judicial guidance."[12]  Still, it is known that, depending on the facts, policy limits may apply more than once under such language:

---

[7]     *See* Orin Aff. Exs. 3-26, at Endorsement No. 9 (emphasis supplied).  If this Court finds merit in Defendants' construction of the second sentence, there is an inherent conflict between the first and second sentences which renders the endorsement ambiguous and not subject to resolution by this Motion.

[8]     *See* Orin Aff. Exs. 3-26, at Endorsement No. 9 (emphasis supplied).

[9]     *Id.* (emphasis supplied).

[10]    The words "in an unbroken chain of causation" do not alter the threshold requirement that the loss must first be attributable to several causes.

[11]     The use of "causes," as opposed to "events," is significant. A loss may be the endpoint of a series of events, but that would not cause the second sentence to apply.

[12]    Alt et al., *A Reinsurance Perspective: The Aggregation of Losses Following the Tohoku Earthquake and Tsunami*, 22 Mealey's Litigation Report: Reinsurance (December 9, 2011), at 4. A true and

> It may well be that some losses may be considered 'indirectly occasioned' by the earthquake and tsunami . .  and therefore too remote to be aggregated with losses directly occasioned by the earthquake or tsunami . . . If losses caused by the tsunami cannot be considered as *directly occasioned by* the earthquake, then there will be two catastrophes.[13]

Thus, the answer lies in the plain language.  The Occurrence Endorsement calls for losses to be grouped with the common cause, event or catastrophe from which they arise directly.  If losses are too remote to be considered as arising directly from a common cause, event or catastrophe, they should be aggregated with the cause from which they themselves arise directly.  If that leads to multiple limits, then this is a consequence that, within the insurance world, was known to exist with such language.

Contrary to Defendants' claim, Amtrak's Motion also addressed the third sentence of the Endorsement.[14]  That sentence applies with equal force, depending on which of the first two sentences is applicable.  When the first sentence applies, all losses that arise directly shall be treated as a single occurrence, no matter when or where they occur:

> Any insured loss or several insured losses arising directly from one common cause, event or catastrophe and during the period of this insurance. [ ] All such loss or losses shall be added up and the result shall be treated as one occurrence irrespective of the period of time or area within which such losses occur.[15]

The same is true when the second sentence applies:

---

correct copy is attached to the Reply Affidavit of Rhonda D. Orin, submitted in support of this Reply, as Exhibit A.

[13]     *Id.* at 3 (emphasis supplied).  That analysis addressed clauses that aggregate losses solely on the basis of catastrophe.

[14]     This sentence states: "All such loss or losses shall be added up and the result shall be treated as one occurrence irrespective of the period of time or area within which such losses occur."

[15]     *See* Orin Aff. Exs. 3-26, at Endorsement No. 9 (emphasis supplied).

> If such loss or several losses are attributable to several causes in an unbroken chain of causation, the cause which triggered the chain of causation is understood to be the common cause, event or catastrophe. All such loss or losses shall be added up and the result shall be treated as one occurrence irrespective of the period of time or area within which such losses occur.[16]

Both constructions conform to the Occurrence Endorsement's plain language.

## II.   Defendants Are Unable to Posit an Alternative Construction Without Altering the Occurrence Endorsement's Plain Language.

In an effort to prove the flaws in Amtrak's interpretation, Defendants offer their own explanation of how the endorsement should be read:

> Read as a whole – as it must be – the Occurrence Endorsement therefore provides that where there are several insured losses, those losses will be aggregated as one occurrence when: (1) the losses arise directly from one common cause, event, or catastrophe; and/or (2) the losses are attributable to several causes in an unbroken chain of causation, in which case the cause that triggered the chain of causation is understood to be the common cause, event, or catastrophe.[17]

Ironically, it is this construction, not Amtrak's, that alters the endorsement's plain language.  Among other things, Defendants do not mention the word "If;" they add the words "and/or;" and they entirely disregard "several causes" and "cause."[18]

---

[16]   *See id.*  Although this motion can be decided without resort to the underlying allegations, the Amended Complaint attributes the damage to the benchwalls, which are the most significant asset in Amtrak's claim, to a single cause: the chlorides the chlorides which have harmed and are continuing to harm the concrete structures and the steel within them.  The Amended Complaint does not allege that the benchwalls were damaged by being wet, by the force of the water, or by any other cause. The damage did not commence until the water was gone and it started in the North River Tunnel before it started in the East River Tunnel.  At trial, Amtrak expects to prove that, pursuant to this endorsement, which all Defendants included in their policies, there is a separate occurrence in each tunnel.

[17]   Opp. Br. at 7 (emphasis supplied).  By using "and/or" in a sentence that starts with "Read as a whole – as it must be," Defendants are admitting that in some circumstances, the endorsement as a whole permits either the first sentence or the second sentence to apply, but not both.

[18]   Opp. Br. at 6 ("[T]his attempt runs contrary to the plain language of the Occurrence Endorsement and fundamental New York law, which requires that every provision in a contract be given effect according to its plain meaning").

dcdocs-89688.3

Defendants' explanation establishes that Amtrak's motion should be granted.  The statement that "losses will be aggregated as one occurrence when [ ] the losses arise directly from one common cause, event or catastrophe," combined with the concession that "'directly' means 'directly,'" matches the relief Amtrak seeks in its Motion.[19]

Even if Defendants were allowed to read the "If" as meaning "and" that would not change the practical meaning of the Occurrence Endorsement.  Although the change would permit the combination of the first and second sentence, unless a loss or losses were attributable to "several causes," the second sentence still would not apply.

Defendants contort the plain language in an effort to prove that even when there are not "several causes," the second sentence nevertheless controls.  For example, they try to turn "several" into "one" by inserting "any of" – words not found in the policy:

> The Occurrence Endorsement at issue includes three sentences that are relevant to this motion, and those sentences make clear that any insured loss attributable to <u>any of</u> "several causes in an unbroken chain of causation" constitutes loss arising from a single "occurrence."[20]

Also, they regularly leave out "several causes" entirely, as in "Amtrak's allegations show that its losses were 'attributable to an unbroken chain of causation' and therefore can be aggregated as one occurrence under the Occurrence Endorsement."[21]

Defendants obviously do not like the words of the Occurrence Endorsement.[22]  Nevertheless, they are bound by its terms.[23]

---

[19]     Opp. Br. at 20.

[20]     Opp. Br. at 5-6.

[21]     Opp. Br. at 1; see also Opp. Br. at 2, 7 and 12.

[22]     Extrinsic evidence, if allowed, would show that in November 2011, Defendants changed the occurrence definition.  *See* Ex. A to Affidavit of Cathy H. Rawlings, sworn to on January 14, 2014.

6

### III.   All of Defendants' Remaining Arguments Lack Merit.

To avoid the challenges presented by this Motion, Defendants try to prevent this Court from addressing it.  Defendants argue, without basis, that a ruling would be an impermissible advisory opinion;[24]  the policies cannot be interpreted outside of the underlying facts;[25] Amtrak's position is contrary to the New York law;[26] and losses arising indirectly are not part of the Motion.[27]

### A.   Amtrak Does Not Seek an Impermissible Advisory Opinion.

None of the cases cited by Defendants show Amtrak is seeking an impermissible advisory opinion.[28]  This case is ripe for resolution because Defendants admitted the existence of an active controversy over the occurrence language.[29] [30]

---

[23]   *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 503 F. Supp. 699, 702 (S.D.N.Y. 2007), *aff'd* 600 F.3d 190 (2d Cir. 2010).

[24]   Opp. Br. at 7-9.

[25]   Opp. Br. at 4-7; 15-19.

[26]   Opp. Br. at 10-14.

[27]   Opp. Br. at 20.

[28]   Defendants' cases involve motions to resolve abstract questions or parties and disputes that were not at issue.  *See, e.g.*, *Pac. Emplrs. Ins. Co. v. Troy Belting & Supply Co.*, No. 1:11-CV-912, 2014 U.S. Dist. LEXIS 84065 (N.D.N.Y. June 20, 2014).  That court rejected an insurance company's motion for a declaration of a legal standard that might someday be implied in lieu of policy language.  *See id.*  The court held that the insurance company "failed to identify any specific [underlying] lawsuits upon which it [sought] a judgment" and the motion regarded issues not yet in dispute. *See id.* at *19-25. Here, these matters are in active dispute.

[29]   *E.g.*, Amended Answers ¶103 of Arch, Lexington, Certain Excess Insurers and Liberty Mutual.  All other answers except for Partner Re were the same. Partner Re's answer was inconclusive; it denied a justiciable case or controversy absent PRIL.  *See* Partner Re's Amended Answer ¶103.

[30]   *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 295-96 (S.D.N.Y. 2003) ("defendant itself concedes that there exists 'an actual and continuing controversy' between the parties"); *see also SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC,* No. 01 Civ. 9291, 2005 U.S. Dist. LEXIS 13001 (S.D.N.Y. Oct. 17, 2005)

The only issue here is the proper application of contract language.  In New York, the interpretation of insurance policies is a matter of law.[31]  A court that assesses policy language may issue a decision.[32]  Amtrak's Motion is in accord with New York law.

### B.    This Motion Can Be Decided Without Extrinsic Evidence.

Equally unavailing is Defendants' claim that the Occurrence Endorsement cannot be understood without extrinsic evidence or consideration of the underlying facts.[33]  Since Defendants claim that the Occurrence Endorsement is unambiguous,[34] by their own reasoning extrinsic evidence should not be allowed.  If Defendants argue that the language is ambiguous, it should be construed against Defendants and in favor of Amtrak.[35]  Such construction is particularly apt per the "Policy Authors" provision.[36]

If this Court were to consider extrinsic evidence, it would support Amtrak's claim as to the proper construction of the Occurrence Endorsement.  Among other things, it would

---

[31]    *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).

[32]    *Zurich Amer. Ins. Co. v. ABM Indus., Inc.*, 397 F.3d 158, 164 (2d Cir. 2005).

[33]    Amtrak did not present this Court with extrinsic evidence when it cited to court decisions that are on point.  *See* Moving Br. at 11; Opp. Br. at 18-19.

[34]    Opp. Br. at 1, 20.

[35]    *See*, *e.g.*, *Fed. Ins. Co. v. PGG Realty, LLC,* 538 F. Supp. 2d 680, 701 (S.D.N.Y. 2008), *aff'd Fed. Ins. Co. v. Keybank Nat'l Ass'n*, 340 F. App'x 5 (2d. Cir. 2009).  Defendants concede that the Second Circuit has held that New York law does not deny businesses *contra proferentem* because they are "sophisticated."  *See* Def. Br. at 16, n.11, Defendants' cases are inapposite because they regard disputes between insurance companies or where policyholders were deemed akin to insurance companies.  *See*, *e.g.*, *Cummins, Inc. v. Atl. Mut. Ins. Co.*, 56 A.D.2d 288, 290 (N.Y. App. Div. 2008). Amtrak is not an insurance company.

[36]    Although some defendants delete this provision by endorsement, the majority do not.  Moreover, all Defendants are bound by the New York law on *contra proferentem.*

dcdocs-89688.3

show that within weeks of Sandy, Defendants changed the definition of occurrence in its renewal policies.[37]

### C.      Amtrak's Position is Not Contrary to New York Law.

Defendants go far afield to argue that New York law on causation is inconsistent with Amtrak's understanding of the endorsement.  They cite a First Circuit decision from 1996[38] in lieu of New York cases cited by Amtrak.  While irrelevant, that decision fails to refute that, under New York law, causation is the immediate cause of a loss.  A New York court will not look back to the beginnings of a loss to identify its cause.[39]

Defendants then contemplate differences between "arising out of" and "caused by," a wholly irrelevant discussion.  The policy language here is "arising directly from."[40] Finally, Defendants contend that Amtrak "admits that there was an unbroken chain of causation . . . and, as such, a single occurrence" with regard to certain surfaces of the tunnels.[41]  The reference to "unbroken chain of causation" is purposefully taken out of context.  For there to be an unbroken chain of causation, there must first be "several causes" of a loss.  With regard to the benchwalls, the entire provision does not apply.

---

[37]     See supra at n.15.

[38]     Opp. Br. at 11.  Defendants cite two Court of Appeals decisions from 1918 and 1923 for basic principles and miscite World Trade Ctr. Props. L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 188 (2d Cir. 2003), which involved policies without occurrence definitions. Opp. Br. at 10.

[39]     Parks Real Estate Purchasing Grp. v. St. Paul Fire and Marine Ins. Co., 472 F.3d 33 (2d Cir. 2006).

[40]     Opp. Br. at 13-14.

[41]     Opp. Br. at 14.  Defendants cite to "unbroken chain of causation" out of context and meticulously avoid the threshold requirement of "several causes."

dcdocs-89688.3

**D.      There is No Ambiguity about the Relief Amtrak Seeks.**

Defendants inexplicably deny that Amtrak seeks a declaration as to losses arising indirectly.[42]  They claim that Amtrak "is merely requesting that the Court confirm that the word 'directly' means 'directly' and that the first sentence does not state 'directly or indirectly.'"[43]  Such is not the case.[44]  Defendants also devote Section IV to an analysis of the facts.  But they are not before this Court at this time.[45]

<u>CONCLUSION</u>

Amtrak respectfully requests that this Court grant the Motion in its entirety.

Dated:   January 15, 2015

By:   /s/
                  Rhonda D. Orin, Esq. (RO-0359)
                  rorin@andersonkill.com
                  Daniel J. Healy, Esq. (DH-7396)
                  dhealy@andersonkill.com
                  Marshall Gilinsky, Esq. (MG-8398)
                  mgilinsky@andersonkill.com
                  **ANDERSON KILL, L.L.P.**
                  1717 Pennsylvania Avenue, N.W.
                  Washington, DC  20006
                  Telephone:  202-416-6500

                  Finley Harckham (FH-8219)
                  fharckham@andersonkill.com
                  Peter A. Halprin, Esq. (PH-2514)
                  phalprin@andersonkill.com
                  **ANDERSON KILL, P.C.**
                  *Attorneys for Plaintiff*

---

[42]   *See* Moving Br. at 4 (emphasis supplied).

[43]   Opp. Br. at 20.

[44]   *See supra* at n.13.

[45]   Amtrak responds to these factual inaccuracies through its Reply to Defendants' counterstatement. If this Court allows further briefing after discovery, Amtrak requests to supplement its briefing. Defendants' request for a ruling on single occurrence must be denied.  *See* Opp. Br. at 2.

10

dcdocs-89688.3

dcdocs-89688.3