UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

NATIONAL RAILROAD PASSENGER            :
CORPORATION,                           :
                                       :
                    Plaintiff,         :
                                       :
          v.                           :
                                       :
ARCH SPECIALTY INSURANCE COMPANY;      :   14 Civ. 7510 (JSR)
ASPEN SPECIALTY INSURANCE COMPANY;     :
COMMONWEALTH INSURANCE COMPANY;        :
FEDERAL INSURANCE COMPANY; LEXINGTON   :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE :
INSURANCE COMPANY; CERTAIN             :
UNDERWRITERS AT LLOYD'S OF LONDON and  :
CERTAIN LONDON MARKET COMPANIES        :
Subscribing to Policy Nos. 507/N11NA08240, :
507/N11NA08241, 507/N11NA08242,        :
507/N11NA08244, 507/N11NA08244,        :
507/N11NA08245 and GEP 2944; MAIDEN    :
SPECIALTY INSURANCE COMPANY; MAXUM     :
INDEMNITY COMPANY; NAVIGATORS          :
INSURANCE COMPANY; PARTNER             :
REINSURANCE EUROPE plc; RSUI INDEMNITY :
COMPANY; STEADFAST INSURANCE COMPANY;  :
TORUS SPECIALTY INSURANCE COMPANY; and :
WESTPORT INSURANCE CORPORATION,        :
                                       :
                    Defendants.        :
                                       :
                                       :
------------------------------------------------------------------------x

## DEFENDANT PARTNER RE'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT .................................................................................................1

UNDISPUTED FACTS .........................................................................................................2

I.      AMTRAK, PRIL AND THEIR BROKERS .............................................................2

II.     THE REINSURANCE CONTRACT BETWEEN PRIL AND PARTNER RE..................3

III.    THE PRIL POLICY WORDING..............................................................................5

IV.     AMTRAK'S SANDY FLOODWATER CLAIM ..........................................................6

ARGUMENT .......................................................................................................................7

I.      LEGAL PRINCIPLES GOVERNING RESOLUTION OF THIS MOTION ....................7

II.     AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER
        RE......................................................................................................................8

        A.      Amtrak Has No Privity with Partner Re Under The Reinsurance Contract ........... 8

        B.      The Reinsurance Contract Contains No "Cut-Through" Provision ...................... 9

        C.      PRIL Is Not a Mere Administrative Convenience ................................................ 11

III.    AMTRAK'S EFFORTS TO CONFUSE THE ISSUES CANNOT AVOID
        THE RESULT MANDATED BY THE REINSURANCE CONTRACT ..........................12

        A.      The PRIL Policy Wording Is Not the Reinsurance Contract ............................... 12

        B.      Amtrak Cannot Sustain a Direct Suit Against Partner Re Based on Partner
                Re's Billing Arrangement with PRIL ................................................................. 14

        C.      Amtrak Cannot Bring Direct Suit Against Partner Re Based on Partner Re's
                Reservation of Its Rights in Connection with Amtrak's Claim ........................... 15

CONCLUSION....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat*,
   948 F. Supp. 285, 308 (S.D.N.Y. 1996)............................................................................11

*China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.*,
   755 F.2d 26, 30 (2d Cir. 1985).........................................................................................8

*Colonial Penn Ins. Co. v. Am. Centennial Ins. Co.*,
   No. 96 Civ. 6051, 1997 WL 10004, at *1 n.3 (S.D.N.Y. Jan. 10, 1997), *aff'd*, 133
   F.3d 906 (2d Cir. 1997)...................................................................................................14

*Hunt Ltd. v. Lifschultz Fast Freight, Inc.*,
   889 F.2d 1274, 1277 (2d Cir. 1989)..................................................................................7

*Irizarry v. Catsimatidis*,
   722 F.3d 99, 103 n.2 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1516 (2014)......................7

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*,
   No. 06 Civ. 4023, 2007 WL 1862162, at *2 n.3 (S.D.N.Y. June 29, 2007)................ 15-16

*Jurupa Valley Spectrum, LLC v. National Indem. Co.*,
   555 F.3d 87, 89 (2d Cir. 2009)................................................................................*Passim*

*Krumme v. WestPoint Stevens, Inc.*,
   238 F.3d 133, 139 (2d Cir. 2000)......................................................................................7

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
   225 F.3d 270, 275 (2d Cir. 2000)......................................................................................7

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102, 115 (2d Cir. 2010)......................................................................................8

*Olin Corp. v. Am. Home Assur. Co.*,
   704 F.3d 89, 99 (2d Cir. 2012)..........................................................................................7

*OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co.*,
   995 N.Y.S.2d 35, 38 (1st Dep't 2014) ............................................................................15

*Price Trucking Corp. v. Norampac Indus., Inc.*,
   748 F.3d 75, 84 (2d Cir. 2014)..........................................................................................8

*State ex rel. Grupp v. DHL Exp. (USA), Inc.*,
   19 N.Y.3d 278, 285-86 (2012)....................................................................................... 8-9

*Travelers Indem. Co. v. Household Int'l, Inc.*,
    775 F. Supp. 518, 525 (D. Conn. 1991)...............................................................................14

*World Omni Fin. Corp. v. Ace Cap. Re., Inc.*,
    No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002) ........................10, 11

**OTHER AUTHORITIES**

Fed. R. Civ P. 12(b)(7)...........................................................................................................2, 12

Fed. R. Civ. P. 56...................................................................................................................1, 7

Steven Plitt, et al., Couch on Insurance 3d, § 39:2 (2014) ............................................................3

National Association of Insurance,  "Captive Insurance Companies," dated Feb. 12, 2015,
*available at*, http://www.naic.org/cipr_topics/topic_captives.htm ..................................................3

## PRELIMINARY STATEMENT

Defendant Partner Reinsurance Europe plc ("Partner Re") respectfully submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 56 for summary judgment on the grounds that Partner Re should be dismissed as a defendant in this case because Plaintiff National Railroad Passenger Corporation ("Amtrak") lacks privity with Partner Re.[1]

During the 2011-2012 policy period at issue, Amtrak insured shares of its risk with a number of direct insurers. Among them was Amtrak's captive insurer, Passenger Railroad Insurance Limited ("PRIL"), from whom Amtrak obtained two direct insurance policies.  PRIL, in turn, reinsured each of those two policies though contracts of facultative reinsurance, one of which was with reinsurer Partner Re (herein, the "Reinsurance Contract").[2]

Because Partner Re's only contractual relationship is with PRIL, not Amtrak, there is no privity between Amtrak and Partner Re that would serve as a basis for Amtrak to bring a direct suit against Partner Re.  *Infra* Section II.A.  The Court need consider nothing further to decide this Motion in Partner Re's favor.

Consistent with the general principle that a suit for breach of contract cannot be sustained in the absence of contractual privity, controlling New York law holds that an insured (such as Amtrak) generally does not have a direct right of action against a reinsurer (such as Partner Re). A narrow exception exists in instances where the contract of reinsurance contains a so-called "cut-through" provision that, "apparent on its face", expressly grants policyholders a direct right of action against the reinsurer.  *Jurupa Valley Spectrum, LLC v. National Indem. Co.*, 555 F.3d

---

[1] In support of its motion, Partner Re also submits a Rule 56.1 Statement of Undisputed Material Facts ("56.1 Statement") and the Declaration of Catherine A. Mondell ("Mondell Decl.") with exhibits.

[2] PRIL reinsured the other policy it issued with reinsurer SCOR, who was named in Amtrak's original Complaint as a defendant, but is no longer a party to this action.

87, 89 (2d Cir. 2009).  A court in this district has found on a set of particularly extreme facts that the general presumption could be overcome when the parties' interactions consistently demonstrate a mutual intent to deal with one another directly and to treat the direct insurer as a mere administrative convenience.  Despite Amtrak's attempts to shoehorn itself into one of these two narrow exceptions, it is beyond genuine dispute that neither circumstance exists here.  *Infra* Section II.A, II.B.

In addressing Partner Re's 12(b)(7) motion on these same points, Amtrak relied heavily on mislabeling of key documents, speculation regarding extrinsic evidence that discovery has proven incorrect, and related efforts to confuse the issues.  Accordingly, Partner Re provides with this Motion the documents evidencing (i) the exchanges that led to Partner Re's issuance of the Reinsurance Contract; (ii) the separate request that Partner Re review the draft of the PRIL policy (herein, the "PRIL Policy Wording") that is the subject matter of the Reinsurance Contract issued by Partner Re to PRIL, but is ***not*** the Reinsurance Contract; (iii) Partner Re's acknowledgement that it "noted and agreed" to the PRIL Policy Wording used in issuing the PRIL contract; and (iv) Partner Re's full reservation of rights in connection with the claim in view of PRIL's default on its obligations to investigate and adjust the loss.  Though Partner Re submits that these materials are not necessary to decide the motion, they support and are consistent with Partner Re's position under the plain language of the Reinsurance Contract that there is no contractual privity between Amtrak and Partner Re.  *Infra*, Section III.

Accordingly, summary judgment is proper to dismiss Amtrak's claims against Partner Re.

## UNDISPUTED FACTS

### I.    AMTRAK, PRIL AND THEIR BROKERS

For years, Amtrak has used PRIL, its wholly-owned "captive" insurance company, to structure its insurance programs to meet Amtrak's risk management needs.  *See* 56.1 Stmt ¶ 1; Mondell Decl., Ex. A (Deposition of Cathy Rawlings ("Rawlings Tr.")) at 121:9-122:13.[3] Amtrak retained brokers to act as its agents in procuring and negotiating the terms of its insurance program for the December 1, 2011 – December 1, 2012 policy period.  *See* 56.1 Stmt ¶ 2; Rawlings Tr. at 27:19-29:12.  Specifically, Marsh acted as Amtrak's main broker, and with Amtrak's authorization, Marsh retained Price Forbes to assist with procuring insurance capacity from markets in London and Europe.  *See* 56.1 Stmt ¶ 3; Rawlings Tr. at 39:2-41:5.

### II.    THE REINSURANCE CONTRACT BETWEEN PRIL AND PARTNER RE

In fall 2011, Partner Re was providing reinsurance to PRIL for the December 1, 2010 – December 1, 2011 policy period.  *See* 56.1 Stmt ¶ 4; Declaration of Daniel Bollier in Support of Partner Re's Motion for Summary Judgment ("Bollier Decl.") ¶ 3, Ex. A.  Price Forbes approached a Partner Re senior underwriter, Daniel Bollier, to request that Partner Re renew its participation as a reinsurer of PRIL for the 2011-2012 policy period.  *See* Bollier Decl. ¶ 4.

Price Forbes mistakenly provided Partner Re with a renewal slip intended for an insurer participating in Amtrak's direct insurance; Partner Re responded with a reminder that it was unable to provide direct insurance to insureds such as Amtrak and a request for the proper

---

[3] Captive insurance companies can, among other things, offer elements of coverage such as TRIEA (terrorism risk insurance) that cannot be offered by certain commercial insurers or cannot be offered by those insurers at competitive rates.  *See generally* Steven Plitt, et al., Couch on Insurance 3d, § 39:2 (2014) (captive insurer can "insure risks that are otherwise difficult to insure on the traditional insurance market").  *See also* "Captive Insurance Companies," National Association of Insurance Commissioners, dated Feb. 12, 2015, *available at* http://www.naic.org/cipr_topics/topic_captives.htm (captives are "typically established to meet the risk-management needs of the owners . . .").

reinsurance documentation.  *See* 56.1 Stmt ¶¶ 4-5; Bollier Decl. ¶ 5, Ex. B (explaining that "we unfortunately cannot sign" because "[y]ou attached the direct slip, whereas we are behind the captive").

Once Price Forbes provided the proper reinsurance slip for the renewal of its participation as a reinsurer of PRIL, Partner Re executed and returned it.  *See* 56.1 Stmt ¶¶ 6-7; Bollier Decl., Ex. C; Mondell Decl., Ex B.  By its express terms, that document is the contract that governs the rights and obligations between Partner Re (as reinsurer) and PRIL (as reinsured).  *See* Bollier Decl., Ex. C at DOC0003914 ("This document details the Contract Terms entered into by the Insurer(s) and constitutes the Contract Documentation.").  A copy of the same document is maintained in Partner Re's files as the Reinsurance Contract.  *See* Bollier Decl., Ex. D ("Reinsurance Contract").  Likewise, Amtrak maintained a copy of the Reinsurance Contract in its files that it identified with metadata as "PartnerRe Policy 500 x125.pdf".  *See* Mondell Decl. ¶ 12, Ex. K.

The Reinsurance Contract identifies Amtrak as the "Original Insured" and PRIL as the "Reinsured," and Partner Re signed as the Reinsurer.  *Id.* at PAR00000002, 10.   It is signed by Partner Re and stamped with a specific type of stamp used to bind it to coverage, which includes an official Partner Re policy reference number, F352256.  *See* Bollier Decl. ¶ 7; Reinsurance Contract at PAR00000010.

As respects payment, the Reinsurance Contract further states that it is "Subject to all terms, clauses and conditions as Original Policy/ies [between PRIL and Amtrak] and to follow in all respects the settlements or other payments of whatsoever nature made by the Reassured [PRIL] within the limits of this Reinsurance hereon."  *Id.* at PAR00000003.  Consistent with the fact that the payee under the Reinsurance Contract is PRIL, the Reinsurance Contract nowhere

provides for direct payment from Partner Re to Amtrak. Instead, it provides that "[r]einsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance." *See id*. at PAR00000003. Further reinforcing that there is no provision for direct payment from Partner Re to Amtrak, the Insolvency Clause of the Reinsurance Contract states, "In the event of insolvency of the reinsured Company [PRIL], this reinsurance shall be payable directly to the Company [PRIL] . . . without diminution because of the insolvency of the Company…." *Id.* at PAR00000005.

**III.     THE PRIL POLICY WORDING**

Marsh forwarded to Price Forbes a wording (*i.e.*, a draft form) for the property insurance policy that PRIL would issue to Amtrak for the 2011-2012 policy period ("PRIL Policy Wording"). *See* 56.1 Stmt ¶ 15: Mondell Decl., Ex. D.

Marsh requested that Price Forbes provide a copy of the PRIL Policy Wording to Partner Re for Partner Re's review before the document was issued by PRIL as the PRIL Policy. *See* 56.1 Stmt ¶ 16; Mondell Decl., Ex. D at DOC0010047 (acknowledging that there would be a "policy signed by PRIL" and a separate "reinsurance slip"). Price Forbes, in turn, forwarded the PRIL Policy Wording to Partner Re, expressly noting that the wording was for PRIL (*i.e.*, Amtrak's captive), not PRIIL (a Partner Re entity with a confusingly similar acronym). *See* 56.1 Stmt ¶ 17; Bollier Decl., Ex. H. The face of the PRIL Policy Wording demonstrated that it would be issued by PRIL as it lists PRIL as the "INSURER"; it provides a blank for PRIL's "Authorized Signature"; and it references PRIL again at the conclusion of the policy wording on page 35: "Attached to and forming part of [PRIL] Policy No NRPC-N11NA08246". *See id.* at DOC0010389, DOC0010423.

In order to provide reinsurance to PRIL, Partner Re's Senior Underwriter, Daniel Bollier, reviewed the PRIL Policy Wording provided by Price Forbes and stamped the first page as "Noted and Agreed".  *See* 56.1 Stmt ¶ 19; Bollier Decl., Ex. I (PRIL Policy Wording) at PAR00000115.  Mr. Bollier attested that "it is common for a broker to request that Partner Re review and sign off on the original policy form to be issued by a direct insurer for whom Partner Re is providing facultative reinsurance."  Bollier Decl. ¶ 13.  Mr. Bollier attested that the "Noted and Agreed" stamp is "not a type of stamp that I use when binding Partner Re to a reinsurance contract as . . . it has no space for an internal Partner Re policy reference number."  *Id.* ¶ 14.  As Price Forbes' placing broker testified, the PRIL Policy Wording was neither issued nor created by Partner Re and is distinct from the Reinsurance Contract.  *See* Mondell Decl.; Ex. E (Deposition of Charlotte Todd ("Todd Tr.")) at 32:9-17; *see also* Bollier Decl. ¶ 15.

After Partner Re stamped the PRIL Policy Wording, accepting that it would be reinsuring PRIL for the risks PRIL would be accepting under that contract (subject always to the terms of the Reinsurance Contract), Prices Forbes forwarded the PRIL Policy Wording to Marsh, including the London-specific provisions, the NMA2419 Lines Clause and the LMA5062 Fraudulent Claim Clause,"[f]or good order."  *See* 56.1 Stmt ¶ 21; Mondell Decl., Ex. F.

## IV.   AMTRAK'S SANDY FLOODWATER CLAIM

Upon learning of a substantial increase in Amtrak's loss estimate and the potential for a claim to policies on excess layers of insurance, including the PRIL policy reinsured by Partner Re, Partner Re fully reserved its rights in connection with the claim, issuing a letter joined by PRIL's other reinsurer (SCOR) on the 2011-12 property program.  *See* 56.1 Stmt ¶ 22; Mondell Decl., Ex G.  Despite Partner Re's inquiries, Amtrak and PRIL refused to address PRIL's position regarding Amtrak's claim.  *See* 56.1 Stmt ¶ 23; Mondell Decl., Ex. H.  Given the

uncertainty regarding what, if anything, PRIL was doing to satisfy its obligations, Partner Re made arrangements to receive information regarding the adjustment through York, the adjuster investigating the loss on behalf of direct insurers.  *See id.*  To obtain information about Amtrak's claim, Partner Re was required to, and did, pay a share of the adjustment expenses.

To date, PRIL has not paid any portion of Amtrak's claim.  *See* Mondell Decl., Ex. I (excerpt of Amtrak's Response to Insurers' First Set of Requests for Admission) at No. 95.  So far as appears, PRIL has done nothing to investigate or adjust the loss.

<u>**ARGUMENT**</u>

## I.   LEGAL PRINCIPLES GOVERNING RESOLUTION OF THIS MOTION

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party must show that there is no issue of material fact, and the court must "view the evidence in the light most favorable to" the non-moving party in determining whether the moving party has met this burden.  *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) *cert. denied*, 134 S. Ct. 1516 (2014) (citations omitted).

Where the interpretation of a contract – including an insurance policy or contract of reinsurance – is at issue, the court first looks to the language of the contract.  *See Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000).  "When interpreting an unambiguous contract, 'words and phrases are given their plain meaning,'" and "[u]nder New York law, a court must enforce that plain meaning, '[r]ather than rewrite an unambiguous agreement.'"  *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) (citations omitted).  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Olin Corp. v. Am. Home*

*Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)).

Under New York law, where a contract is plain, it "should be construed without reference to extrinsic evidence." *Id.* (citing *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir. 1998)). Even if an ambiguity is found, "the court may nonetheless grant summary judgment where the extrinsic evidence illuminating the parties['] intended meaning of the contract is so one-sided that no reasonable person could decide to the contrary[,]" or "where there is no extrinsic evidence that would support a resolution of [the] ambiguities in favor of the nonmoving party's case." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 115 (2d Cir. 2010) (citations and quotation marks omitted).

## II.    AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER RE

The unambiguous language of the Reinsurance Contract governs the rights and obligations between Partner Re (as reinsurer) and PRIL (as reinsured).  The Reinsurance Contract includes no provision enabling Amtrak, a non-party under the contract, to sue Partner Re directly. Nothing more is required to decide this motion in Partner Re's favor.  Moreover, the extrinsic evidence that Amtrak has previously urged the Court to consider supports Partner Re's position, not Amtrak's.

### A.    Amtrak Has No Privity with Partner Re Under The Reinsurance Contract

Amtrak has neither alleged facts nor adduced evidence to show that the unambiguous terms of the Reinsurance Contract allow it to sustain a direct right of action against Partner Re. Under black letter New York law, "reinsurance contracts are contracts of indemnity, which give the original assured no right of action against the reinsurer." *China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.,* 755 F.2d 26, 30 (2d Cir. 1985).   This is consistent with the

fundamental principle that where there is no contractual privity between two parties, there can be no claim for breach of contract.  *See Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 84 (2d Cir. 2014); *State ex rel. Grupp v. DHL Exp. (USA), Inc.*, 19 N.Y.3d 278, 285-86 (2012) ("[P]laintiffs—who were not parties to the underlying agreement . . . — cannot recover under a breach of contract action because they lack privity to enforce the benefit of the parties' bargain.").

Amtrak's pleadings acknowledge that it lacks contractual privity with Partner Re.  As to each defendant other than Partner Re, Amtrak alleges that the insurer "sold an insurance policy to Amtrak", but as to Partner Re, it omits that allegation.  *See* Mondell Decl., Ex. C (Am. Compl., ECF No. 65) at ¶¶ 41-50, 52-55.

Given this acknowledgment of a lack of contractual privity with Partner Re, Amtrak focuses its arguments on each of the two narrowly-defined exceptions to the general rule that the original insured has no right of action against a reinsurer – (i) those circumstances where there is an express "cut-through" provision; and (ii) those circumstances where all parties have acted consistently over time as though the captive reinsurer were merely an administrative convenience.  The facts here do not meet either of those exceptions, as the sections that follow demonstrate.

### B.    The Reinsurance Contract Contains No "Cut-Through" Provision

Under controlling law, that exception is defined narrowly to provide a direct right of action only if "the reinsurance agreement contains a so-called 'cut through' provision granting policyholders a direct right of action against reinsurers, which is apparent on its face."  *Jurupa*, 555 F.3d at 89.

The requirement that the "cut-through" be "apparent on its face" is a rigorous one – the contract must plainly show an express intent to contract around the general rule.  In *Jurupa,* the original insured had argued that it had a direct right of action against the reinsurer because the Reinsurance Policy stated, "[T]he parties to this Reinsurance intend that Reinsurer . . . shall pay all amounts . . . due Insureds and other persons as and when due directly on behalf of the Reinsured[.]"  *Id.*   The Second Circuit held that such a provision was insufficiently precise to overcome the presumption that an original insured has no direct right of action against a reinsurer.  *Id.*

As in *Jurupa*, the Reinsurance Contract here does not provide for direct payment to Amtrak.  Instead, it provides that Partner Re will pay: "Subject to all terms, clauses and conditions as Original Policy/ies and ***to follow*** in all respects the settlements or other ***payments*** of whatsoever nature ***made by the Reassured within the limits of this Reinsurance hereon***."  *See* Reinsurance Contract at PAR00000003 (emphasis added).  Reinforcing this, the Reinsurance Contract acknowledges that although payments under the Reinsurance Contract are to be made at the same time as payments under the direct insurance policies, the two types of payments are distinct.  *Id.* at PAR00000003 ("Reinsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance.").  Further underscoring the intent for payment to flow from Partner Re to PRIL is the Insolvency Clause.  *Id.* at PAR00000005 ("In the event of the insolvency of the reinsured Company [PRIL], this reinsurance shall be payable directly to the Company, or its liquidator . . . .").

Although the Reinsurance Contract reinsures the Original Policy issued by PRIL, and follows its terms, clauses and conditions insofar as they are "within the limits of [the] Reinsurance," it remains the case that the Reinsurance Contract is controlling as regards Partner

10

Re's obligations.  Thus, while the PRIL Policy contains a provision providing that loss presented to PRIL "shall be adjusted with and payable to [Amtrak]," PRIL Policy Wording at PAR00000121, the provisions of the Reinsurance Contract cited above establish that Partner Re's payment obligation is to PRIL.

### C.    PRIL Is Not a Mere Administrative Convenience

The only other circumstance in which district courts have permitted a direct action by an original insured against a reinsurer is even more narrowly circumscribed.  *See World Omni Fin. Corp. v. Ace Cap. Re., Inc.*, No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002).   In that case, to determine whether the reinsurer has any liability to the original insured, the court considered "(1) whether the reinsurance agent was the ultimate, consistent reimburser of losses of the insured; and (2) whether this status was conveyed to the insured."  *Id.* (citing *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 308 (S.D.N.Y. 1996)).[4] In deciding that these factors were met, the court noted that the reinsurer "(1) negotiated and was involved in the drafting of both the insurance policy and the reinsurance agreement; (2) was involved in the creation of [the captive] as the passive insurer; (3) has requested and accepted numerous reports and information from [the original insured] regarding losses; and (4) has had its outside auditors review a wide variety of documentary materials and information provided by

---

[4] Neither *World Omni* nor *Allstate* cite any controlling New York authority in support of this supposed exception, and none appears to exist.  Though *Allstate* cites *Squibb-Mathieson Intern. Corp. v. St. Paul Mercury Ins. Co.*, 44 Misc. 2d 835 (Sup. Ct., N.Y. Cty. 1964), that case held, consistent with controlling New York law, that no action could be sustained by the insured against the reinsurers because the reinsurance contract at issue contained no "provision whereby the reinsurer binds himself to pay to the policyholders any loss for which the insurer may become liable" (*i.e.*, no "cut through" provision). Neither *World Omni* nor *Allstate* should be read to override the numerous New York appellate decisions holding that "Absent provisions to the contrary, a reinsurer is under no contract obligation to the original insured and does not become liable to him." *Turner Constr. Co. v. Seaboard Sur. Co.*, 85 A.D.2d 325, 327 (1st Dep't 1982) (citations and quotation marks omitted).

[the original insured]."  *Id.* at *2.  In effect, both the reinsurer and original insured were treating the captive insurer as a mere administrative convenience to facilitate what was otherwise a direct, sustained series of contacts solely between the reinsurer and original insured.

By contrast, Amtrak has neither alleged facts nor adduced evidence remotely approaching the type of sustained contact that led the court in *World Omni* to set aside the general presumption.  To the contrary, the undisputed facts show that it was Amtrak's broker, Marsh, that drafted the PRIL Policy; PRIL was not created for the purpose of this transaction; and Partner Re did not participate in PRIL's creation.  *See* 56.1 Stmt ¶¶ 1, 15.

## III.   AMTRAK'S EFFORTS TO CONFUSE THE ISSUES CANNOT AVOID THE RESULT MANDATED BY THE REINSURANCE CONTRACT

As the parties have briefed these issues on Partner Re's Fed. R. Civ. P. 12(b)(7) motion, Partner Re addresses below the arguments that Amtrak has raised in its effort to avoid the result mandated by the plain language of the Reinsurance Contract and controlling New York law.

### A.    The PRIL Policy Wording Is Not the Reinsurance Contract

Amtrak has engaged in an extended effort to pass off a copy of the PRIL Policy Wording as a contract with Partner Re merely because Partner Re stamped that document "Noted and Agreed" when asked by Amtrak's broker to review the PRIL Policy. The discovery that has been conducted subsequent to Partner Re's earlier motion establishes beyond genuine dispute that neither Partner Re nor the brokers with whom it was interacting viewed the PRIL Policy Wording as a replacement for the Reinsurance Contract.[5]

---

[5] Amtrak cannot seriously argue that the PRIL Policy Wording is the reinsurance contract issued by Partner Re when Amtrak's document production in this litigation included no copy of the PRIL Policy Wording.  On the contrary, it included a copy of the Reinsurance Contract with the filename "PartnerRe Policy 500 x125.pdf" – records that are consistent with Partner Re's documents and position.  *See* Mondell Decl. ¶ 12, Ex. K.

That the PRIL Policy Wording is not a contract with Partner Re is evident on the face of the document, which states on the first Declarations page: "INSURER: Passenger Railroad Insurance, Limited" and provides a blank for the "Authorized Signature" of "PASSENGER RAILROAD INSURANCE LIMITED", and references PRIL again at the conclusion of the policy wording on page 35: "Attached to and forming part of Passenger Railroad Insurance, Limited Policy No NRPC-N11NA08246".     PRIL Policy Wording at PAR00000115-161. Instead, it is the policy reinsured by Partner Re through the separate Reinsurance Contract. Since the Reinsurance Contract is reinsuring the PRIL Policy (i.e., the Original Policy), and is not insuring Amtrak property directly, it is ordinary practice to provide a copy of the Original Policy for the reinsurers' review.  *See* Bollier Decl.  ¶¶ 5, 13, Ex. I at PAR00000115 (e-mail exchange regarding the PRIL Policy Wording in which Mr. Bollier states: "attached PRIL policy noted and agreed" and encloses the stamped copy of the PRIL Policy Wording which Amtrak misrepresents in its Amended Complaint as a Partner Re policy).  That "Noted and Agreed" stamp does not transform the document into something other than what it states that it is on its face, a policy wording prepared for PRIL to issue to Amtrak.  *See* PRIL Policy Wording at PAR00000115, 149.

Any reasonable reading of the e-mails between the brokers and Partner Re confirms this:

- In autumn 2011, Price Forbes approached Partner Re senior underwriter, Daniel Bollier, requesting that Partner Re renew for the 2011-2012 policy period its participation as a reinsurer of PRIL.  *See* Bollier Decl. ¶ 4.

- Partner Re expressly reminded Price Forbes that it was not able to provide direct insurance to Amtrak, and requested a proper reinsurance documentation.  *See* Bollier Decl., Ex B.

- After Price Forbes provided the proper documentation, Partner Re executed and returned the Reinsurance Contract.  *See* Bollier Decl., Ex C; Mondell Decl., Ex. B.

13

- In a separate request, Marsh asked Price Forbes to review the PRIL Policy Wording with Partner Re before PRIL issued its own contract.  *See* Mondell Decl., Ex. D.

- Price Forbes forwarded the PRIL Policy Wording to Partner Re, expressly noting that the wording was for PRIL, not to be confused with the unrelated Partner Re entity, PRIIL.  *See* Bollier Decl., Ex. H.

- Partner Re returned the PRIL Policy Wording, after stamping as "Noted and Agreed."  Bollier Decl., Ex. I at PAR00000115.

- Prices Forbes forwarded the PRIL Policy Wording, as "Noted and Agreed" by Partner Re, to Marsh, noting that Price Forbes had included certain London-specific provisions "[f]or good order."  Mondell Decl., Ex. F.

Any continuing effort by Amtrak to mislabel the PRIL Policy Wording as the Reinsurance Contract is belied by the documents, summarized above, and the confirming testimony from a Price Forbes placing broker acting on behalf of Amtrak and PRIL. *See* 56.1 Stmt ¶ 20; Todd Tr. at 32:9-17.

### B.  Amtrak Cannot Sustain a Direct Suit Against Partner Re Based on Partner Re's Billing Arrangement with PRIL

Amtrak also relies on an assertion that the contract PRIL had with Partner Re is a "fronting" arrangement, arguing that when Partner Re reinsured PRIL, PRIL ceded 100% of the risk and 100% of the premium to Partner Re.  However, this type of billing arrangement is common in the reinsurance context.  *See Colonial Penn Ins. Co. v. Am. Centennial Ins. Co.*, No. 96 Civ. 6051, 1997 WL 10004, at *1 n.3 (S.D.N.Y. Jan. 10, 1997), *aff'd*, 133 F.3d 906 (2d Cir. 1997) (In a "'fronting' arrangement, . . . a licensed insurer issues a policy with the understanding that another party will reinsure the fronting insurer for most, if not all, of the claims on that policy.").   Such an arrangement does not create contractual privity between Partner Re and Amtrak. *See Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 525 (D. Conn.

14

1991) (finding that "[the reinsurer's] own internal corporate structure and billing arrangements [with the insurer] do not redefine the contracting parties to the [insurance contract]" and rejecting the argument that an insurance contract can be assigned to another entity by virtue of a reinsurance contract).

Moreover, Amtrak's argument that this was a mere fronting arrangement is not factually correct.  The Reinsurance Contract expressly excludes flood and earthquake.  *See* Reinsurance Contract at PAR00000002.  The PRIL Policy Wording (and PRIL Policy ultimately issued by PRIL) sublimit flood and earthquake loss, but do not expressly exclude those perils.  *See* PRIL Policy Wording at PAR00000119; Mondell Decl., Ex. J ("PRIL Policy").  In addition, Amtrak argues that the flood sublimit in the PRIL Policy is subject to a carve-out for ensuing loss; in contrast, the flood exclusion in the Reinsurance Contract has no ensuing loss carve-out.  *See* PRIL Policy at AMT00046027.

### C.    Amtrak Cannot Bring Direct Suit Against Partner Re Based on Partner Re's Reservation of Its Rights in Connection with Amtrak's Claim

Finally, Amtrak cannot rely on PRIL's default of its obligations in connection with Amtrak's Sandy floodwater claim as a basis to argue that Partner Re has become directly liable to Amtrak.

Here, once Partner Re became aware of Amtrak's loss estimate and the potential for a claim to policies participating on excess layers of insurance, including the PRIL policy reinsured by Partner Re, it fully reserved its rights in connection with the claim. *See* 56.1 Stmt ¶ 22; Mondell Decl., Ex. G.  As PRIL was not providing any information to its reinsurers, Partner Re, along with PRIL's other reinsurer, sought to establish either (i) an agreement that reinsurers could directly handle the claim; or (ii) that PRIL was performing its obligations to investigate and adjust the loss.  *Id.*  PRIL was non-responsive and Amtrak failed to agree to either proposal.

As a result, Partner Re proceeded, subject to its full reservation of rights, to obtain information regarding the investigation and adjustment. *See* 56.1 Stmt ¶ 24; Mondell Decl., Ex H.  To obtain those materials, it was required to, and did, pay a share of the adjustment expenses.

Reinsurers can and often do reserve their rights in the handling of claims. *See, e.g., OneBeacon Am. Ins. Co. v. Colgate-Palmolive Co*, 995 N.Y.S.2d 35, 38 (1st Dep't 2014) (noting that although that the reinsurer may adjust the original insured's Policy claims and indemnify the reinsured for claim payouts, the reinsured's "dual role does not [] give rise to any liability to [original insured] because [original insured] lacks contractual privity with [reinsurer]"); *Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.*, No. 06 Civ. 4023, 2007 WL 1862162, at *2, n.3 (S.D.N.Y. June 29, 2007), *aff'd*, 555 F.3d 87 (2d Cir. 2009).   However, nothing about a reinsurer's reservation of rights creates direct liability to the insured. *Jurupa*, 555 F.3d at 89. Here, Amtrak cannot cause PRIL to wholly default on its obligations to investigate and adjust the loss and then assert that default as a basis to establish a direct right of action against Partner Re.

## CONCLUSION

For the reasons set forth above, Partner Re respectfully requests that the Court dismiss all claims against Partner Re.


Dated: New York, New York
       February 20, 2015

ROPES & GRAY LLP

By: /s/ Catherine A. Mondell
Catherine A. Mondell
800 Boylston Street
Phone: (617) 951-7000
Fax: (617) 951-7050
Catherine.Mondell@ropesgray.com

Evan Lestelle
Elizabeth Bierut
1211 Avenue of the Americas

New York, NY 10036
Telephone: (212) 596-9000
Evan.Lestelle@ropesgray.com
Elizabeth.Bierut@ropesgray.com

*Attorneys for Defendant Partner*
*Reinsurance Europe plc*