UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER　　　　　　　　　　　:
CORPORATION,　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　v.　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
ARCH SPECIALTY INSURANCE COMPANY;　　　　　　:　　14 Civ. 7510 (JSR)
ASPEN SPECIALTY INSURANCE COMPANY;　　　　　　:
COMMONWEALTH INSURANCE COMPANY;　　　　　　:
FEDERAL INSURANCE COMPANY; LEXINGTON　　　　:
INSURANCE COMPANY; LIBERTY MUTUAL FIRE　　　:
INSURANCE COMPANY; CERTAIN　　　　　　　　　　:
UNDERWRITERS AT LLOYD'S OF LONDON and　　　　:
CERTAIN LONDON MARKET COMPANIES　　　　　　:
Subscribing to Policy Nos. 507/N11NA08240,　　　　　　:
507/N11NA08241, 507/N11NA08242,　　　　　　　　　　:
507/N11NA08244, 507/N11NA08244,　　　　　　　　　　:
507/N11NA08245 and GEP 2944; MAIDEN　　　　　　　:
SPECIALTY INSURANCE COMPANY; MAXUM　　　　　:
INDEMNITY COMPANY; NAVIGATORS　　　　　　　　:
INSURANCE COMPANY; PARTNER　　　　　　　　　　:
REINSURANCE EUROPE plc; RSUI INDEMNITY　　　　:
COMPANY; STEADFAST INSURANCE COMPANY;　　　:
TORUS SPECIALTY INSURANCE COMPANY; and　　　　:
WESTPORT INSURANCE CORPORATION,　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　Defendants.　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------------------------x

### PARTNER RE'S LOCAL RULE 56.1 STATEMENT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

　　　　Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Partner Reinsurance Europe plc ("Partner Re"), submits this statement of material facts as to which there is no genuine issue to be tried in support of its Motion for Summary Judgment.

*Amtrak, PRIL and their brokers*

1. For years, Amtrak has used Passenger Railroad Insurance Limits ("PRIL"), its wholly owned "captive" insurance company, to structure its insurance programs to meet Amtrak's risk management needs. *See* Declaration of Catherine Mondell ("Mondell Decl."), Ex. A (Deposition of Cathy Rawlings ("Rawlings Tr.")) at 121:9-122:13.

2. Amtrak retained brokers to act as its agents in procuring and negotiating the terms of its insurance program for the December 1, 2011 – December 1, 2012 policy period. *See id.* at 27:19-29:12.

3. Amtrak retained Marsh to serve as its main broker and Marsh, with Amtrak's authorization, retained Price Forbes to assist with procuring insurance capacity from markets in London and Europe. *See id.* at 39:2-41:5.

*The Reinsurance Contract Between PRIL and Partner Re*

4. In the fall of 2011, Partner Re was already providing reinsurance to PRIL for the 2010-2011 policy period. *See* Declaration of Daniel Bollier in Support of Partner Re's Motion for Summary Judgment ("Bollier Decl.") ¶ 3, Ex. A (2010-2011 Reinsurance Contract). Price Forbes approached a Partner Re senior underwriter, Daniel Bollier, requesting that Partner Re renew its participation as a reinsurer of PRIL for the 2011-2012 policy period. *See id.* ¶ 4.

5. Partner Re expressly reminded Price Forbes that it was not able to provide direct insurance to Amtrak, and requested a proper reinsurance slip as the basis for its contract. *See* Bollier Decl. ¶ 5, Ex B (11/18/11 Email from Daniel Bollier of Partner Re to Stuart Waghorne of Price Forbes) (explaining that "we unfortunately cannot sign" because "[y]ou attached the direct slip, whereas we are behind the captive").

6. Price Forbes provided the proper reinsurance slip, which expressly provides: "This document details the Contract Terms entered into by the Insurer(s) and constitutes the Contract Documentation." Bollier Decl., Ex. C (11/22/11 Email from Stuart Waghorne to Daniel Bollier, attaching the reinsurance slip).

7. Partner Re executed and returned the signed reinsurance slip, renewing its participation as a reinsurer of PRIL for the 2011-2012 policy year. *See* Mondell Decl., Ex B (11/22/11 Email from Charlotte Todd of Price Forbes to Sharon Walker of Marsh, attaching the reinsurance slip, as signed by Partner Re). A copy of the same document, with endorsements, is maintained in Partner Re's files as the Reinsurance Contract. *See* Bollier Decl., Ex. D ("Reinsurance Contract"). Amtrak maintained a copy of the Reinsurance Contract in its files that it identified with metadata as "PartnerRe Policy 500 x125.pdf". *See* Mondell Decl. ¶ 12, Ex. K.

8. The Reinsurance Contract is signed by Partner Re and stamped with a specific type of stamp used to bind it to coverage, which includes the official Partner Re policy reference number, F352256. *See* Bollier Decl. ¶ 7, Ex. D at PAR00000010.

9. The Reinsurance Contract identifies Amtrak as the "Original Insured" and PRIL as the "Reinsured," and Partner Re signed as the Reinsurer. *Id.* at PAR00000002, 10.

10. The Reinsurance Contract provides that it is "Subject to all terms, clauses and conditions as Original Policy/ies and to follow in all respects the settlements or other payments of whatsoever nature made by the Reassured within the limits of this Reinsurance hereon." *Id.* at PAR00000003.

11. The Reinsurance Contract was subsequently amended by a series of endorsements. *See* Bollier Decl., Exs. E, F and G. Endorsement No. 6, the most recent,

3

provides that the Original Policy reinsured by Partner Re is the PRIL Policy on file with Price Forbes, and incorporates its terms to that extent.  *See* Bollier Decl., Ex. G.

13. The Reinsurance Contract does not provide for payment directly from Partner Re to Amtrak.  Instead, it provides that "[r]einsurers agree to pay their share of any loss hereon simultaneously with insurers participating in the original insurance."  Bollier Decl., Ex. D at PAR00000003.

13. The Partner Re Reinsurance Contract's Insolvency Clause states, "In the event of the insolvency of the reinsured Company [PRIL], this reinsurance shall be payable directly to the Company [PRIL] . . . without diminution because of the insolvency of the Company. . . ."  *Id.* at PAR00000005.

14. Amtrak does not allege in its operative Complaint that Partner Re sold an insurance policy "to Amtrak," as it alleges with respect to each of the other insurer-defendants.  *See* Mondell Decl., Ex. C ("Am. Compl.") at ¶¶ 42-50, 52-55.  Instead, Amtrak's Amended Complaint alleges as follows as respects Partner Re:

> Partner Re sold an insurance policy, policy number NRPC-N11NA08246 (the "Partner Re Policy"), with a policy period of December 1, 2011 to December 1, 2012, to protect against all risk of physical loss or damage to Amtrak's interest in all real and personal property and that identified Amtrak as the "Named Insured" and provided that "Loss, if any, shall be adjusted with and payable to National Railroad Passenger Corporation."  A true copy of the Partner Re Policy is attached hereto as Exhibit 19.

*See id.* at ¶ 51.

***The PRIL Policy Wording***

15. Marsh prepared a wording (*i.e.*, a draft form) for the property insurance policy that PRIL would issue to Amtrak for the 2011-2012 policy period ("PRIL Policy Wording").  *See* Mondell Decl., Ex. D (11/30/11 Email from Sharon Walker to Charlotte Todd, attaching the PRIL Policy Wording)

4

16. Marsh e-mailed Price Forbes to propose sending the PRIL Policy Wording to Partner Re before PRIL signed the contract. *See id.* at DOC0010047.

17. Price Forbes, in turn, forwarded the PRIL Policy Wording to Partner Re, taking care to note that the wording was for PRIL (*i.e.*, Amtrak's captive insurer), not PRIIL (a Partner Re entity with a confusingly similar acronym). *See* Bollier Decl., Ex. H (11/30/11 Email from Ian Dethridge at Price Forbes to Daniel Bollier, attaching the PRIL Policy Wording).

18. The PRIL Policy Wording states on the first page of the Declarations: "INSURER: Passenger Railroad Insurance, Limited" and provides a blank for the "Authorized Signature" of "PASSENGER RAILROAD INSURANCE, LIMITED", and references PRIL again at the conclusion of the policy wording on page 35: "Attached to and forming part of Passenger Railroad Insurance, Limited Policy No NRPC-N11NA08246". *Id.* at DOC0010389, DOC0010423.

19. Partner Re's Senior Underwriter, Daniel Bollier, reviewed the PRIL Policy Wording provided by Price Forbes and stamped the first page as "Noted and Agreed". Bollier Decl. ¶ 14, Ex. I at PAR00000115. It is common for a broker to request that Partner Re review and sign off on the original policy form to be issued by a direct insurer for whom Partner Re is providing facultative reinsurance. Bollier Decl. ¶ 13. The "Noted and Agreed" stamp is not a type of stamp that Mr. Bollier uses when binding Partner Re to a reinsurance contract as it has no space for an internal Partner Re policy reference number. *Id.* at ¶ 14.

20. The PRIL Policy Wording was neither issued nor created by Partner Re and is distinct from the Reinsurance Contract. *See* Mondell Decl.; Ex. E (Deposition of Charlotte Todd ("Todd Tr.")) at 32:9-17; Bollier Decl. ¶ 14.

21.     After Partner Re stamped the PRIL Policy Wording, a Prices Forbes employee forwarded it to Marsh, noting that he had included certain provisions (the NMA2419 Lines Clause and the LMA5062 Fraudulent Claim Clause) "[f]or good order". *See* Mondell Decl., Ex. F (12/6/11 Email from Ian Dethridge to Sharon Walker, attaching the PRIL Policy Wording) at DOC0011558. The PRIL Policy Wording formed the basis for the PRIL Policy ultimately issued by PRIL. *See* Mondell Decl., Ex. J (PRIL Policy).

***Amtrak's Sandy Floodwater Claim***

22.     Upon learning of a substantial increase in Amtrak's loss estimate and the potential for a claim to policies participating on excess layers of insurance, including the PRIL policy reinsured by Partner Re, Partner Re fully reserved its rights in connection with the claim, issuing a letter joined by PRIL's other reinsurer (SCOR) on the 2011-12 property program. *See* Mondell Decl., Ex. G (11/20/13 Letter from Robert Steller at York to Philip Balderston and Cathy Rawlings at Amtrak). That letter provides in part:

> SCOR and Partner Re have not received any information from PRIL regarding this claim. . . . SCOR and Partner Re believe that it would be more efficient if they were permitted to adjust the claim directly with AMTRAK alongside of the companies that directly insured AMTRAK . . . . To the extent that PRIL takes a different view, SCOR and Partner Re request that PRIL explain all steps it has taken to date to adjust AMTRAK's claim in a business-like manner, together with appropriate supporting documentation.
>
> In light of the points set forth here, SCOR and Partner Re each reserve all of [sic] rights under the PRIL policy, their respective reinsurance agreements, at law, and otherwise. . . .
>
> Any investigation, review and/or adjustment by SCOR or Partner Re of the limited particulars of the claim presented to date is not intended to be, and should not be deemed to create, any cut-through or other direct contractual relationship between AMTRAK and reinsurers of PRIL nor does this letter create any new rights whatsoever between AMTRAK, PRIL and/or reinsurers of PRIL.

23. Although Partner Re made efforts to determine whether PRIL was prepared to step aside or, alternately, was performing its duties to investigate and adjust Amtrak's claim, *id.*, neither Amtrak nor PRIL provided any intelligible response beyond objecting to each effort by reinsurers to determine PRIL's position with respect to the claim. *See* Mondell Decl., Ex. H (6/26/14 Letter from Robert Steller to John Vanwart at Marsh).

24. Given the uncertainty regarding what, if anything, PRIL was doing to satisfy its obligations, Partner Re made arrangements, subject to a full reservation of rights, to receive information regarding the adjustment through York, the adjuster investigating the loss on behalf of direct insurers. *See id.* To obtain information about Amtrak's claim, Partner Re was required to, and did, pay a share of the adjustment expenses.

25. PRIL has not paid any portion of Amtrak's claim. *See* Mondell Decl., Ex. I (excerpt of Amtrak's Response to Insurers' First Set of Requests for Admission) at No. 95.

**ROPES & GRAY LLP**

By: \_s\ Catherine A. Mondell\_\_\_
Catherine A. Mondell (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050
Catherine.Mondell@ropesgray.com

Evan Lestelle
Elizabeth Bierut
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Evan.Lestelle@ropesgray.com
Elizabeth.Bierut@ropesgray.com

*Attorneys for Defendants Partner Reinsurance Europe plc, Torus Specialty Insurance Company, Westport Insurance Corporation, and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244 and 507/N11NA08244*

DATED: February 20, 2015