UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

NATIONAL RAILROAD PASSENGER
CORPORATION,

                          Plaintiff,

            v.

ARCH SPECIALTY INSURANCE COMPANY;
ASPEN SPECIALTY INSURANCE COMPANY;
COMMONWEALTH INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; LIBERTY MUTUAL FIRE
INSURANCE COMPANY; CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON and
CERTAIN LONDON MARKET COMPANIES
Subscribing to Policy Nos. 507/N11NA08240,
507/N11NA08241, 507/N11NA08242,
507/N11NA08244, 507/N11NA08244,
507/N11NA08245 and GEP 2944; MAIDEN
SPECIALTY INSURANCE COMPANY; MAXUM
INDEMNITY COMPANY; NAVIGATORS
INSURANCE COMPANY; PARTNER
REINSURANCE EUROPE plc; RSUI INDEMNITY
COMPANY; STEADFAST INSURANCE COMPANY;
TORUS SPECIALTY INSURANCE COMPANY; and
WESTPORT INSURANCE CORPORATION,

                        Defendants.

:  14 Civ. 7510 (JSR)

-------------------------------------------------------------------x

**LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
INSURERS' MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>REGARDING REPLACEMENT OF BENCHWALLS AND TRACK BED</u>**[1]

---

[1] All Insurer-Defendants join this motion, though Partner Re's participation in this brief is without waiver of its motion for summary judgment [ECF No. 162], seeking dismissal on the grounds that Partner Re reinsured Amtrak's captive insurer (non-party Passenger Railroad Insurance, Ltd.) and Amtrak has no right of direct action against Partner Re.

Pursuant to Rule 56.1(b) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendants Arch Specialty Insurance Company ("Arch"), Aspen Specialty Insurance Company ("Aspen"), Commonwealth Insurance Company ("Commonwealth"), Federal Insurance Company ("Federal"), Lexington Insurance Company ("Lexington"), Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Certain Underwriters at Lloyd's of London, and Certain London Market Companies Subscribing to Policy Nos. 507/N11NA08240 ("Lloyd's '240 Policy"), 507/N11NA08241 ("Lloyd's '241 Policy"), 507/N11NA08242 ("Lloyd's '242 Policy"), 507/N11NA08244 ("Lloyd's '244 Policy"), 507/N11NA08244 ("London Companies '244 Policy"), 507/N11NA08245 ("Inter Hannover") and GEP 2944 ("GEP"), Maiden Specialty Insurance Company ("Maiden Specialty"), Maxum Indemnity Company ("Maxum"), Navigators Insurance Company ("Navigators"), Partner Reinsurance Europe plc ("Partner Re"), RSUI Indemnity Company ("RSUI"), Steadfast Insurance Company ("Steadfast"), Torus Specialty Company ("Torus"), and Westport Insurance Corporation ("Westport") (collectively, "Insurers") submit this Local Civil Rule 56.1 Statement of Undisputed Facts in Support of Insurers' motion for partial summary judgment regarding Plaintiff's claim for replacement of benchwalls and track bed in their entirety. The exhibits referred to in this Statement are attached to the March 9, 2015 Declaration of Costantino P. Suriano ("Suriano Decl.") and the March 9, 2015 Declaration of Bruce R. Kaliner ("Kaliner Decl.") and are referred to as "Ex. __."

## INSURERS' LOCAL CIVIL RULE 56.1 STATEMENT

### Amtrak's Allegations

1.      Amtrak sets forth the allegations regarding its claim in its Amended Complaint. (Suriano Decl., Ex. 1).  Among these are allegations that on October 29, 2012, as a result of Superstorm Sandy (Suriano Decl., Ex. 1, ¶¶ 8 and 10):

> 8. The East River Tunnel ("ERT"), which consists of four tubes, two ventilation shafts and other structures, was inundated at mid-river up to the crowns of two tubes.  The tunnel under the Hudson River, known as the North River Tunnel ("NRT") consists of two tubes, a ventilation shaft, an egress shaft and other structures.  Both NRT tubes were inundated at mid-river above the height of the bench walls.

> 10. The bench walls, which are concrete and steel structures, are essential components of the tunnels.  They run from portal-to-portal, providing emergency egress from trains if necessary, along with access to the full length of the tunnels.  They also house duct banks that are packed with cables, wires and other equipment, used either for the operation of trains or for the transport of communications, power and other services from one side of the river to the other.

2.      Amtrak also alleges (Suriano Decl., Ex. 1, ¶¶ 12-14):

> 12. As the storm subsided, Amtrak commenced the complex process of dewatering each tunnel ….   Ultimately, Amtrak pumped more than 15 million gallons of water out of both tunnels combined ….

> 13.  After the storm was over and the tunnels were dewatered, additional physical damage began to take place within each tunnel due to various forms of chemical attack.  This damage was caused by highly reactive salts, principally chlorides and sulfates, that had thoroughly infiltrated essential components and were not removed by dewatering.

> 14.   When the water was pumped out, these remaining chlorides and sulfates were exposed to oxygen and moisture in the air.  The exposure caused the chlorides to attack the steel reinforcement in the benchwalls and the iron rails of the track bed ….

3.      Amtrak further alleges (Suriano Decl., Ex. 1, ¶¶ 78-81):

> 78. Subsequent to the storm, Amtrak began to suffer losses from chloride attack and sulfate attack on essential components of the ERT, including

the bench walls, the track structures and limited portions of the tunnel liner. These physical losses are continuing.

79. The remedy for such damage includes the replacement of the bench walls and the track structure in their entirety ….

80. Subsequent to the storm, Amtrak also began to suffer losses from chloride attack and sulfate attack on essential components of the NRT. Such chemical attack already has led to a bench wall incident that led to train delays and emergency repairs.

81. The damage to the NRT is continuing. The remedy includes the replacement of the bench walls and the track structure, which will lead to further business interruption losses. Temporary repairs in the interim are needed as well.

**Amtrak's Benchwall Claim**

5.    Amtrak admitted that it did not power wash any tubes within the ERT or NRT after dewatering from Sandy (Suriano Decl. Ex. 2 - Amtrak's Response to Defendants' First Request for Admissions ("Response"), Response Nos. 15-18 and 30-33).

6.    Amtrak alleges that salts were left behind in the dewatering process and that when the tunnel surfaces were exposed to oxygen and moisture, the salts "attack[ed] the steel reinforcement in the benchwalls" (Suriano Decl., Ex. 1 at ¶¶ 12-14; Kaliner Decl. Ex. 3 - Rawlings Dep. at 132:14-133:9; 147:16-148:20).

7.    Amtrak also admitted that there are sections within each of the tunnel tubes that Sandy floodwater did not reach (Suriano Decl., Ex. 2 Response Nos. 12, 14, 27, 29, and 69-74).

4





**HNTB's Assessment of Amtrak's Benchwalls**

13.    HNTB prepared a report issued on or about September 18, 2014 which set forth its positions regarding Amtrak's tunnels. (Suriano Decl., Ex. 11).

14.    The HNTB report, which "addresses the damage that was caused to the structural components of the tunnels and presents recommendations to remedy this damage to meet the current state of practice for rail tunnels," provides (Suriano Decl., Ex. 11 at 2):

> The most serious damage in the tunnels was found in the concrete bench walls. These bench walls, which run portal to portal, are an essential component of the tunnels. The structures provide emergency egress form trains when necessary as well as access to trains and track for emergency and other personnel. The interiors house ducts that contain electrical wiring, equipment, cables, and other essential equipment.

15.    HNTB found cracks, spalls, and corrosion in certain areas of the benchwalls, and HNTB concluded that because chlorides and sulfates had infiltrated the benchwall surfaces and

ducts, these substances could not be reliably removed.   Specifically, HNTB found (Suriano Decl., Ex. 11 at 2 and 51):

> Inspection has shown that the bench walls have significant damage, consistent with that of a century old tunnel.  The damage consists of corrosion of embedded steel elements, most commonly at the splicing chambers, horizontal cracking within the bench walls, and erosion along the base of the bench walls ....

16.      Thus, HNTB concluded (Suriano Decl., Ex. 11 at 2-3):

> It is accordingly recommended that the bench walls be replaced with new bench walls, constructed at the proper height to meet current fire-life safety standards (National Fire Protection Association (NFPA) 130).  As it is neither practical nor advisable from safety or other perspectives to construct the middle portion of a bench wall at different height than the two ends, it is recommended that the replacement be portal to portal.

17.      HNTB provided these recommendations to Amtrak (Suriano Decl., Ex. 11 at 52):

> Recommendations
>
> Based on our investigations and professional opinion, we recommend that the following actions be undertaken in the damaged tubes:
>
> *          *          *
>
> Perform the following work as soon as possible and as tunnel access allows:
>
> > 7. Remove the bench walls and replace with new bench walls, sized to conform to the requirements of NFPA 130 for the entire length of the tunnels (portal to portal).[2]

18.      The HNTB Report estimates the total amount for benchwall replacement (for the ERT and NRT tubes combined) at $479.4 million (Suriano Decl., Ex. 11 at 53).

**Amtrak's Track Bed Claim**

19.      Amtrak alleges that salts were left behind in the dewatering process and that when the tunnel surfaces were exposed to oxygen and moisture, the salts "attack[ed] the steel

---

[2] The HNTB Report refers neither to a specific provision of NFPA 130, nor to a specific edition of NFPA 130.

reinforcement in the … iron rails of the track bed" (Suriano Decl., Ex. 1 at ¶¶ 12-14; Kaliner Ex. 3 - Rawlings Dep. at 132:14-133:9; 147:16-148:20).



23.     Amtrak retained an engineering firm (HNTB) to provide a structural assessment of the ERT and the NRT (Suriano Decl., Ex. 1, ¶ 92).   When HNTB, Amtrak's retained engineering consultant and designated expert, issued its September 18, 2014 report entitled "Structural Assessment of the Amtrak Under River Tunnels in NYC Inundated by Super Storm Sandy" (the "HNTB report"), it asserted that the entire track bed needed to be replaced portal to

portal and increased the amount of that claim from $105,152,762 million to $192.3 million on

the following basis (Suriano Decl., Ex. 11 at 51) (emphasis added):

> The rail system used in both tunnels consists of rock ballast, treated timber ties, tie plates and clips, running rail and third rail. These components are now coated with chlorides. **Full removal of chlorides from the ballast, including from the inaccessible surfaces, is not possible; therefore the ballast should be removed in its entirety. The tie and rail systems have to be removed in order to remove the ballast. It should be replaced with direct fixation rail system, which is the state of practice for rail tunnels. The direct fixation system should be installed for the entire length of the tunnels, e.g. portal to portal.** This will provide Amtrak with a uniform track support system throughout each tunnel. In addition, this work should be accomplished in coordination with the bench wall replacement to minimize service interruptions.





**The Policies**

      31.    Amtrak purchased a set of property insurance policies for the 2011-12 policy year, which were in effect on October 29, 2012, and which insured Amtrak's property, including the benchwalls in the ERT and NRT, subject to the full terms, conditions, limitations, exclusions, and endorsements of those policies (the "Policies") (Suriano Decl., Ex. 1, ¶¶ 57, 71).

      32.    [REDACTED] For the purpose of this motion, with the exception of

Partner Re, the Manuscript Wording was incorporated in each of the Policies attached as exhibits to the Amended Complaint, subject to the terms, conditions, limitations, and endorsements of the Policies, as added by each insurer through its respective policy documentation.  Responding further, solely for the purposes of this motion, the operative contracts as to all Insurers' other than Partner Re (the "Policies") are attached to Amtrak's Amended Complaint as Exhibits 1-18, 20-24. The operative contract as to Partner Re, inclusive of all endorsements issued by Partner Re, is attached to the Suriano Decl. as Ex. 9.  For all purposes other than this motion, Insurers reserve and do not waive any disputes with Amtrak regarding the true and complete copies of their policies, which are pled in Insurers' respective Answers, and relate principally to the omission of endorsements not material here.

33.     Amtrak alleges that the Policies obligate the Insurers "to provide coverage for … increased cost of construction …" (Suriano Decl., Ex. 1, ¶62).

34.     The Policies' Demolition and Increased Cost of Construction Coverage Extension ("DICC") is sublimited to $125 million per occurrence and further provides (Suriano Decl., Ex. 17):

8.     <u>COVERAGE EXTENSIONS</u>

A.     <u>Demolition and Increased Cost of Construction</u>

In the event of loss or damage under this policy that causes the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property, this Company shall be liable for:

(1) the cost of demolishing the undamaged property including the cost of clearing the site;

(2) the proportion that the value of the undamaged part of the property bore to the value of the entire property prior to loss;

(3) increased cost of repair or reconstruction of the damaged and undamaged property on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, this Company shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced;

(4) any increase in the Time Element loss arising out of the additional time required to comply with said law or ordinance.

## NFPA 130

35.    The National Fire Protection Association ("NFPA") is an international non-profit private organization that maintains copyrighted standards for usage and adoption by local governments. NFPA 130 (Suriano Decl., Ex. 18) is a copyrighted document, prepared by the NFPA Technical Committee on Fixed Guideway Transit and Passenger Rail Systems, which is made up of representatives of engineering firms, railroad authorities, fire departments, and various other industry professionals.

36.    NFPA 130 (Suriano Decl., Ex. 18) provides in part:

IMPORTANT NOTICES AND DISCLAIMERS CONCERNING NFPA DOCUMENTS
NOTICE AND DISCLAIMER OF LIABILITY CONCERNING THE USE OF NFPA DOCUMENTS

NFPA codes, standards, recommended practices, and guides ("NFPA Documents") of which the document contained herein is one, are developed through a consensus standards development process approved by the American National Standards Institute. This process brings together volunteers representing varied viewpoints and interests to achieve consensus on fire and other safety issues. While the NFPA administers the process and establishes rules to promote fairness in the development of consensus, **it does not independently test, evaluate, or verify the accuracy of any information or the soundness of any judgments contained in NFPA Documents.**

*            *            *

**The NFPA has no power, nor does it undertake, to police or enforce compliance with the contents of NFPA Documents.**

12



38.     Amtrak Engineering Stations Standard Design Practices (SDP) originally issued on May 27, 2010 and revised on June 14, 2012 (Suriano Decl., Ex. 19 at 10) provides that Amtrak is exempt from state and local building and zoning laws.

MOUND COTTON WOLLAN & GREENGRASS

Costantino P. Suriano
(csuriano@moundcotton.com)
Bruce R. Kaliner
(bkaliner@moundcotton.com)
One New York Plaza, 44th Floor
New York, New York 10004
Telephone: (212) 804-4200

*Attorneys for Defendants International Insurance Company of Hannover SE, one of Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy No. 507/N11NA08245, Commonwealth Insurance Company, now known as Northbridge General Insurance Corporation, Lexington Insurance Company, Maiden Specialty Insurance Company, and Steadfast Insurance Company*

Dated: New York, New York
          March 9, 2015

ROPES & GRAY LLP

_____/s/_____
Catherine A. Mondell (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Phone: (617) 951-7000
Fax: (617) 951-7050
Catherine.Mondell@ropesgray.com

Evan Lestelle
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
Evan.Lestelle@ropesgray.com

*Attorneys for Defendants Partner*
*Reinsurance Europe plc, Torus Specialty*
*Insurance Company, Westport Insurance*
*Corporation, and Certain Underwriters at*
*Lloyd's of London and Certain London*
*Market Insurance Companies subscribing to*
*Policy Nos. GEP 2944, 507/N11NA08242,*
*507/N11NA08244 and 507/N11NA08244*

Dated: New York, New York
         March 9, 2015

FINAZZO COSSOLINI O'LEARY MEOLA &
HAGER, LLC

_____/s/_____

Christopher S. Finazzo
(christopher.finazzo.@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel : (646) 378-2033

*Attorney for Defendant Liberty Mutual Fire
Insurance Company*

Dated: New York, New York
        March 9, 2015

BRUCKMANN & VICTORY, L.L.P.

_____/s/_____

Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel : (212) 850-8500

*Attorneys for Defendants Arch Specialty
Insurance Company, Aspen Specialty
Insurance Company, Federal Insurance
Company, Certain Underwriters at Lloyd's
of London and Certain London Market
Insurance Companies subscribing to Policy
Nos. 507/N11NA08240 and
507/N11NA08241, Maxum Indemnity
Company, Navigators Insurance Company,
and RSUI Indemnity Company*

Dated: New York, New York
        March 9, 2015

579610.1