**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| ARCH SPECIALTY INSURANCE COMPANY; | :   14 Civ. 7510 (JSR) |
| ASPEN SPECIALTY INSURANCE COMPANY; | : |
| COMMONWEALTH INSURANCE COMPANY; | : |
| FEDERAL INSURANCE COMPANY; LEXINGTON | : |
| INSURANCE COMPANY; LIBERTY MUTUAL FIRE | : |
| INSURANCE COMPANY; CERTAIN | : |
| UNDERWRITERS AT LLOYD'S OF LONDON and | : |
| CERTAIN LONDON MARKET COMPANIES | : |
| Subscribing to Policy Nos.  507/N11NA08240, | : |
| 507/N11NA08241, 507/N11NA08242, | : |
| 507/N11NA08244, 507/N11NA08244, | : |
| 507/N11NA08245 and GEP 2944; MAIDEN | : |
| SPECIALTY INSURANCE COMPANY; MAXUM | : |
| INDEMNITY COMPANY; NAVIGATORS | : |
| INSURANCE COMPANY; PARTNER | : |
| REINSURANCE EUROPE plc; RSUI INDEMNITY | : |
| COMPANY; STEADFAST INSURANCE COMPANY; | : |
| TORUS SPECIALTY INSURANCE COMPANY; and | : |
| WESTPORT INSURANCE CORPORATION, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

------------------------------------------------------------------------x

**DEFENDANT PARTNER RE'S REPLY MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................1

ARGUMENT ..................................................................................................................1

I.      AMTRAK'S MISLABELING OF THE PRIL POLICY WORDING AS THE "REINSURANCE POLICY" IS BELIED BY THE UNDISPUTED EVIDENCE ...........1

II.      AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER RE.............4

     A.      Amtrak Is Not Entitled to Direct Payment from Partner Re ....................................4

     B.      Partner Re's Purported "Fronting Arrangement" with PRIL Does Not Create Privity with Amtrak .....................................................................................................8

     C.      Partner Re Never "Assumed Responsibility" for Amtrak's Claim.........................9

CONCLUSION...............................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat,*
948 F. Supp. 285, 308 (S.D.N.Y. 1996)...................................................................9

*Bruckner-Mitchell v. Sun Indemnity Co.,*
82 F.2d 434, 444-45 (D.C. Cir. 1936)...................................................................7

*China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.,*
755 F.2d 26, 30 (2d Cir. 1985)...................................................................4, 7

*Greenfield v. Philles Records,*
98 N.Y.2d 562, 569 (2002) ...................................................................6

*In re The Bennett Funding Grp., Inc.,*
60 Fed. App'x 863, 865, 866 (2d Cir. 2003)...................................................8, 9

*Ins. Co. of N. Am. v. Pyramid Ins. Co. of Bermuda,*
No. 92 Civ. 1816, 1994 WL 88701, at *4 (S.D.N.Y. Mar. 16, 1994)...................8-9

*Jurupa Valley Spectrum, LLC v. Nat'l Indem. Co.,*
555 F.3d 87, 89 (2d Cir. 2009)...................................................1, 4, 7

*Klockner Stadler Hurter Ltd. v. Ins. Co. of Pennsylvania,*
785 F. Supp. 1130, 1134 (S.D.N.Y. 1990)...................................................10

*Krumme v. WestPoint Stevens Inc.,*
238 F.3d 133, 139 (2d Cir. 2000) ...................................................3

*Major League Baseball Props. v. Salvino, Inc.,*
542 F.3d 290, 306 (2d Cir. 2008)...................................................4

*Mercantile & Gen. Reinsurance Co., plc. v. Colonial Assur. Co.,*
591 N.Y.S.2d 1015, 1017 (1st Dep't 1992) ...................................................10

*Seiden Assoc., Inc. v. ANC Holdings, Inc.,*
959 F.2d 425, 428 (2d Cir. 1992)...................................................6

*Trans-Res., Inc. v. Nausch Hogan & Murray,*
746 N.Y.S.2d 701, 706 (1st Dep't 2002) ...................................................7

*Turner Constr. Co. v. Seaboard Surety Co.,*
447 N.Y.S.2d 930, 932 (1st Dep't 1982) ...................................................1, 8

*World Omni Fin. Corp. v. Ace Cap. Re., Inc.*,
   No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002) ................................9

## PRELIMINARY STATEMENT

As set forth in Partner Re's moving papers, an insured has no direct right of action against a reinsurer unless the parties ***expressly*** contract to avoid that general rule. *Turner Constr. Co. v. Seaboard Surety Co.*, 447 N.Y.S.2d 930, 932 (1st Dep't 1982) ("Absent provisions to the contrary, a reinsurer is under no contract obligation to the original insured and does not become liable to him.") (citations and quotation marks omitted); *see also Jurupa Valley Spectrum, LLC v. National Indem. Co.*, 555 F.3d 87, 89 (2d Cir. 2009) (finding no direct right of action against a reinsurer unless reinsurance contract contains an express "cut-through" provision).

Amtrak does not – and cannot – contend that there is any express cut-through provision here. Nevertheless, Amtrak argues that this court should create for it a direct right of action against Partner Re, a reinsurer. *First*, Amtrak claims that it is entitled to direct payment from Partner Re, but that argument is based on a provision that is not in the Reinsurance Contract. *See infra*, Sections I, II.A. *Second*, Amtrak argues that the contract PRIL had with Partner Re is a mere "fronting" arrangement, but ignores differences in the scope of coverage apparent on the face of the documents and, in any event, a "fronting" arrangement is a label that applies to may different types of reinsurance arrangements. *See infra*, Section II.B. *Third*, Amtrak asserts that Partner Re "assumed responsibility" for Amtrak's claim. The record, however, shows the opposite: Partner Re proceeded, subject to a full reservation of rights, given PRIL's non-responsiveness and default on its duty to investigate and adjust the loss. *See infra*, Section II.C.

Accordingly, there is no genuine dispute of material fact: Partner Re's Reinsurance Contract governs its obligations and has no express "cut through" provision; Amtrak's claims against Partner Re must be dismissed because it has no direct right of action against Partner Re.

<u>ARGUMENT</u>

I.  **AMTRAK'S MISLABELING OF THE PRIL POLICY WORDING AS THE "REINSURANCE POLICY" IS BELIED BY THE UNDISPUTED EVIDENCE**

In its Opposition, Amtrak continues its campaign to pass off a copy of the PRIL Policy Wording (*i.e.*, a draft of the policy between PRIL and Amtrak) as a Partner Re contract, based on the fact that Partner Re stamped that document "Noted and Agreed" when asked by Amtrak's broker to review it.  Amtrak carefully cherry-picks excerpts of the testimony of Charlotte Todd, a placing broker at Price Forbes, who was working on behalf of Amtrak and PRIL.  *See* Opp. Br. at 15-16.  But Ms. Todd's full testimony, cited in Partner Re's Moving Brief at 6, evidences her understanding that Partner Re is merely noting and agreeing to the PRIL Policy Wording:

> Q: You understood that that wording was not Partner Re's re-insurance contract?
> A: No, they didn't create it themselves, it was forwarded to them to sign.
> Q: And they're noting and agreeing it, correct?
> A: Yes.
> Q: They're not issuing it as a policy?
> A: I would say this is their policy.
> Q: Partner Re's policy?
> A: It's their – *it's not what Partner Re has created themselves, but they're agreeing to this policy.*
> Q: They're agreeing to the terms and conditions?
> A: Yes, correct.

*See* Deposition of Charlotte Todd ("Todd Tr."), Ex. E to the Declaration of Catherine A. Mondell ("Mondell Decl.") [ECF No. 164]; Todd Tr., Ex. 5 to the Declaration of Marshall Gilinsky ("Gilinsky Decl."), at 32:2-17 (emphasis added).  Ms. Todd further identified the Partner Re Reinsurance Contract as "the correct reinsurance slip", which was prepared by Price Forbes and sent to Partner Re.  *Id.* at 24:17-25:12.  It is ordinary practice to provide a copy of the insurer's original policy for the reinsurers' review and for a reinsurer to acknowledge agreement. *See id.* at 27:7-25; *see also* Bollier Decl. ¶¶ 5, 13, Ex. I.  Ms. Todd's testimony on this point is consistent with that of Amtrak's other witnesses, also testifying to the two separate contracts.

2

*See, e.g.*, Deposition of Cathy Rawlings, Amtrak's 30(b)(6) witness, ("Rawlings Tr."), Exhibit A to the Mondell Decl., at 131:24-132:1-5 (acknowledging that "[t]here's a contract between Amtrak and PRIL and a contract between PRIL and Partner Re").

Though the undisputed testimonial evidence supports Partner Re's position, the court need not look further than the face of the document. *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 139 (2d Cir. 2000) ("Under New York law, therefore, a court must enforce that plain meaning, '[r]ather than rewrite an unambiguous agreement.'") (citations omitted)). The PRIL Policy Wording states on the first Declarations page: "INSURER: Passenger Railroad Insurance, Limited" and provides a blank for the "Authorized Signature" of "PASSENGER RAILROAD INSURANCE LIMITED", and references PRIL again at the conclusion of the policy wording on page 35: "Attached to and forming part of Passenger Railroad Insurance, Limited Policy No NRPC-N11NA08246". Bollier Decl., Ex. I ("PRIL Policy Wording") at PAR00000115-161. Amtrak identifies no evidence to support its theory that the "Noted and Agreed" stamp somehow transforms the document into anything other than what it is: a draft of the policy wording prepared for PRIL to issue to Amtrak, which Partner Re reviewed in the usual course of its business as a reinsurer.

Seeking to avoid the result mandated by the documents and testimony, Amtrak reiterates its far-fetched theories that Partner Re somehow becomes directly liable based on (i) policy numbering systems or (ii) the appearance in the PRIL Policy Wording of endorsements of a type commonly used in London. Opp. Br. at 16-19. Partner Re does not dispute that Price Forbes (broker to Amtrak and PRIL) uses this type of numbering sequence, nor that Price Forbes

operates in the London market.  Amtrak ignores the evidence,[1] which shows that it was Price

Forbes that provided to Partner Re the PRIL Policy Wording with a policy numbering scheme of

its choosing and certain endorsements that it added "for good order."  *See* Mondell Decl., Ex. F;

Bollier Decl., Ex. H; *see also* Bollier Decl. ¶ 7 (the only numbering assigned by Partner Re is a

separate internal reference).  In opposing summary judgment, the "nonmoving party may not rely

on conclusory allegations or unsubstantiated speculation."  *See Major League Baseball Props. v.

Salvino, Inc.*, 542 F.3d 290, 306 (2d Cir. 2008) (citation and internal quotation marks omitted).

## II.   AMTRAK HAS NO DIRECT RIGHT OF ACTION AGAINST PARTNER RE

Amtrak's other arguments are equally unsupported, and fail to establish an exception to

the general rule that, without contractual privity, an original insured has no direct right of action.

*See China Union Lines, Ltd. v. Am. Marine Underwriters, Inc.*, 755 F.2d 26, 30 (2d Cir. 1985)

("[R]einsurance contracts are contracts of indemnity, which give the original assured no right of

action against the reinsurer."); *Jurupa*, 555 F.3d at 89 (finding no direct right of action against

reinsurer unless "the reinsurance agreement contains a so-called 'cut through' provision granting

policyholders a direct right of action against reinsurers, ***which is apparent on its face***.")

(emphasis added).

### A.   Amtrak Is Not Entitled to Direct Payment from Partner Re

Amtrak argues that Partner Re is obligated to pay directly to Amtrak, a position that rests

largely on the false premise that the PRIL Policy Wording is Partner Re's Reinsurance Contract.

*See supra*, Section I (addressing the undisputed evidence refuting this).  In the alternative,

Amtrak argues that even under the Reinsurance Contract, Amtrak is entitled to direct payment

---

[1] Such evidence has been developed at significant expense to Partner Re insofar as Amtrak
insisted, without reasonable basis, that Defendants obtain Letters Rogatory to compel production
of evidence from Price Forbes, even though Price Forbes was willing to provide discovery to all
parties voluntarily.  *See* ECF No. 129 at pp. 2-3.

from Partner Re.  *See* Opp. at 18-19.  Specifically, Amtrak relies on Endorsement No. 6 to the Reinsurance Contract, which refers to the terms of the PRIL Policy.  *See* Bollier Decl., Ex. G at PAR00000025 (stating "[a]ll terms as per Original Policy Number NRPC-N11NA08246 (Passenger Railroad Insurance Limited)").  Because Amtrak is named as the "Insured" under the ***PRIL Policy***, which provides that losses owed by PRIL "shall be adjusted with and payable to" Amtrak, Amtrak insists that all losses under the ***Reinsurance Contract*** also "shall be adjusted with and payable to" it.  That argument fails to harmonize, or even address, the payment provisions of the two separate contracts.

### 1.    The Reinsurance Contract Controls Partner Re's Obligations

Though it is undisputed that the two documents, the Reinsurance Contract and the PRIL Policy it reinsures, must be read together, it is equally plain that the terms of the Reinsurance Contract are the ones that control and limit Partner Re's obligations: "Subject to all terms, clauses and conditions as Original Policy/ies and to follow in all respects the settlements or other payments of whatsoever nature made by the Reassured ***within the limits of this Reinsurance hereon***."  *See* Reinsurance Contract at PAR00000003 (emphasis added).  The Reinsurance Contract provides for payment to flow between Partner Re and PRIL, the only two parties to that contract.  *See* Moving Br. at 9-11 (citing provisions of the Reinsurance Contract).

Amtrak purports to rely on Mr. Bollier's testimony for the proposition that, despite the language in the Reinsurance Contract to the contrary, Partner Re intended for there to be a direct payment provision. Opp. at 17 n.39 (citing Bollier Tr. at 83-84).  Mr. Bollier testified to no such thing, as the pages Amtrak includes – as well as the ones it has cut off – show.  *See* Deposition of Daniel Bollier, Ex. A to the Mondell Reply Decl., at 86:11-15 ("[Y]ou've got to read the two documents in conjunction, and the reinsurance contract obviously overrules.  If there is anything

different in here, that overrules the underlying policy for the reinsurance we provide.").  That

line of questioning continues as Mr. Bollier resists the same strained argument Amtrak advances

in its Opposition papers.  *Id.* at 89:10-15 ("[I]f you look at PAR 003, that's where it also clearly

says, subject to all terms and clauses and conditions as original policy and following all respects,

so on and so forth, may -- blah, blah, blah -- *within the limits of this reinsurance hereon*")

(emphasis added).

The only reasonable reading of the two documents establishes that, under the

Reinsurance Contract, Partner Re makes payment to the only other party to the Reinsurance

Contract, PRIL.  In contrast, if Amtrak's theory were taken to its logical conclusion, there would

be two payments due directly to Amtrak for a covered claim – one from PRIL under the terms of

the PRIL Policy, Mondell Decl., Ex. J ("PRIL Policy") at AMT00046029, and one from Partner

Re under Amtrak's "direct payment" theory.  Such a reading is patently unreasonable and must

be rejected.  *See Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992)

(noting that courts must reject strained and unreasonable interpretations).[2]

### 2. The Reinsurance Contract Has No Express "Direct Payment" Provision

Amtrak argues that the Reinsurance Contract's payment provision act as a "cut through"

and provides a direct right of action.  *See* Opp. Br. at 10-11.  It does not.  As set out above, the

***Reinsurance Contract*** nowhere names Amtrak as the payee.  The language Amtrak relies upon

appears only in the policy between PRIL and Amtrak; Amtrak argues that because the

---

[2] Perhaps Amtrak does not plan to require payment from PRIL, even though the PRIL Policy
expressly requires it.  *See* PRIL Policy at AMT00046029.  That intent, however, is nowhere
evidenced in the documents.  *See Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002)
("The fundamental, neutral precept of contract interpretation is that agreements are construed in
accord with the parties' intent. The best evidence of what parties to a written agreement intend is
what they say in their writing.") (citations and quotation marks omitted).

Reinsurance Contract incorporates the terms of the PRIL Policy ("within the limits of this Reinsurance"), the Court should imply that Partner Re agreed to direct payment terms.

In *Jurupa*, the original insured argued that it had a direct right of action against the reinsurer because the ***reinsurance contract*** itself expressly stated, "[T]he parties to this Reinsurance intend that Reinsurer . . . shall pay all amounts . . . due Insureds and other persons as and when due directly on behalf of the Reinsured[.]" 555 F.3d at 89.  The Second Circuit rejected that argument and found that even a provision such as this – in the reinsurance contract itself – was not plain enough to evidence an express intent to contravene the general rule; it "did not specify to whom the payments will be made."  *Id.*  Similarly, nothing in the Reinsurance Contract suggests that Partner Re expressly intended to hold itself liable to, or make direct payments to, Amtrak.

The other cases Amtrak relies on also fail to support its position, as they involve reinsurance contracts that (i) expressly name the original insured as payee in the ***reinsurance contract***, or (ii) recite expressly a reinsurer's intent to make itself directly liable to an original insured.[3]  The Second Circuit case that Amtrak cites, *China Union Lines*, is not to the contrary.  755 F.2d at 30.  There, though the court allowed an insured to sustain a claim against reinsurers,

---

[3] *See Trans-Res., Inc. v. Nausch Hogan & Murray*, 746 N.Y.S.2d 701, 706 (1st Dep't 2002). (finding that the insured sufficiently alleged "a cut-through clause" where allegations reflected the express agreement of the reinsurers in the reinsurance contract "to pay directly to the named insured . . . with respect to any claim under said policy" of reinsurance); *Bruckner-Mitchell v. Sun Indemnity Co.*, 82 F.2d 434, 444-45 (D.C. Cir. 1936) (analyzing what was labeled as "reinsurance" for surety bonds where materialmen claimed that non-payment of their fees was an "event of default" under the bonds that justified payment by reinsurers; acknowledging the general presumption "that typical reinsurance agreements do not operate in favor of the original insured," and rejecting materialmen's arguments under certain of the reinsurance contracts, but permitting claims to proceed under certain of the agreements which were "not typical agreements but were special" in including provisions which the court deemed required direct payment to materialmen on behalf of the bondholder).

the decision turned on the reinsurer's failure to assert lack of privity with or liability to the original insured at the trial level.  *Id.*

Amtrak also argues that the lack of a "negating" provision that expressly denies Amtrak's rights under the Reinsurance Contract should be considered here.  *See* Opp. Br. at 11-12.  But under New York law, the general rule barring direct actions by insureds against reinsurers applies regardless of whether the contract expressly "negates" the rights of third parties.  *See In re The Bennett Funding Grp., Inc.,* 60 Fed. App'x 863, 865 (2d Cir. 2003) (affirming the default rule that by its nature, "a reinsurance contract operates solely between the reinsurer and the ceding company [the insurer]; it confers no rights on the insured."); *Turner*, 447 N.Y.S.2d at 932 ("Absent provisions to the contrary, a reinsurer is under no contract obligation to the original insured and does not become liable to him.") (citations and quotation marks omitted).  It would be nonsensical to require that the contract expressly reiterate the general rule in order for that general rule to apply.

### B.   Partner Re's Purported "Fronting Arrangement" with PRIL Does Not Create Privity with Amtrak

As an alternative to its direct payment argument, Amtrak asserts that the contract PRIL had with Partner Re is a "fronting" arrangement, arguing that when Partner Re reinsured PRIL, PRIL ceded 100% of the risk and 100% of the premium to Partner Re.  Opp. Br. at 9.  Without citing any case law, Amtrak contends that this arrangement gives it a direct right of action against Partner Re.  As a factual matter, Amtrak's argument is wrong.  The Reinsurance Contract expressly excludes flood and earthquake.  *See* Reinsurance Contract at PAR00000002.  By contrast, while the PRIL Policy Wording and PRIL Policy sublimit flood and earthquake loss, they do not expressly exclude those perils.  *See* PRIL Policy Wording at PAR00000119; PRIL Policy at AMT00046027.

In any event, fronting arrangements are common in the reinsurance context, and to label a reinsurance deal a "fronting" arrangement confers no special status. *See, e.g.*, *Ins. Co. of N. Am. v. Pyramid Ins. Co. of Bermuda*, No. 92 Civ. 1816, 1994 WL 88701, at *4 (S.D.N.Y. Mar. 16, 1994) ("Insureds commonly use fronting to retain risks and control reinsurance.") (citations omitted).  Such an arrangement does not by itself create contractual privity between Partner Re and Amtrak.  *Bennett*, 60 Fed. App.'x at 866 ("[W]e have found no New York precedent or statute suggesting that when a reinsurance contract involves captive insurance companies or fronting companies, it becomes a insurance contract or the separate policies collapse into one.").

To the extent that Amtrak seeks to suggest that PRIL was subject to Partner Re's control, or existed on paper only, those arguments are contravened by the record evidence.  It is undisputed that Amtrak has used PRIL for years to meet Amtrak's risk management needs, and that PRIL reinsured another policy in this program with a separate reinsurer (whom it voluntarily dismissed from this suit).  *See* Amtrak's 56.1 Counterstatement ¶ 1; Complaint [ECF No. 1] at ¶ 36 (naming SCOR as a defendant and using the same form of allegation as it did for Partner Re).

## C.    Partner Re Never "Assumed Responsibility" for Amtrak's Claim

Finally, Amtrak reiterates its argument that because Partner Re supposedly "assumed responsibility" for handling Amtrak's claim, a direct right of action somehow exists.  Opp. Mem. at 12-13.  In support of this purported exception, Amtrak again relies on *World Omni Fin. Corp. v. Ace Cap. Re., Inc.*, No. 02 Civ. 0476, 2002 WL 31016669, at *2 (S.D.N.Y. Sept. 10, 2002) and *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 308 (S.D.N.Y. 1996).  Aside from being clearly distinguishable on their extreme facts, neither case cites to any controlling New York law as a basis for this purported exception.  *See* Moving Br. at 11-12.  Amtrak's remaining cases again involve reinsurance contracts with express language

demonstrating the reinsurer's intent to hold itself liable to the original insured.[4]   In *Mercantile*, the appellate division recognized the general rule that an "insured is not considered a third party beneficiary of reinsurance policies . . . since these are contracts of indemnity of the insurer and there is no privity between the original insured and the reinsurer."  *Id.*  at 1017.  However, because the parties drafted reinsurance contracts containing "specific language" that "the plaintiff would handle claims directly with the original assured in the event the original reassureds failed", the court refused to overturn a jury verdict finding that the original insured was an intended third party beneficiary under the contract. *Id.*  In *Klockner*, the court relied on similarly express intent, finding that where reinsurer agreed to "Contractor's All Risks Policy, which apparently assigns to [the original insured] the right to sue reinsurers directly . . . . [the reinsurer] seems to have consented to being sued by insureds."  *Id.* at 1134.

Here, it was PRIL that was required to adjust claims with Amtrak.  *See* PRIL Policy at AMT00046029.  PRIL did not adjust Amtrak's claim, nor did it respond to Partner Re's requests for information.  Mondell Decl., Ex. G.  In this untenable position, Partner Re proceeded to obtain information regarding the claim, subject to its full reservation of rights.  *See* Mondell Decl., Ex H.  Partner Re does not become liable to Amtrak simply because PRIL shirks its responsibility to investigate and adjust the loss.

## CONCLUSION

For the reasons discussed above and in Partner Re's moving brief, Partner Re respectfully requests the Court to dismiss all claims against Partner Re.

Dated: New York, New York
March 13, 2015

---

[4] *See Mercantile & Gen. Reinsurance Co., plc. v. Colonial Assur. Co.*, 591 N.Y.S.2d 1015, 1017 (1st Dep't 1992), *rev'd on other grounds sub nom. Mercantile & Gen. Reinsurance Co., plc v. Colonial Assur. Co.*, 82 N.Y.2d 248, 624 N.E.2d 629 (1993); *Klockner Stadler Hurter Ltd. v. Ins. Co. of Pennsylvania*, 785 F. Supp. 1130, 1134 (S.D.N.Y. 1990);

ROPES & GRAY LLP

By:   /s/ Catherine A. Mondell
Catherine A. Mondell
(catherine.mondell@ropesgray.com)
800 Boylston Street
Boston, MA  02199
Telephone: (617) 951-7000

Evan P. Lestelle
(evan.lestelle@ropesgray.com)
Elizabeth Bierut
(elizabeth.bierut@ropesgray.com)
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000

*Attorneys for Defendant Partner Reinsurance
Europe plc*

11