UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER                 :
CORPORATION,                                :
                                            :
                          Plaintiff,        :
                  v.                        :
                                            :
ARCH SPECIALTY INSURANCE COMPANY;           :
ASPEN SPECIALTY INSURANCE COMPANY;          :
COMMONWEALTH INSURANCE COMPANY;             :
FEDERAL INSURANCE COMPANY; LEXINGTON        :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE      :
INSURANCE COMPANY; CERTAIN                  :
UNDERWRITERS AT LLOYD'S OF LONDON and       :
CERTAIN LONDON MARKET COMPANIES             :
Subscribing to Policy Nos. 507/N11NA08240,  :   14 Civ. 7510 (JSR)
507/N11NA08241, 507/N11NA08242,             :
507/N11NA08244, 507/N11NA08244,             :
507/N11NA08245 and GEP 2944; MAIDEN         :
SPECIALTY INSURANCE COMPANY; MAXUM          :
INDEMNITY COMPANY; NAVIGATORS               :
INSURANCE COMPANY; PARTNER                  :
REINSURANCE EUROPE plc; RSUI INDEMNITY      :
COMPANY; STEADFAST INSURANCE COMPANY;       :
TORUS SPECIALTY INSURANCE COMPANY; and      :
WESTPORT INSURANCE CORPORATION,             :
                                            :
                          Defendants.       :
                                            :
------------------------------------------------------------------------x

**INSURERS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT
REGARDING REPLACEMENT OF BENCHWALLS AND TRACK BED**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................,.................................1

ARGUMENT..............................................................................................................2

      POINT I

           AMTRAK'S INTERPRETATION OF THE DICC
           COVERAGE CANNOT BE SUPPORTED. .....................................................2

      POINT II

           AMTRAK HAS PROVIDED NO ADMISSIBLE EVIDENCE
           OF ENFORCEMENT OF ANY LAW, ORDINANCE,
           GOVERNMENTAL DIRECTIVE OR STANDARD THAT
           COMPELS AMTRAK TO REPLACE THE BENCHWALLS OR
           THE TRACK BED FROM PORTAL TO PORTAL. ......................................4

           A.  There Is No Evidence That The FRA Requires Compliance
               With NFPA 130 ..................................................................................5

           B.  There Is No Evidence That The ADA Requires Compliance
               With NFPA 130 Or The Installation Of A Direct Fixation Track System...6

      POINT III

           THE SPECULATIVE OPINIONS INTRODUCED BY AMTRAK
           VIA "SHAM" DECLARATIONS DO NOT CREATE AN ISSUE
           OF DISPUTED FACT.......................................................................................7

      POINT IV

           AMTRAK'S "REPLACEMENT COST NEW" ARGUMENT IS A
           RED HERRING.................................................................................................9

CONCLUSION.......................................................................................................10

## TABLE OF AUTHORITIES

<u>Cases</u>

<u>B.U.S.A. Corp. v. EcoGloves, Inc.</u>,
2009 WL 3076042, at *1 n.2 (S.D.N.Y. Sept. 28, 2009)................................................3

<u>Butler v. Raytel Med. Corp.</u>,
150 F. App'x 44, 46 (2d Cir. 2005) ............................................................................8

<u>Catlin Specialty Ins. Co. v. QA3 Fin. Corp.</u>,
36 F.Supp.3d 336, 342 (S.D.N.Y. Jul. 2, 2014)................................................4

<u>Cummins, Inc. v. Atl. Mut. Ins. Co.</u>,
56 A.D.3d 288, 290 (1st Dept. 2008) ............................................................4

<u>Chambers v. TRM Copy Centers Corp.</u>,
43 F.3d 29, 37 (2d Cir. 1994) ....................................................................10

<u>Cronin v. Aetna Life Ins. Co.</u>,
46 F.3d 196, 203 (2d Cir. 1995) ..................................................................10

<u>Dupre v. Allstate Ins. Co.</u>,
62 P.3d 1024, 1032-33 (Colo. Ct. App., Div. III 2002)..................................9

<u>Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.</u>,
2013 WL 342693, at *4 (S.D.N.Y. Jan. 29, 2013) ........................................3

<u>PB Americas Inc. v. Cont'l Cas. Co.</u>,
690 F. Supp. 2d 242, 249 (S.D.N.Y. 2010) ..................................................3

<u>Raskin v. Wyatt Co.</u>,
125 F.3d 55, 63 (2d Cir. 1997) ....................................................................8

<u>Midwood Sanatorium v. Firemen's Fund Ins. Co. of San Francisco</u>,
261 N.Y. 381, 386 (1933) ............................................................................10

<u>Seaboard Surety Co. v. Gillette Co.</u>,
476 N.E.2d 272, 275 (N.Y. 1984) ................................................................2

<u>Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.</u>,
769 F.3d 807, 816 (2d Cir. 2014) ................................................................4

<u>SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC</u>,
2006 WL 3073220 at *8-*9 (S.D.N.Y. Oct. 31, 2006) ..............................9, 10

U.S. Fire Ins. Co. v. Gen. Reins. Corp.,
949 F.2d 569, 574 (2d Cir. 1991) ........................................................................4

Woodhams v. Allstate Fire & Cas. Co.,
748 F. Supp. 2d 211, 219 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x. 108 (2d Cir. 2012)....................4

**Statutes**

49 U.S.C. § 24902....................................................................................................5

## PRELIMINARY STATEMENT

Amtrak's Opposition introduces no facts suggesting that it is entitled to replacement, at Insurers' expense, of the entirety of the benchwalls and the track bed system in its New York tunnels, including: 1) improving the existing ballasted tracks with an upgraded direct fixation system, and 2) replacing substantial portions of the benchwalls and track bed that Amtrak acknowledges were not inundated during Sandy.

Amtrak's Opposition boils down to three arguments that relate to this motion, none of which is sufficient to raise a material issue of fact in opposition to Insurers' motion for summary judgment ("Mot."). *First*, while Amtrak offers a strained interpretation of the Demolition and Increased Costs of Construction ("DICC") provision to contend that "governmental" does not modify "standard," Amtrak offers no support for its position that "enforcement" means something different with respect to a "standard" than it does with a "law." *Second*, Amtrak's argument that the Americans with Disabilities Act ("ADA") requires that it replace the benchwalls and install direct fixation if it undertakes any substantial repairs in the tunnels is directly contradicted by the fact that, in 2011, Amtrak replaced the track, rails, and ballast in the North River Tunnel ("NRT") south tube with new track, rails, and ballast and did not replace the benchwalls or install direct fixation. *Third*, even if Amtrak's repairs are potentially subject to regulation by the Federal Railroad Administration ("FRA"), Amtrak has not provided any evidence demonstrating that the FRA has ever required that Amtrak comply with National Fire Protection Association ("NFPA") 130, let alone that the FRA has required, or will require, that the benchwalls be replaced and direct fixation installed because of damage caused by Sandy.

The vast majority of Amtrak's Opposition is dedicated to two points not at issue in this motion: 1) whether Sandy caused damage to any portion of the benchwalls or the track bed, which is immaterial because Insurers' motion addresses Amtrak's claim that it must replace the

1

portions of the benchwall and track bed that it concedes[1] were not touched by Sandy floodwaters; and 2) Amtrak's assertion that the "replacement cost new" language in the "Valuation" provision purportedly covers costs to comply with codes, which is unrelated to this motion because that provision is a method of valuation for **damaged, not undamaged** property. Amtrak's irrelevant arguments cannot create an issue of material fact regarding whether the Policies cover undamaged property in sections of the tunnels not inundated by Sandy.[2]

Accordingly, this Court should grant Insurers' motion for partial summary judgment dismissing Amtrak's claim for the portion of its benchwalls and track bed system that it concedes were not reached by Sandy floodwaters.[3]

**ARGUMENT**

I.    **Amtrak's Interpretation of the DICC Coverage Cannot Be Supported**

The DICC provision extends coverage to undamaged property under certain very limited conditions, *i.e.*, where there is a "law," "ordinance," "governmental directive or standard" being "enforced." Amtrak proposes to eliminate the enforcement requirement and limit the reach of "governmental" to modify only the word "directive" that immediately follows. This

---

[1] The East River Tunnel (ERT) consists of four tunnel tubes and the NRT consists of two tunnel tubes (Suriano Decl., Ex. 1 at ¶ 8). Four of those six tunnel tubes, ERT Lines 1 and 2 and both NRT tubes, were partially flooded during Sandy (Suriano Decl., Ex. 11 at 2; R. 56.1 Reply Statement ¶ 7; Suriano Decl., Ex. 2 (Amtrak's Responses to Requests for Admission), Response Nos. 12, 14, 27, 29, and 69-74).

[2] Similarly, any dispute regarding precisely which sections of the tunnels were not inundated by Sandy is a fact issue that can be resolved at trial if necessary. Certainly the sections identified by Amtrak's R. 30(b)(6) witness on Engineering issues (Glenn Sullivan) and its expert (HNTB) are a good starting point. *See* Reply 56.1 Statement Response 7.

[3] As noted (Mot. at 9, f.n. 10), any coverage Amtrak would be entitled to under the DICC provision would be subject to the $125 million sublimit for DICC coverage. The only case cited by Amtrak, *Seaboard Surety Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984), to argue to the contrary is an inapposite case discussing application of an exclusion.

2

interpretation would result in coverage for compliance with concepts such as reasonable engineering or best practices, which cannot be "enforced" by any entity according to the general understanding of that term.   Further, while Amtrak argues that "enforcement" must mean something different for a "standard" than for a law, Amtrak does not explain why this one word should have two different meanings, nor does it offer an alternative definition of "enforcement."[4]

Amtrak's interpretation contorts policy language intended to provide certain limited coverage, where an insured is forced to destroy and replace undamaged property, into a blank check for voluntary compliance with some subjective "standard" promulgated by any entity, including Amtrak itself, for the payment of improvements and betterments to its property, such as the replacement of the ballasted track system with a direct fixation system.

Additionally, Amtrak's contention that the DICC provision in the Policies affords broader coverage than similar provisions in other policies is irrelevant to determining the meaning of the unambiguous provision at issue here.[5]   Here, the DICC provision affords coverage only when covered loss or damage "causes the enforcement of any law, ordinance, governmental directive

---

[4] Amtrak cannot dispute that the NFPA itself states: "The NFPA has no power, nor does it undertake, to police **or enforce** compliance with the contents of NFPA Documents." (Emphasis added).   *See* R. 56.1 Counterstatement, Response 36.   Although Amtrak takes issue with the way Insurers "presented" the cited text, this is an invalid basis to deny a R. 56.1 Statement of Fact and it should be deemed undisputed.   *See B.U.S.A. Corp. v. EcoGloves, Inc.*, No. 05-cv-9988 (JSR), 2009 WL 3076042, at *1 n.2 (S.D.N.Y. Sept. 28, 2009) (Rakoff, J.) (rejecting plaintiffs' assertion of disputes where "what they denominate a dispute over an issue of fact largely consists of a dispute over the characterization of certain basic facts and over other extraneous issues" and concluding that "[w]hen no assertion contradicting a basic fact is presented in a party's opposing 56.1 statement, the Court has taken that basic fact as undisputed").

[5] "It is hornbook law in New York that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc.*, No. 11 Civ. 3130 (JSR), 2013 WL 342693, at *4 (S.D.N.Y. Jan. 29, 2013) (Rakoff, J.) (internal punctuation and citations omitted); *PB Americas Inc. v. Cont'l Cas. Co.*, 690 F. Supp. 2d 242, 249 (S.D.N.Y. 2010).

or standard." Amtrak does not explain how loss or damage "caused the enforcement" of NFPA 130 or any law, ordinance, governmental directive or standard. Accordingly, the Court should give no credit to Amtrak's attempt to manufacture an issue of fact by citing irrelevant provisions in other policies not at issue in this litigation.[6]

Further, the *contra proferentem* doctrine should not be applied to reach a reading in Amtrak's favor, because:[7] 1) Amtrak is a sophisticated insured; 2) the Manuscript Wording used for the Policies was drafted by Amtrak's broker, Marsh;[8] and 3) the Policies are unambiguous.

## II. Amtrak Has Provided No Admissible Evidence of Enforcement of any Law, Ordinance, Governmental Directive or Standard that Compels Amtrak to Replace the Benchwalls or the Track Bed from Portal to Portal

As discussed at length in Insurers' moving brief, Amtrak's only support for its claim that the benchwalls must be replaced portal to portal is the opinion of HNTB, which stated in a single sentence that Amtrak must "[r]emove the bench walls and replace with new bench walls, sized to conform to the requirements of NFPA 130 for the entire length of the tunnels (portal to portal)." Mot. at 11.

---

[6] *See Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014); *Woodhams v. Allstate Fire & Cas. Co.*, 748 F. Supp. 2d 211, 219 (S.D.N.Y. 2010), *aff'd*, 453 F. App'x. 108 (2d Cir. 2012).

[7] New York courts consistently hold that the doctrine is a principle of last resort that does not apply to a negotiated policy issued to a sophisticated insured represented by a broker. *See, e.g., U.S. Fire Ins. Co. v. Gen. Reins. Corp.*, 949 F.2d 569, 574 (2d Cir. 1991); *Catlin Specialty Ins. Co. v. QA3 Fin. Corp.*, 36 F.Supp.3d 336, 342 (S.D.N.Y. Jul. 2, 2014). Amtrak undoubtedly had at least "equal bargaining power" with Insurers. *Cf. Cummins, Inc. v. Atl. Mut. Ins. Co.*, 56 A.D.3d 288, 290 (1st Dept. 2008).

[8] There is no basis for Amtrak's denial that Marsh "prepared" the policy form (*see* R. 56.1 Reply Statement Response 32; Suriano Reply Decl., Ex. 24 at 52:24-53:24).

Faced with the dispositive concession that NFPA 130 does not compel Amtrak to replace the undamaged benchwalls, Amtrak's Opposition now presents multiple speculative opinions of its fact witnesses – contained in declarations, which are, as discussed below, inadmissible – to suggest that someday it may have to comply with NFPA 130 and certain ADA regulations if it replaces the benchwalls or track bed in its entirety. Nowhere in its Opposition, however, does Amtrak attach or refer to any written documentation from an entity with authority over it stating that Amtrak is required, as a result of physical damage caused by Sandy, to replace the benchwalls portal to portal or install direct fixation in place of the current ballasted system.[9] This is because there is no such evidence.

**A.      There is No Evidence that the FRA Requires Compliance with NFPA 130**

Amtrak's contention that the FRA "regularly requires railroads to comply with the NFPA [130]" (Benchwall Opp. at 16) is: a) unsupported, and b) irrelevant as to whether covered loss or damage caused the enforcement of a law, ordinance, governmental directive or standard. The only document Amtrak cites to support its assertion is a 1993 study entitled "Fire Safety of Passenger Trains: A Review of U.S. and Foreign Approaches," published by the U.S. Department of Transportation and the FRA. In actuality, the quoted section discusses separate requirements: 1) FRA; 2) NFPA; and 3) although not included in the quoted section, Amtrak's

---

[9] The statement in the Wilchek Decl., ¶ 12 that the New York City fire code requires compliance with NFPA 130 is irrelevant because the Rail Passenger Service Act, 49 U.S.C. § 24902 exempts Amtrak from complying with such local laws (Mot. at 16-17), a point that Amtrak does not even dispute or mention in its Opposition. Amtrak's discussion regarding a proposed design for a different agency's project is also irrelevant (Benchwall Opp., f.n. 58).

own requirements.[10]  Nothing in this study suggests that the FRA **requires** that Amtrak comply with NFPA 130; rather the study discusses requirements promulgated by different entities, including the FRA, NFPA 130, and Amtrak itself.  *See* Suriano Reply Decl. Ex. 23 at 21.

Similarly, the FRA Monitoring Procedures discussed by Amtrak simply list NFPA 130 in the references section as one of many "federal regulations and **guidance** relating to the work performed under the MPs" with which its personnel should be **familiar**.  *See* link in Benchwall Opp., p. 16 at Appendix B. (Emphasis added).  Even if the FRA recommends that its personnel monitoring FRA-funded projects be familiar with NFPA 130, nowhere does this document state, or even suggest, that the FRA requires compliance with NFPA 130 on those projects or here, in a private insurance dispute.

Amtrak has not identified any evidence showing that the FRA has stated that any damage caused by Sandy requires the replacement of the benchwalls or installation of direct fixation, nor has it submitted **any** evidence showing that the FRA has required Amtrak to comply with NFPA 130.[11]  Accordingly, Amtrak has not provided any evidence demonstrating that the FRA or any other governmental entity can "enforce" Amtrak's compliance with NFPA 130.

**B.**    **There is no Evidence that the ADA Requires Compliance with NFPA 130 or the**
         **Installation of a Direct Fixation Track System**

Amtrak's argument that the ADA, mentioned nowhere in HNTB's report, but relied upon in Amtrak's Benchwall Opp., somehow enforces Amtrak's compliance with NFPA 130 or otherwise requires installation of direct fixation, is also devoid of support.  The work that

---

[10] Because Orin Decl., Ex. 26 omitted the section quoted by Amtrak, the relevant portions are attached as Suriano Reply Decl. Ex. 23 at 27.

[11] The unsupported speculation and opinions offered by two of Amtrak's employees (*see* R. 56.1 Reply Statement at p. 12) simply do not create a genuine issue of material fact.  Amtrak's discussion regarding a proposed design for a different agency's project is also irrelevant (Benchwall Opp., f.n. 58).

Amtrak actually has done in the tunnels is the litmus test for its unsubstantiated assertion that the ADA brings the claim for upgrading the track bed system within the confines of the DICC coverage.



All that Amtrak's speculative declarations provide is conditional "what ifs" and expectations as to what Amtrak **may** have to do to the "maximum extent feasible," which are necessarily insufficient to defeat summary judgment. *See, e.g.,* Rago Decl. ¶ 3. The bottom line is that if Amtrak must only comply with the ADA to the "maximum extent feasible," no law, ordinance, governmental directive or standard is being enforced.

**III.    The Speculative Opinions Introduced by Amtrak Via "Sham" Declarations Do Not Create an Issue of Disputed Fact**

A significant portion of Amtrak's Opposition and the declarations submitted in support thereof (Sullivan, Thomas, Wilchek, Rago, and Cloutier[12]) focus on facts purportedly demonstrating that Sandy allegedly damaged various portions of the tunnels. Although Insurers disagree with Amtrak's contention, it is immaterial to this motion seeking dismissal of Amtrak's claim for portions of the tunnels that Amtrak concedes were not touched by Sandy floodwaters. *See* R. 56.1 Reply Statement ¶ 7; Suriano Decl., Ex. 2, Response Nos. 12, 14, 27, 29, and 69-74.

---

[12] The Court should ignore the Declaration of Alfred Cloutier, an Amtrak employee, if for no reason other than Amtrak's flagrant violation of its disclosure obligations under Fed. R. Civ. P. 26 and 33. Amtrak did not identify him as an expert nor did it name him in its Rule 26(a) disclosures or interrogatory responses as a person with knowledge of relevant facts. In addition, the Cloutier Decl. is irrelevant to the issues at bar. *See* R. 56.1 Reply Statement at p. 4.

7

Moreover, all of Amtrak's declarations are incompetent and inadmissible in whole or in part because they are "sham" declarations submitted in an effort to contradict, embellish, or expand upon the witnesses' deposition testimony or documentary evidence in an attempt to create an issue of fact.[13]

Limited by this testimony, the Sullivan Declaration cannot substantiate Amtrak's arguments about NFPA 130 or the ADA.   Instead, Amtrak submits the Rago Declaration, which simply states: "[i]n light of the considerations of egress, ingress and accessibility, Amtrak is pursuing the design of direct fixation" and attaches as "the applicable accessibility guidelines," a document in which the applicability to transportation facilities of railroads is limited to "station platform" design (Rago Decl. ¶¶ 4, 8; Rago Decl., Ex. 1).   This declaration is indicative of Amtrak's blatant attempt to evade the testimony of its retained expert witness and corporate representatives by replacing that testimony with fact witness declarations, including from a witness who was never disclosed (Cloutier) and another (Rago) who was not disclosed until after the cut-off for summary judgment motion discovery, and just over a month before the end of the discovery process. *See* Suriano Reply Decl., Exs. 20, 21, and 22.

---

[13] The declarations provided by Amtrak (Sullivan, Wilchek, Rago, and Thomas) are inadmissible under Fed. R. Civ. P. 56(c).  *See Butler v. Raytel Med. Corp.*, 150 F. App'x 44, 46 (2d Cir. 2005) (affirming summary judgment on the basis that the plaintiff's "sham" declaration contradicted his deposition testimony and "supplied information that had been conspicuously omitted during repeated questioning in a deposition"); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.") (citation and internal quotation marks omitted).

Also inadmissible are the declarations: 1) submitted by fact witnesses who are improperly proffering expert opinions (Wilchek and Cloutier); and/or 2) speculating on what may happen in the future without any competent factual support (Rago, Sullivan, Wilchek).  Consequently, the Court should ignore the declarations submitted by Sullivan, Wilchek, Rago, Cloutier, and Thomas as well as Amtrak's discussion of facts related to damage purportedly caused by Sandy.

## IV.   Amtrak's "Replacement Cost New" Argument is a Red Herring

Despite acknowledging that Insurers seek a ruling regarding coverage for replacement of undamaged property in the non-flooded sections of the benchwalls and track bed, Amtrak suggests that Insurers' motion is ambiguous because Insurers purportedly ignore the replacement cost new provision. (Benchwall Opp. at 19.)  Amtrak improperly conflates the purpose of (i) the DICC provision, which provides limited coverage for **damaged and undamaged** property (where enforcement of codes requires modification or replacement of the undamaged property), with (ii) the replacement cost new language in the Valuation provision of the Policies, which provides the methodology for valuing **damaged, not undamaged** property.  *See* Am. Complt., Ex. 6 [ECF Nos. 65-17–23] at pp. 13-14, 19-20; Ex. 8 [ECF No. 65-25], at pp. 13-14, 19-20.

Amtrak's argument is nothing but a red herring to distract the Court from the fact that Amtrak has not identified any policy provision, other than the DICC provision, as bearing in any way on replacement of undamaged property.  Likewise, none of the case law cited by Amtrak regarding replacement cost new coverage suggests that there would be coverage for code upgrades or compliance for anything other than damaged property.[14]

---

[14] *See, e.g., Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1032-33 (Colo. Ct. App., Div. III 2003) (rejecting arguments that the policy covered the increased cost of complying with the upgrades required by the building code in sections of the house untouched by fire); *see also SR Int'l Bus. Ins. Co., Ltd. v. World Trade Ctr. Props. LLC*, No. 01 Civ. 9291 (HB), 2006 WL 3073220, at *8-*9 (S.D.N.Y. Oct. 31, 2006) (noting that the *Midwood Sanatorium v. Firemen's Fund Ins. Co. of*

Insurers do not disregard the "replacement cost new" language in the Valuation provision; rather, the Valuation provision applies after the scope of covered damage has been determined to guide valuation of that damage. Consequently, Amtrak's discussion of damage purportedly caused in inundated sections of the tunnels is irrelevant to this motion, as is the Policies' method for valuing such damage.[15]

It is both unnecessary and premature for the Court to consider the meaning of "replacement cost new." For Amtrak to be entitled to recover based upon the replacement cost new valuation method, it must actually replace the damaged property within a "reasonable period."[16] Unless Amtrak is able to meet this requirement, it is entitled to recover only the actual cash value of damaged property.

## CONCLUSION

For the foregoing reasons, the Insurers respectfully request this Court grant them partial summary judgment because Amtrak has not met, and cannot meet, its burden to show coverage under the Policies' DICC coverage extension for portal-to-portal replacement of its benchwalls or track bed system.

---

*San Francisco*, 261 N.Y. 381, 386 (1933) court, "(in dicta) supported the Appellate Division's view that the policyholder was not entitled to recover the additional amount necessary to build a structure that could be used for the same commercial purpose as it had been before the loss.")

[15] Contrary to Amtrak's suggestion, for the Court to grant Insurers' summary judgment motion, the key is not whether there is "any evidence" that can be construed in its favor, but "if, **as to the issue on which summary judgment is sought**, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party." *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) (emphasis added); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994) (same).

[16] In addition to being irrelevant to this motion, Amtrak's suggestion that replacement cost new essentially covers the same costs as the DICC provision (*see* Benchwall Opp. at 22), would render the DICC coverage superfluous. Courts have rejected arguments that a replacement cost provision provides coverage for code upgrades where compliance is not actually required of a public entity. *See SR Int'l, supra.*

Dated: New York, New York
       April 6, 2015

                                    MOUND COTTON WOLLAN & GREENGRASS

                                    By: *Costantino P Suriano*
                                    Costantino P. Suriano
                                    (csuriano@moundcotton.com)
                                    Bruce R. Kaliner
                                    (bkaliner@moundcotton.com)
                                    One New York Plaza
                                    New York, New York 10004
                                    Telephone: (212) 804-4200

                                    *Attorneys for Defendants Commonwealth Insurance
                                    Company, Lexington Insurance Company, Maiden
                                    Specialty Insurance Company, Steadfast Insurance
                                    Company, and International Insurance Company of
                                    Hannover SE*

                                    ROPES & GRAY LLP

                                    By:   /s/ Catherine A. Mondell
                                    Catherine A. Mondell
                                    (catherine.mondell@ropesgray.com)
                                    800 Boylston Street
                                    Boston, MA 02199
                                    Telephone: (617) 951-7000

                                    Evan P. Lestelle
                                    (evan.lestelle@ropesgray.com)
                                    1211 Avenue of the Americas
                                    New York, NY 10036
                                    Telephone: (212) 596-9000

                                    *Attorneys for Defendants Partner Reinsurance
                                    Europe plc, Torus Specialty Insurance Company,
                                    Westport Insurance Corporation, and Certain
                                    Underwriters at Lloyd's of London and Certain
                                    London Market Insurance Companies subscribing
                                    to Policy Nos. GEP 2944, 507/N11NA08242,
                                    507/N11NA08244, and 507/N11NA08244*

                                    All other signatories listed, and on whose behalf
                                    this filing is submitted, consent to its filing.

                                    11

BRUCKMANN & VICTORY, L.L.P

By: /s/ Arjang Victory
Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel: (212) 850-8500

*Attorneys for Defendants Arch Specialty Insurance
Company, Aspen Specialty Insurance Company,
Federal Insurance Company, Certain Underwriters
at Lloyd's of London and Certain London Market
Insurance Companies subscribing to Policy Nos.
507/N11NA08240 and 507/N11NA08241, Maxum
Indemnity Company, Navigators Insurance
Company, and RSUI Indemnity Company*

FINAZZO COSSOLINI O'LEARY MEOLA &
HAGER, LLC

By: /s/ Christopher S. Finazzo

Christopher S. Finazzo
(christopher.finazzo@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (646) 378-2033

*Attorneys for Defendant Liberty Mutual Fire
Insurance Company*

12