UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER
CORPORATION,

       Plaintiff,

  v.

ARCH SPECIALTY INSURANCE COMPANY;
ASPEN SPECIALTY INSURANCE COMPANY;
COMMONWEALTH INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY; LEXINGTON
INSURANCE COMPANY; LIBERTY MUTUAL FIRE
INSURANCE COMPANY; CERTAIN
UNDERWRITERS AT LLOYD'S OF LONDON and
CERTAIN LONDON MARKET COMPANIES
Subscribing to Policy Nos. 507/N11NA08240,
507/N11NA08241, 507/N11NA08242,
507/N11NA08244, 507/N11NA08244,
507/N11NA08245 and GEP 2944; MAIDEN
SPECIALTY INSURANCE COMPANY; MAXUM
INDEMNITY COMPANY; NAVIGATORS
INSURANCE COMPANY; PARTNER
REINSURANCE EUROPE plc; RSUI INDEMNITY
COMPANY; STEADFAST INSURANCE COMPANY;
TORUS SPECIALTY INSURANCE COMPANY; and
WESTPORT INSURANCE CORPORATION,

       Defendants.

14 Civ. 7510 (JSR)

------------------------------------------------------------------------x

**DEFENDANT-INSURERS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO STRIKE THE ROBLES HERNANDEZ AND HAX EXPERT REBUTTAL
<u>REPORTS PURSUANT TO THIS COURT'S ORDER DATED FEBRUARY 13, 2015</u>**

# TABLE OF CONTENTS

                                                                                   **Page**

PRELIMINARY STATEMENT ..............................................................................................2

FACTS ...................................................................................................................................3

ARGUMENT .........................................................................................................................6

      POINT I

      NEITHER THE ROBLES HERNANDEZ NOR THE HAX REPORT REBUTS
      ISSUES RAISED IN DEFENDANTS' EXPERT REPORTS THAT WERE
      "NOT RESPONSIVE TO THE SUBSTANCE OF AMTRAK'S INITIAL
      EXPERT WITNESS REPORTS" ......................................................................................6

      *The Robles Hernandez Report*................................................................................6

      *The Hax Report* ......................................................................................................8

      POINT II

      THE ROBLES HERNANDEZ AND HAX REPORTS REBUT ISSUES THAT
      COULD "REASONABLY HAVE BEEN ANTICIPATED BY ATMRAK" AT
      THE TIME IT FILED ITS INITIAL EXPERTS' REPORTS ............................................8

CONCLUSION....................................................................................................................10

Defendant Insurers[1] (hereinafter "Defendants") respectfully submit this memorandum of law in support of their motion to strike the reports of Amtrak's proposed rebuttal experts -- Francisco C. Robles Hernandez ("Robles Hernandez") and Christopher Hax ("Hax").

## PRELIMINARY STATEMENT

On February 12, 2015, Plaintiff, National Railroad Passenger Corporation ("Amtrak"), applied to the Court for leave to serve three additional expert witness reports. The Court granted leave to serve the reports no later than February 18, 2015, subject to certain requirements that were memorialized in the Court's February 13, 2015 Order ("Order") (ECF No. 158), to wit: the reports were to be limited to rebutting issues raised in the Defendants' expert reports that "either were 1) not responsive to the substance of Amtrak's initial expert witness reports or 2) could not reasonably have been anticipated by Amtrak at the time it filed its initial experts' reports." Order at p. 3. The Court further provided that the Defendants may move to strike anything in the expert reports that exceeded these two parameters. The Robles Hernandez and Hax rebuttal reports, both dated February 18, 2015, were subsequently served. Defendants hereby request

---

[1] This brief is submitted on behalf of all defendant Insurers: Arch Specialty Insurance Company ("Arch"), Aspen Specialty Insurance Company ("Aspen"), Commonwealth Insurance Company ("Commonwealth"), Federal Insurance Company ("Federal"), Lexington Insurance Company ("Lexington"), Liberty Mutual Fire Insurance Company ("Liberty Mutual"), Certain Underwriters at Lloyd's of London and Certain London Market Companies Subscribing to Policy Nos. 507/N11NA08240 ("Lloyd's '240 Policy"), 507/N11NA08241 ("Lloyd's '241 Policy") 507/N11NA08242 ("Lloyd's '242 Policy"), 507/N11NA08244 ("Lloyd's '244 Policy"), 507/N11NA08244 ("London Companies '244 Policy"), 507/N11NA08245 ("Inter Hannover") and Policy No. GEP 2944 ("GEP"), Maiden Specialty Insurance Company ("Maiden Specialty"), Maxum Indemnity Company ("Maxum"), Navigators Insurance Company ("Navigators"), Partner Reinsurance Europe plc ("Partner Re"), RSUI Indemnity Company ("RSUI"), Steadfast Insurance Company ("Steadfast"), Torus Specialty Company ("Torus"), and Westport Insurance Corporation ("Westport") (collectively, "Insurers").

that the Court strike the Robles Hernandez and Hax rebuttal reports, in their entirety, on the ground that the reports exceed the limitations delineated in the Order.[2]

**FACTS**

A copy of the Robles Hernandez rebuttal report is attached as Exhibit 1 to the Declaration of Costantino P. Suriano submitted herewith ("Suriano Decl."). A copy of the Hax rebuttal report is attached as Exhibit 2 to the Suriano Decl.

The Robles Hernandez report purports to be in rebuttal to the Defendants' expert report prepared by Paul L. Kelley ("Kelley"). A copy of the Kelley report is attached to the Suriano Decl. as Exhibit 3. The Hax report purports to be in rebuttal to the Defendants' expert report prepared by the engineering firm Thornton Tomasetti. The Thornton Tomasetti report is attached to the Suriano Decl. as Exhibit 4.

On January 12, 2015, Amtrak submitted its initial expert reports.[3] The expert report prepared by HNTB is dated September 18, 2014 and entitled, "Structural Assessment of the Amtrak Under River Tunnels in NYC Inundated by Super Storm Sandy." A copy of the HNTB report is attached as Exhibit 5 to the Suriano Decl. Mr. Kelley's expert report addresses and responds to certain portions of the HNTB report. The HNTB report supported, in part, Amtrak's claims for the track beds in the tunnels that were inundated as a result of Sandy with the following opinion:

---

[2] Defendants reserve the right to make a *Daubert* motion with respect to Robles Hernandez and Hax, if necessary, at a later date.

[3] Amtrak submitted four expert reports on January 12, 2015. These reports were entitled: (1) Structural Assessment of the Amtrak Under River Tunnels in NYC Inundated by Super Storm Sandy (prepared by HNTB's Nasri Munfah); (2) Impact of Superstorm Sandy on the Condition of the Concrete in the Amtrak River Tunnels in New York City (prepared by D. Michael D.A. Thomas); (3) Post-Tropical Cyclone Sandy: Weather Conditions in New York City October 29 & 30, 2012 (prepared by Dr. Austin Dooley); (4) Opinion of Dr. Philip Orton, Research Assistant Professor at Stevens Institute of Technology.

> With regards to the track system, chlorides became damage-causing agents when they thoroughly infiltrated the ballast, and then were exposed to oxygen and moisture in the air. The chlorides began to attack the rail system in the tunnels at that point, and this damage is continuing. As with the bench walls, there is no reliable method of correcting this damage other than through the complete replacement of the track structure, including the ballast. Without replacement, chloride attack is compromising and will continue to compromise the integrity and strength of the track and rails. Accordingly, it is recommended that the existing ballasted track system be replaced with a direct fixation track system, which is the current state of practice for rail tunnels. This work should be accomplished in coordination with the bench wall replacement to minimize service disruptions.

Suriano Decl, Ex. 5 at p. 3. The HNTB report specifically states that the rail system used in Amtrak's tunnels "consists of rock ballast, treated timber ties, tie plates and clips, running rail and third rail" and that "[t]hese components are now coated with chlorides." *Id.* at 51. In its recommendations on page 52, the HNTB report states as follows:

> Remove tunnel ballast and rail systems and replace them with a direct fixation rail system for the entire length of the tunnels (portal to portal).

*See Id.* at p. 52.

The purported cost of HNTB's recommended total replacement of the track systems in the four tunnels that are the subject of Amtrak's claim is presented on page 3 of the HNTB report under the heading "Direct Fixation Track," where the total cost is estimated to be $192,300,000. Thus, in the initial expert report submitted by Amtrak, HNTB expressed the opinion that because of chloride attack to the track systems in the tunnels, the entire rail system (which HNTB defines as ballast, ties, tie plates and clips, running rail and third rail) should be totally removed and replaced portal to portal with a new and improved direct fixation track system.

The sole portion of the Kelley report that mentions chloride levels on the rail system is contained on pages 17 and 19, where the following appears:

4

**6.2    Material Testing by LPI[4] (7 January 2015 LPI Report)**

We reviewed four letter reports by LPI reporting the results of their testing of surface chlorides on steel rails, third rails, and other metallic components in each of the four flooded tunnels (Reference Documents C-9 through C-12).

\*    \*    \*

LPI's conclusions, which are identical for all their four tunnel reports, are as follows:

- "No observable damage to rail or third rail components as a result of CAT-90 Sandy was evident, and under the typical, nominal environmental conditions it is expected that these components will provide their full designed service life."

- "LPI's observations indicated that these conditions were likely present well before the CAT-90 Sandy event in the [specific tube] (potentially for decades), and will not reduce the expected services lives of the rail and third rail components. However, any steel surfaces in these areas that are subsequently exposed to unusually elevated atmospheric humidity or other unexpected moisture sources will be subject to accelerated corrosion rates. In order to remediate the occurrence of such corrosion attack, pressure washing of the components with neutralizing/cleaning solutions would be required to reduce the residual chloride level."

Suriano Decl. Ex. 3, p. 17, 19.

Mr. Kelley did not include any comments concerning the track beds and rail system in his discussion and conclusions (Sections 10 and 11 of Kelley report (Suriano Decl. Ex. 3)). Robles Hernandez says that a "power washing" solution was "proposed by Mr. Kelley." Suriano Decl, Ex. 1, p. 3. In fact, Mr. Kelley made no such "proposal." Rather, Kelley expressly quotes a passage from LPI's report. He does so only as support for his position that chlorides were present in the Amtrak tunnels prior to Sandy. Additionally, that quoted passage discusses "pressure

---

[4] Lucius Pitkin, Inc. is referred to as "LPI."

5

washing" and not "power washing" as Robles Hernandez states.  Further, Mr. Kelley offers no expert opinions concerning track replacement.  Nevertheless, Amtrak submitted the Robles Hernandez rebuttal report as a purported rebuttal to the Kelley report.

The Hax report, purportedly rebutting the Thornton Tomasetti report, discusses only two issues with respect to the Thornton Tomasetti report.  These issues both deal with track components that the HNTB report defines as parts of Amtrak's rail system.  The first is the repair in-place of the third rail proposed by Thornton Tomasetti with respect to the tunnels that were flooded during Sandy.  The second is that Thornton Tomasetti does not identify running rail as damaged property.

## ARGUMENT

## POINT I

**NEITHER THE ROBLES HERNANDEZ NOR THE HAX REPORT REBUTS ISSUES RAISED IN DEFENDANTS' EXPERT REPORTS THAT WERE "NOT RESPONSIVE TO THE SUBSTANCE OF AMTRAK'S INITIAL EXPERT WITNESS REPORTS"**

Under the terms of the Order, neither the Robles Hernandez report nor the Hax report is an appropriate rebuttal on the ground that the issue being rebutted is "not responsive to the substance of Amtrak's initial expert reports."  Order at p. 3.

*The Robles Hernandez Report*

The Robles Hernandez rebuttal report fails to qualify as a rebuttal under the first prong of the Court's February 13, 2015 Order because, to the extent it rebuts issues raised by the Defendants' experts in their reports at all, those issues were responsive to the substance of Amtrak's initial expert reports.  In his report, Robles Hernandez purports to respond to the portion of the Kelley report that cites observations developed by another of the Defendants'

consultants, LPI.[5] Robles Hernandez states that "none of the tests done by LPI, Inc. provided any basis for Mr. Kelley or LPI to reach the conclusion that there has not been damage to third rail or rail in Amtrak's tunnels because of Superstorm Sandy." *See* Suriano Decl., Ex. 1, p. 3. Mr. Kelley, however, neither adopts nor reaches this conclusion. Rather he simply cites to the LPI chloride test results as one piece of information, among many, that supports his own conclusion that chlorides were present in the Amtrak tunnels prior to Sandy. Mr. Kelley is not expressing any expert opinion on the running rail or third rail. The Robles Hernandez report therefore is not "rebutting" any conclusion expressed by Mr. Kelley.

In any event, the LPI observations and test results cited by Mr. Kelley that are discussed by Robles Hernandez are clearly responsive to the substance of Amtrak's initial expert report prepared by HNTB. According to the HNTB report, "chlorides became damage-causing agents when they thoroughly infiltrated the ballast, and then were exposed to oxygen and moisture in the air. The chlorides began to attack the rail system in the tunnels at that point, and this damage is continuing." *See* Suriano Decl. Ex. 5, p. 3. Further, the HNTB report relies on its conclusions regarding chloride attack to recommend that the "existing ballasted track system be replaced with a direct fixation track system, which is the current state of practice for rail tunnels." *See* Suriano Decl., Ex. 5, p. 3.

To the extent it rebuts any issue raised by the Kelley report at all, the Robles Hernandez report therefore rebuts an issue that itself would be responsive to the substance of Amtrak's initial expert report prepared by HNTB. Through the Robles Hernandez report, Amtrak is

---

[5] LPI is not designated as one of Defendants' expert witnesses. Moreover, LPI's report was produced to Plaintiff on January 9, 2015, in advance of the January 12, 2015 deadline for Plaintiff's initial expert reports.

impermissibly attempting to cure perceived deficiencies in its initial expert report under the guise of a rebuttal, and in doing so, has breached the terms set out by the Court in its Order.

*The Hax Report*

The Hax rebuttal report likewise rebuts issues raised by the Defendants' experts in their reports that are responsive to the substance of Amtrak's initial expert reports. Like the Robles Hernandez rebuttal report, the Hax rebuttal report deals with the alleged need to replace the third rail and tracks in Amtrak's tunnels because of damage allegedly resulting from Sandy. *See* Suriano Decl., Ex. 2, p. 3-5. Like Dr. Robles Hernandez, Mr. Hax points to alleged chloride damage. *Id.* However, the conclusion that there is no damage to rail and that the third rail can be repaired in place is directly responsive to Amtrak's expert report prepared by HNTB, where HNTB opines that the entire rail system needs to be replaced because of Sandy damage.

The Hax rebuttal report therefore likewise rebuts an issue that itself was responsive to the substance of Amtrak's initial expert report prepared by HNTB. With the Hax rebuttal report, Amtrak again is improperly attempting to reinforce the conclusions reached by Amtrak's initial expert, HNTB. This clearly exceeds the bounds set by the Court in its Order.

**POINT II**

**THE ROBLES HERNANDEZ AND HAX REPORTS REBUT ISSUES THAT COULD "REASONABLY HAVE BEEN ANTICIPATED BY AMTRAK" AT THE TIME IT FILED ITS INITIAL EXPERTS' REPORTS**

Because the Robles Hernandez report and the Hax report do not rebut issues that are "not responsive to the substance of Amtrak's initial expert witness reports," to qualify as rebuttal reports under the Order – they must rebut issues that "could not reasonably have been anticipated by Amtrak at the time it filed its initial experts' reports." *See* Order at p. 3. The Robles Hernandez and Hax rebuttal reports not only address issues that could and should have been

anticipated by Amtrak at the time it served its initial expert reports, but they are an overt effort to bolster the arguments (expert opinions) first raised by HNTB in Amtrak's initial expert report concerning chloride attack on the track system. Although styled as "rebuttal reports," they are, in reality, supplemental reports. It plainly could "reasonably have been anticipated by Amtrak" that Defendants would submit evidence to refute the notion put forward by HNTB that chloride attack on the track system as the result of Sandy caused damage that required replacement of the entire track system.

Not only could Amtrak reasonably have anticipated that Defendants would submit evidence responsive to HNTB's opinion that the track system in Amtrak's tunnels needed to be replaced, but documents indisputably show that Amtrak, in fact, did anticipate Defendants' position on the issue. Attached to the Suriano Decl. as Exhibit 6 is an e-mail exchange produced by Amtrak that was marked at the deposition of Jeffrey Schwenk as SCHWENK 10.[6] Attached to the Suriano Decl. as Exhibit 7 is an excerpt from Jeffrey Schwenk's deposition transcript where he confirms the content of the e-mail exchange. The exchange, which includes Mr. Hax as a recipient, is dated November 13, 2014, well in advance of the January 12, 2015 deadline for Plaintiff's initial expert reports. The e-mail exchange discusses the scope of proposed repair work prepared by Thornton Tomasetti, which had been provided to Plaintiff prior to November 13.

In that e-mail exchange, Mr. Hax and his colleagues describe the proposed in-place scope of work by Thornton Tomasetti with respect to the third rail as: "Powerwash and replace cover board, brackets and appurtenances (limited replace scope)." Suriano Decl., Ex. 6. With respect to the railroad tracks, or running rails, the first e-mail states: "No scope at all (missing). Has TT

---

[6] Both Messrs. Schwenk and Hax work at the same firm, Continental Machinery Co., Inc.

included TRACK elsewhere in claim?" *Id.* The second e-mail (first in the sequence) adds: "I think TT is not including the track or ballast for repair or replace." *Id.* Jeffrey Schwenk was shown the e-mail at his deposition and was asked: " [s]o at the time you wrote this e-mail you believe that TT [Thornton Tomasetti] was not including the track or ballast for repair or replace; is that correct?" Mr. Schwenk answered: "That's exactly what I state in the e-mail message." (Suriano Decl., Ex. 7, Page 80, Lines 13-21). Mr. Hax and his colleagues at that point had already concluded that Thornton Tomasetti 1) was not including the running rails as part of the damaged items to be repaired or replaced, and 2) had limited the scope of repair to the third rail to powerwashing the third rail and replacing some of its accessories. In his purported rebuttal report, Hax discusses and opines on precisely the same items - - third rail and track - - that were noted in the November 2014 e-mail exchange (*see* pgs. 5, 6, and 7 of the Hax report (Suriano Decl., Ex. 2)). For example, the Hax rebuttal report states: "[t]he Thornton Tomasetti report does not include track in its assessments of these locations." Suriano Decl., Ex. 2, p. 5. This statement is nearly identical to the statements quoted above from the November 13 e-mail.

Because Amtrak and its consultants had already anticipated the issues raised in both the Robles Hernandez and Hax rebuttal reports well in advance of the time that Amtrak filed its initial experts' reports, Amtrak cannot offer the rebuttal reports on the second ground set forth in the Court's Order.

## **CONCLUSION**

In sum, the Robles Hernandez and Hax rebuttal reports do not meet the standards set by this Court in its February 13, 2015 Order. First, the issue Robles Hernandez purports to rebut is responsive to the substance of Amtrak's initial HNTB report. Likewise, the issue in the Thornton Tomasetti report that Hax purports to rebut was responsive to Amtrak's initial HNTB report. Second, Amtrak reasonably could have anticipated that Defendants would submit

evidence that is responsive to the chloride attack issue concerning the tracks raised by Amtrak's own expert HNTB in its initial expert report. Moreover, an e-mail exchange well in advance of the deadline for Plaintiff's initial expert reports shows that Plaintiff did, in fact, anticipate that Thornton Tomasetti 1) would not include any tunnel track in its scope of repairs, and 2) would list only power washing and replacement of certain components of the third rail in its scope, the same items that are addressed in the Hax "rebuttal." For the foregoing reasons, the Robles Hernandez and Hax reports should be stricken in their entirety because they both exceed the parameters set by this Court.

Dated: New York, New York
      April 17, 2015

MOUND COTTON WOLLAN & GREENGRASS LLP

By:   /s/ Costantino P. Suriano
Costantino P. Suriano
(csuriano@moundcotton.com)
John Mezzacappa
(jmezzacappa@moundcotton.com)
Bruce R. Kaliner
(bkaliner@moundcotton.com)
One New York Plaza
New York, New York 10004
Telephone: (212) 804-4200
*Attorneys for Defendants Commonwealth Insurance Company, Lexington Insurance Company, Maiden Specialty Insurance Company, Steadfast Insurance Company, and International Insurance Company of Hannover SE.*

ROPES & GRAY LLP

By:   /s/ Catherine A. Mondell
Catherine A. Mondell
(catherine.mondell@ropesgray.com)
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

Evan P. Lestelle
(evan.lestelle@ropesgray.com)
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
*Attorneys for Defendants Partner Reinsurance Europe plc, Torus Specialty Insurance Company, Westport Insurance Corporation, and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244, and 507/N11NA08244.*


BRUCKMANN & VICTORY, L.L.P

By: /s/ Arjang Victory
Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel: (212) 850-8500
*Attorneys for Defendants Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Federal Insurance Company, Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. 507/Nl1NA08240 and 507/N11NA08241, Maxum Indemnity Company, Navigators Insurance Company, and RSUI Indemnity Company.*


FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC

By: /s/ Christopher S. Finazzo
Christopher S. Finazzo
(christopher.finazzo@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (646) 378-2033
*Attorneys for Defendant Liberty Mutual Fire Insurance Company*