UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION,<br><br>                          Plaintiff,<br><br>vs.<br><br>ARCH SPECIALTY INSURANCE COMPANY;<br>ASPEN SPECIALTY INSURANCE COMPANY;<br>COMMONWEALTH INSURANCE COMPANY;<br>FEDERAL INSURANCE COMPANY;<br>LEXINGTON INSURANCE COMPANY;<br>LIBERTY MUTUAL FIRE INSURANCE COMPANY;<br>CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON and CERTAIN LONDON MARKET INSURANCE COMPANIES subscribing to Policy Nos. 507/N11NA08240, 507/N11NA08241, 507/N11NA08242, 507/N11NA08244, 507/N11NA08244, 507/N11NA08245 and GEP 2944;<br>MAIDEN SPECIALTY INSURANCE COMPANY;<br>MAXUM INDEMNITY COMPANY;<br>NAVIGATORS INSURANCE COMPANY;<br>PARTNER REINSURANCE EUROPE plc;<br>RSUI INDEMNITY COMPANY;<br>SCOR GLOBAL P&C SE;<br>STEADFAST INSURANCE COMPANY;<br>TORUS SPECIALTY INSURANCE COMPANY; and<br>WESTPORT INSURANCE CORPORATION,<br><br>                          Defendants. | Civ. Action No.:14-cv-7510 (JSR) |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR RECONSIDERATION OF ORDER GRANTING
MOTION FOR SUMMARY JUDGMENT-APPLICATION
OF FLOOD AND OCCURRENCE PROVISIONS**

Pursuant to Local Civil Rule 6.3 and Rule 60(b) of the Federal Rules of Civil Procedure, Plaintiff National Railroad Passenger Corporation ("Amtrak") submits this Memorandum of Law in Support of its Motion for Reconsideration of the Order Granting

dcdocs-90304.2

Defendant-Insurers' Motion for Summary Judgment – Application of Flood and Occurrence Provisions [ECF No. 255].

## PRELIMINARY STATEMENT

Reconsideration of the dismissal of the excess insurance companies identified in the June 24 Order is warranted.[1]  Defendants' own moving papers establish that Amtrak is seeking insurance coverage for property damage from Superstorm Sandy that is not subject to the flood sublimit, such as structures damaged by high winds, trees blown onto Amtrak's tracks and emergency costs incurred before Sandy made landfall or the storm surge occurred.  Amtrak has included such damage in its submissions to the insurance companies and intends to submit evidence about it at trial.  The excess insurance companies that are identified for dismissal will be obligated to pay for that damage once the primary policy limits of $125 million are exhausted by losses from water inundation.  Accordingly, those excess insurance companies should not be dismissed from this declaratory judgment action on the eve of trial.

## ARGUMENT

To avoid the unintended forfeiture of insurance proceeds which Amtrak ultimately will be entitled to receive, as well as minimize the potential for future litigation about whether the excess insurance companies are bound by determinations at the upcoming trial, reconsideration of the dismissal of certain excess insurance companies is warranted pursuant to Local Civil Rule 6.3 and Rule 60(b)(1) and (6).

---

[1] Amtrak does not seek reconsideration of this Court's decision that the flood sublimit extends to storm surge and wind-driven water.  Amtrak also does not seek reconsideration of any other aspect of the June 24 Order.  Rather, Amtrak intends to address those other aspects of the June 24 Order, as appropriate, through an appeal following the conclusion of this action.

2

Local Rule 6.3 permits motions for reconsideration or reargument based on applications that concisely set forth "the matters or controlling decisions which counsel believes the Court has overlooked." Rule 60(b)(1) provides that "the Court may relieve a party or its lawful representative from a final . . . order for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect." Rule 60(b)(6) provides for reconsideration for "any other reason that justifies relief" not specifically listed in the other subsections of Rule 60(b).

Reconsideration is warranted because the June 24 Order overlooks that Amtrak is seeking coverage for property damage that is not subject to the flood sublimit. While Amtrak's opposition brief did not specifically call this Court's attention to this fact (which, with hindsight, should have been done),[2] Defendants have been well aware of it since July 19, 2013, when Amtrak presented its first submission of $54.1 million in estimated losses. That submission set forth expenses incurred by Amtrak both in preparing for and responding to the storm. *See* Ex. H to the Declaration of Evan Lestelle, submitted in support of Defendant-Insurers' Motion for Summary Judgment – Application of Flood and Occurrence Provisions ("Lestelle Decl."), dated March 9, 2015, at AMT0053426. Photographs and discussion of non-flood components of these expenses are included in Ex. J to the Lestelle Declaration, at AMT00218660-61 (describing actions taken before the storm made landfall or any flooding occurred), AMT00218685-87 (photographs of fallen trees and other wind damage to overhead wires and buildings) and AMT00218693 (summarizing engineering work to remove fallen trees, make catenary repairs, patrol 2,353 miles of track and take other efforts unrelated to flood damage); *see also* Ex. T to

---

[2] In response to Defendants request for dismissal, Amtrak requested the motion be denied in its entirety. *See* Opposition Br. at 25.

3

dcdocs-90304.2

the Declaration of Catherine Mondell submitted in support of Defendant-Insurers' Motion for Summary Judgment – Application of Flood and Occurrence Provisions, dated March 9, 2015 ("Mondell Decl."), at 2. During the storm, electrical and signal systems and many structures suffered damage from high winds and underwent emergency repairs.[3] *See* Ex. T to the Mondell Decl. at 4-5.

The excess insurance companies affirmatively admit in their response to Amtrak's Request for Admission No. 55 that Sandy downed trees on tracks outside of Amtrak's tunnels, for which Amtrak incurred actual expenses. *See* Ex. AA to the Declaration of Marshall Gilinsky in Opposition to Insurers' Motion for Partial Summary Judgment Regarding Application of Flood and Occurrence Provision, dated March 30, 2015 ("Gilinsky Decl.") at 26-27. Although the dollar amount the insurance companies were willing to admit for that particular expense is small, the admission of damage beyond the flood sublimit is clear. The same is true for the $10 million payment that the insurance companies made after receipt of the first submission. Some part of this payment necessarily responded to Amtrak's requests for coverage of non-flood losses.[4] Much more support is available outside the record of this motion, such as a line-item analysis done by Defendants' accountant, John Field, and Defendants' pricing expert, Troy Wilson, of Amtrak's first submission.[5]

---

[3] Defendants noted in their moving papers that this exhibit was authenticated by Amtrak. *See* Mondell Decl, at ¶21.

[4] *See* Ex. W to the Mondell Decl., where the claims representative of one of the London primary insurance companies acknowledged participation in this unallocated payment.

[5] This document is on Amtrak's exhibit list for trial and was the subject of deposition testimony. Amtrak is prepared to provide a copy if requested by the Court, pursuant to Local Civil Rule 6.3.
dcdocs-90304.2

It is beyond dispute is that Amtrak is seeking coverage for these non-flood losses in this action. *See* Amended Complaint, attached as Ex. D to the Mondell Decl. Among other things, those policies "insure[] against all risk of direct physical loss of or damage to property described herein." *See id.* at ¶9. They also cover expenses incurred by Amtrak to minimize "actual or imminent loss or damage covered by this policy." *See id.* at ¶29.

It also is beyond dispute that the excess policies cover non-flood losses where the primary policies are exhausted by other losses that fall within the flood sublimit. Specifically ¶4.B. of the Excess Policies provides:

> In determining the amount of any loss, damage, or expense for which this policy is excess, the total loss for all coverages caused by any combination of perils, one or more of which is insured against under the primary policy, shall be used even though all such perils or coverages are not insured against under this excess policy.
>
> (1) Any recoveries made under the primary policy shall be considered as first applying to those perils and/or property and/or coverages not insured against by this policy. Upon exhaustion of the primary policy limits, this policy shall drop down and be liable for the loss in excess of the amount attributable to the primary policy as respects those perils and/or coverages and/or property insured hereunder subject to the limit of this policy.

*See e.g.,* Maiden Excess Policy, attached as Ex. V to the Gilinsky Decl. at ¶4.B.

If this Court proceeds with the dismissal of the excess insurance companies, Amtrak could face the spectre of forfeiting millions of dollars in insurance proceeds for its non-flood losses. Such losses are covered under the excess insurance policies once the primary limits of $125 million are exhausted, but it will be difficult for Amtrak to obtain any such recovery following this Court's dismissal of those excess insurance companies from this action. The Court's dismissal would turn the flood sublimit into a total program limit, without any basis for doing so.

Alternatively, if the Second Circuit were to reverse the June 24 Order with respect to the applicable limits or sublimits, and the excess insurance companies remain dismissed, there could be a dispute between Amtrak and the excess insurance companies about the binding nature of the upcoming trial.  The excess insurance companies may attempt to claim that they are not bound by the judgment.  Amtrak, however, will undertake to enforce the determinations made during trial against them on grounds of collateral estoppel and *res judicata*.  See *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (holding that privity includes "[t]hose who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possible coparties to a prior action"); *Tolley v. American Transit Ins. Co.*, 638 F. Supp. 1191, 1194 (S.D.N.Y. 1986).  Future litigation on these grounds would be avoided by keeping the excess insurance companies in the trial that commences in two weeks.

For the reasons set forth above, the dismissal of the excess insurance companies on the eve of trial warrants reconsideration and reversal under Local Rule 6.3, along with Rules 60(b)(1) and (6).

Dated: June 25, 2015

          By:   /s/ _____
                Rhonda D. Orin, Esq. (RO-0359)
                rorin@andersonkill.com
                Daniel J. Healy, Esq. (DH-7396)
                dhealy@andersonkill.com
                Marshall Gilinsky, Esq. (MG-8398)
                mgilinsky@andersonkill.com
                **ANDERSON KILL, L.L.P.**
                1717 Pennsylvania Avenue, N.W.
                Washington, DC 20006
                Telephone: 202-416-6500

                Finley T. Harckham, Esq. (FH-8219)
                fharckham@andersonkill.com
                Peter A. Halprin, Esq. (PH-2514)
                phalprin@andersonkill.com
                **ANDERSON KILL, P.C.**
                1251 Avenue of the Americas
                New York, NY 10020
                Telephone: 212-278-1000
                *Attorneys for Plaintiff*

dcdocs-90304.2