**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
NATIONAL RAILROAD PASSENGER            :
CORPORATION,                           :
                                       :
                        Plaintiff,     :
                                       :
            v.                         :
                                       :
ARCH SPECIALTY INSURANCE COMPANY;      :
ASPEN SPECIALTY INSURANCE COMPANY;     :   14 Civ. 7510 (JSR)
COMMONWEALTH INSURANCE COMPANY;        :
FEDERAL INSURANCE COMPANY; LEXINGTON   :
INSURANCE COMPANY; LIBERTY MUTUAL FIRE :
INSURANCE COMPANY; CERTAIN             :
UNDERWRITERS AT LLOYD'S OF LONDON and  :
CERTAIN LONDON MARKET COMPANIES        :
Subscribing to Policy Nos. 507/N11NA08240, :
507/N11NA08241, 507/N11NA08242,        :
507/N11NA08244, 507/N11NA08244,        :
507/N11NA08245 and GEP 2944; MAIDEN    :
SPECIALTY INSURANCE COMPANY; MAXUM     :
INDEMNITY COMPANY; NAVIGATORS          :
INSURANCE COMPANY; PARTNER             :
REINSURANCE EUROPE plc; RSUI INDEMNITY :
COMPANY; STEADFAST INSURANCE COMPANY;  :
TORUS SPECIALTY INSURANCE COMPANY; and :
WESTPORT INSURANCE CORPORATION,        :
                                       :
                        Defendants.    :
                                       :
                                       :
------------------------------------------------------------------------x

### INSURERS' MOTION *IN LIMINE* [No. 3]
### TO EXCLUDE NON-RELEVANT/INFLAMMATORY REFERENCES TO ISSUES
### UNRELATED TO AMTRAK'S CLAIMS UNDER THE POLICIES

**Table of Contents**

Table of Authorities........................................................................................................ii

I.    Non-Relevant References to Sandy Should Be Precluded .............................................1

II.   References to Purported Safety Impacts Should be Precluded......................................2

III.  References to Amtrak's Financial Health Should Be Precluded...................................4

## Table of Authorities

**Cases**

*Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 3043, 2015 WL 1061501, at \*4 (S.D.N.Y. Mar. 11, 2015).................................................................................................3

*Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*, No. 93 Civ. 6395, 1996 WL 221616, at \*3 (S.D.N.Y. May 1, 1996) ..............................................................4

*In re Air Crash near Clarence Ctr., New York, on Feb. 12, 2009*, No. 09 Civ. 294S, 2013 WL 5936975, at \*5 (W.D.N.Y. Nov. 4, 2013) ...........................................................5

*McCormick v. Merritt*, 250 N.Y.S. 443, 447-48 (4th Dept.1931) .................................................5

*United States v. Cilia*, No. 05 CR. 231, 2005 WL 1216295, at \*1 (S.D.N.Y. May 23, 2005)........................................................................................................................4

*United States v. Locascio*, 6 F.3d 924, 946 (2d Cir. 1993).........................................................3

*United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987)......................................................3

*United States v. Shvartsman*, 317 F. App'x 68, 71 (2d Cir. 2009).................................................3

**Statutes**

Fed. R. Evid. 401 .......................................................................................................................1

Fed. R. Evid. 403 .......................................................................................................................2

Insurers submit this motion to exclude any reference to issues that have nothing to do with Amtrak's claims under the Policies, specifically (i) the human toll and damage to businesses other than Amtrak during Sandy; (ii) purported public safety issues that will result if Amtrak does not replace its tunnel benchwall and track; and (iii) Amtrak's financial condition.  The Court should preclude Amtrak from referencing or introducing evidence in any format, including, but not limited to, documents, testimony, photographs, videos, etc. that involves such issues, as they are irrelevant to Amtrak's claimed losses, would be unduly prejudicial to Insurers, and confusing to the jury.

## I.   Non-Relevant References to Sandy Should Be Precluded

Based on the allegations in Amtrak's pleadings and statements to the Court, it is apparent that Amtrak intends to make broad statements regarding Sandy's impact on others during the course of trial.  For example, the Amended Complaint states: "The storm devastated the lives and livelihoods of citizens and businesses along the Eastern seaboard, causing more than $72 billion in losses."  Am. Compl. ¶ 3 [ECF No. 65].

Under Rule 401, evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."   Fed. R. Evid. 401.   Evidence about human suffering, deaths, humanitarian efforts, general business loss, or estimates of the total cost attributable to damages caused by Sandy nationwide is not relevant to Amtrak's Sandy claim.  Amtrak's claim involves alleged "direct physical loss to its property," which Amtrak asserts is "covered under the terms of the Policies."  Id. ¶ 113.  Amtrak should be permitted to introduce evidence concerning the alleged property damage to its tunnel tubes and other assets, but should be precluded from

introducing evidence that concerns unrelated deaths, public safety, third-party liability, Homeland security, damage, and destruction caused by Sandy.

Such evidence is not only irrelevant to Amtrak's claim but it is also likely to cause unfair prejudice and confuse jurors who may have personally experienced the effects of Sandy. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Accordingly, a ruling is necessary and appropriate to exclude any evidence of inflammatory references to Sandy at trial.

## II.   References to Purported Safety Impacts Should be Precluded

Amtrak has asserted that increased danger to Amtrak passengers will result unless Insurers are compelled to pay additional amounts. For example, in Amtrak's opposition to Insurers' motion to dismiss Amtrak's demand for consequential damages, Amtrak states:

> Until Amtrak receives insurance recoveries that are substantial enough for Amtrak to plan, finance and execute the large-scale repair/replacement projects that it has identified as necessary, Amtrak faces an increased risk of an incident that could give rise to third-party liability or other liability.

*See* Memorandum of Law in Opposition to Insurers' Partial Motion to Dismiss (Consequential Damages) ("Consequential Damages Opp. Mem.") at 6 n.14 [ECF No. 106].

Other Amtrak filings include even more overt references to hypothetical danger to passengers:

> Defendants apparently deny any damage to the running rails and ballast . . . . There has been considerable disagreement about the extent of the inundated area, so the blanket statement that some tested sections were inundated and others were not is not sufficient to eliminate a fact issue. This is particularly true because there is no room for error with regard to an incorrect assessment of the absence of any damage to a passenger railroad's trackbed. *An error could lead to the derailment of a passenger train deep under the city's rivers – a potentially calamitous scenario.*

2

*See* Memorandum of Law in Opposition to Insurers' Motion for Partial Summary Judgment Regarding Replacement of Benchwalls and Track Bed at 8 n.28.[1]

Such references have no place at trial, as they are irrelevant to Amtrak's breach of contract and declaratory judgment claims. *See United States v. Shvartsman*, 317 F. App'x 68, 71 (2d Cir. 2009) (concluding that district court may exclude evidence that is "simply diversionary" and "not relevant"). Moreover, such references are likely to inflame the jury and prejudice Insurers. *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 3043, 2015 WL 1061501, at *4 (S.D.N.Y. Mar. 11, 2015) ("Statements designed to appeal to the jury's emotions or to 'inflame the passions or prejudices of the jury' . . . are improper.") (quoting *United States v. Peterson*, 808 F.2d 969, 977 (2d Cir. 1987)); *accord United States v. Locascio*, 6 F.3d 924, 946 (2d Cir. 1993) (concluding that prosecutor's remarks that jurors would have to be "less than human" if they "didn't feel some personal concern" for their own safety amounted to "an intolerable attempt . . . to instill fear . . . .").

Any attempt to play on jurors' emotions must be policed particularly closely in light of the recent derailment of an Amtrak train outside of Philadelphia and associated press reports and commentary regarding whether Amtrak has sufficient funding from the federal government to address known safety risks and whether other factors have impeded Amtrak from adequately

---

[1] Amtrak made similar references to danger to passengers at the oral argument on February 3, 2015. See June 30, 2015 Declaration of Costantino P. Suriano ("Suriano Decl."), Ex. A - Hearing Tr. at 12:8-19 (arguing that Amtrak has been concerned about damage to its tunnels since World War II because Amtrak must be mindful of the "extraordinary safety issues in its daily operations," "the public trust in its responsibility," and "extremely important national security issues, Department of Homeland Security issues."). However, the Court recognized these concerns as "irrelevant" to the issues presented on summary judgment. *Id.* At trial, such references would not only be irrelevant, but also distracting to the jury and prejudicial to Insurers.

addressing passenger safety.[2]   Therefore, the Court should preclude Amtrak from references to passenger safety that are designed solely to instill fear.

**III.     References to Amtrak's Financial Health Should Be Precluded**

Amtrak has cited its current (lack of) financial health as a reason it requires additional payment from Insurers.  *See e.g.*, Consequential Damages Opp. Mem. at 6 n.14 ("Until Amtrak receives insurance recoveries that are substantial enough for Amtrak to plan, finance and execute the large-scale repair/replacement projects that it has identified as necessary, Amtrak faces an increased risk of an incident . . . ."); Am. Compl. ¶ 20 ("Judicial resolution is needed for Amtrak to assess the amount of insurance coverage available for its losses following Superstorm Sandy . . . [to] enable Amtrak to make critical decisions about current and future railroad operations.").

As an initial matter, consideration of Amtrak's financial condition is irrelevant to its breach of contract and declaratory judgment claims.  *See Hertzog, Calamari & Gleason v. Prudential Ins. Co. of Am.*, No. 93 Civ. 6395, 1996 WL 221616, at *3 (S.D.N.Y. May 1, 1996) (finding evidence of plaintiff's financial status irrelevant to the Court's interpretation of a lease's termination clauses); *United States v. Cilia*, No. 05 CR. 231, 2005 WL 1216295, at *1 (S.D.N.Y. May 23, 2005) (concluding that evidence of a party's financial condition inadmissible as irrelevant and confusing to the jury).

Moreover, any reference by Amtrak to its financial health is a transparent and impermissible attempt to solicit the jury's sympathy.  *See In re Air Crash near Clarence Ctr., New York, on Feb. 12, 2009*, No. 09 Civ. 294S, 2013 WL 5936975, at *5 (W.D.N.Y. Nov. 4,

---

[2] *Amtrak Crash: Train Hit Curve Going Over 100 MPH*, WALL ST. J. (May 14, 2015), http://www.wsj.com/articles/deadly-train-wreck-in-philadelphia-leaves-disastrous-mess-1431499608; *Technology That Could Have Prevented Amtrak Derailment Was Absent*, N.Y. Times (May 13, 2015), http://www.nytimes.com/2015/05/14/us/technology-that-could-have-prevented-amtrak-derailment-was-absent.html.

4

2013) ("Evidence of a claimant's financial status is properly precluded when the sole purpose of

its admission is to prejudice the jury.") (citing *McCormick v. Merritt*, 250 N.Y.S. 443, 447-48

(4th Dept.1931) (finding evidence inadmissible where the "only purpose in offering it was to

play upon the sympathy of the jury")).  Accordingly, the Court should preclude any reference by

Amtrak to these issues at trial.

Dated: New York, New York
      June 30, 2015

           MOUND COTTON WOLLAN & GREENGRASS
           LLP

           By:  /s/ Costantino P. Suriano
           Costantino P. Suriano
           (csuriano@moundcotton.com)

           Bruce R. Kaliner
           (bkaliner@moundcotton.com)

           One New York Plaza
           New York, New York 10004
           Telephone: (212) 804-4200
           *Attorneys for Defendants Commonwealth Insurance*
           *Company, Lexington Insurance Company, Maiden*
           *Specialty Insurance Company, Steadfast Insurance*
           *Company, and International Insurance Company of*
           *Hannover SE*

           ROPES & GRAY LLP

           By:  /s/ Catherine A. Mondell
           Catherine A. Mondell
           (catherine.mondell@ropesgray.com)
           800 Boylston Street
           Boston, MA  02199
           Telephone: (617) 951-7000

           Joseph G. Cleemann
           (joseph.cleemann@ropesgray.com)
           1211 Avenue of the Americas
           New York, NY 10036
           Telephone: (212) 596-9000

*Attorneys for Defendants Partner Reinsurance Europe plc, Torus Specialty Insurance Company, Westport Insurance Corporation, and Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. GEP 2944, 507/N11NA08242, 507/N11NA08244, and 507/N11NA08244.*

BRUCKMANN & VICTORY, L.L.P.

By: /s/ Arjang Victory
Arjang Victory (victory@bvlaw.net)
Timothy G. Church (church@bvlaw.net)
420 Lexington Avenue, Suite 1621
New York, NY 10170
Tel: (212) 850-8500
*Attorneys for Defendants Arch Specialty Insurance Company, Aspen Specialty Insurance Company, Federal Insurance Company, Certain Underwriters at Lloyd's of London and Certain London Market Insurance Companies subscribing to Policy Nos. 507/N11NA08240 and 507/N11NA08241, Maxum Indemnity Company, Navigators Insurance Company, and RSUI Indemnity Company.*

FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC

By: /s/ Christopher S. Finazzo
Christopher S. Finazzo
(christopher.finazzo@finazzolaw.com)
5 Penn Plaza, 23rd Floor
New York, NY 10001
Tel: (646) 378-2033
*Attorneys for Defendant Liberty Mutual Fire Insurance Company*

6