UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NATIONAL RAILROAD PASSENGER CORPORATION,

                Plaintiff,

v.

ARCH SPECIALTY INSURANCE COMPANY;
ASPEN SPECIALTY INSURANCE COMPANY;
COMMONWEALTH INSURANCE COMPANY;
FEDERAL INSURANCE COMPANY;
LEXINGTON INSURANCE COMPANY;
LIBERTY MUTUAL FIRE INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON
and CERTAIN LONDON MARKET INSURANCE
COMPANIES subscribing to Policy Nos.
507/N11NA08240, 507/N11NA08241, 507/N11NA08242,
507/N11NA08244, 507/N11NA08244, 507/N11NA08245
and GEP 2944;
MAIDEN SPECIALTY INSURANCE COMPANY;
MAXUM INDEMNITY COMPANY;
NAVIGATORS INSURANCE COMPANY;
PARTNER REINSURANCE EUROPE plc;
RSUI INDEMNITY COMPANY;
SCOR GLOBAL P & C;
STEADFAST INSURANCE COMPANY;
TORUS SPECIALTY INSURANCE COMPANY; and
WESTPORT INSURANCE CORPORATION,

                Defendants.

Civ. Action No.:14-cv-7510 (JSR)

**ORAL ARGUMENT REQUESTED**

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE THE EXPERT TESTIMONY AND REPORT OF DAVID JACOBY

---

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT .............................................................................................................................. 7

A.    Jacoby's Purported Expert Testimony Is Not Admissible Because He Is Not Qualified to Testify about Damage to the Electrical Components of a Railroad, Particularly in Tunnels. ................................................ 7

B.    David Jacoby's Expert Opinion Should Be Excluded from Trial as Unreliable and Speculative ................................................................................... 10

    1.    Jacoby Does Not Offer Any Proper Expert Opinion and Will Not Assist the Jury under Fed. R. Evid. 702(a) ........................................ 10

    2.    Jacoby Lacks Factual Knowledge Regarding the Opinions He offers about the Configuration of New Benchwalls ............................. 10

    3.    Jacoby Admitted He Cannot Yet Render an Opinion as to NFPA 130 Compliance ................................................................................ 11

    4.    Jacoby's Own Testimony Undermines His Opinions that Amtrak Need Not Follow NFPA 130 ........................................................ 12

C.    The Jacoby Report Should Be Excluded Because It Violates Fed. Rule Evid. 801 ............................................................................................................... 14

D.    Jacoby's Testimony and Report Should Be Excluded Because Each Violates Fed. R. Evid. 401 ........................................................................... 14

CONCLUSION ........................................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*405 Condo Assocs. LLC v. Greenwich Ins. Co.*,
  No. 11 Civ. 9662, 2012 U.S. Dist. LEXIS 181922 at *13 (S.D.N.Y. Dec. 24, 2012) ................................................................................................................. 14

*Baker v. Urban Outfitters, Inc.*,
  254 F. Supp.2d 346 (S.D.N.Y. 2003) ......................................................................... 8

*Boucher v. U.S. Suzuki Motor Corp.*,
  73 F.3d 18 (2d Cir. 1996) .......................................................................................... 8

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993) ..................................................................................... 2, 7, 8, 14

*DVL, Inc. v. Niagara Mohawk Power Corp.*,
  490 F. App'x. 378 (2d Cir. 2012) ............................................................................ 10

*Hananburgh v. Metro-North Commuter R.R.*,
  13-CV-2799 (JMF), 2015 U.S. Dist. LEXIS 34008 (S.D.N.Y. Mar. 18, 2015) ........................................................................................................................ 8

*In re Rezulin Prods. Liab. Litig.*,
  309 F.Supp.2d 531 (S.D.N.Y. 2004) ......................................................................... 9

*Johnson Elec. N. Am., Inc. v. Mabuchi Am. Motor Corp.*,
  103 F. Supp.2d 268 (S.D.N.Y. 2000) ..................................................................... 8, 9

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010) ....................................................................... 8

*Pretter v. Metro N. Commuter R.R.*,
  206 F. Supp. 2d 601 (S.D.N.Y. 2002) (Rakoff, J.) .................................................... 9

*Primavera Familienstiftung v. Askin*,
  130 F. Supp. 2d 450 (S.D.N.Y. 2001) ....................................................................... 8

*Raskin v. Wyatt Co.*,
  125 F.3d 55 (2d Cir. 1997) ........................................................................................ 7

*Shatkin v. McDonnell Douglas Corp.*,
  727 F.2d 202 (2d Cir. 1984) ...................................................................................... 8

# TABLE OF AUTHORITIES

**Page(s)**

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ................................................................................................................ 14

Fed. R. Evid. 402 ................................................................................................................ 14

Fed. R. Evid. 701 ................................................................................................................ 10

Fed. R. Evid. 702 ........................................................................................................... 7, 14

Fed. R. Evid. 702(a) ........................................................................................................... 10

Fed. R. Evid. 801 ................................................................................................................ 14

Fed. R. Evid. 801(c) ........................................................................................................... 14

Fed. R. Evid. 803 ................................................................................................................ 14

The plaintiff, National Railroad Passenger Corporation ("Amtrak"), submits this Memorandum of Law in support of its Motion to Preclude the Expert Testimony and Report of David Jacoby.

## **PRELIMINARY STATEMENT**

This case involves Amtrak's claim for insurance coverage under its all-risk property insurance policies (the "Policies") in effect on October 29, 2012, when Superstorm Sandy made landfall in the New York City region.  The claim is for Amtrak's losses following Superstorm Sandy.  The parties already have filed briefs before the Court detailing a number of the facts and legal issues in dispute.

A key issue is the replacement of the benchwalls.  It is not disputed that the benchwalls were completely submerged through portions of the North and South tubes of the North River Tunnel (NRT) and Lines 1 and 2 of the East River Tunnel ("ERT"), all of which are owned by Amtrak.  The insurance companies do dispute that the benchwalls need to be replaced from portal-to-portal.  Amtrak claims that new benchwalls need to be built to modern safety standards.  One such standard is from the National Fire Protection Association ("NFPA") and is referenced as NFPA 130.  It specifically applies to passenger railroad tunnels and benchwalls in those tunnels, because benchwalls are used as a means of egress in the case of an emergency, and for ingress by emergency workers.

It is not disputed that Amtrak's 100-year-old benchwalls are not built to the modern standards of NFPA 130.  In fact, the height of the benchwall is nearly two feet higher than the height of the floor of a modern passenger train.  This height, in turn, cuts down on head room for people walking on the benchwall, because the benchwall is against the rounded wall of the tunnel.  New benchwalls built in compliance with modern

NFPA 130 specifications would be level with the train floor, wider and permit greater head room for ease of egress in an emergency. Moreover, the New York City Fire Code expressly adopted NFPA 130 in 2014. Accordingly, Amtrak and its expert consultants recommend replacing not just the middle portion of the current benchwall that was submerged following Sandy, but the whole benchwall portal-to-portal with a modern benchwall that meets the specifications of NFPA 130.

Defendants' have proffered David Jacoby, an engineer employed by a member of Defendants' claim adjustment team, as an expert on NFPA 130 to opine that portal-to-portal replacement is unnecessary. Jacoby, however, fails to meet the requirements for admissible expert testimony under the Federal Rules and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Jacoby is not qualified to testify as an expert because:

- He improperly attempts to render a legal opinion;
- He has no experience dealing with post-storm or saltwater submersion damages;
- He has never recommended that anyone should not comply with NFPA 130,
- He lacks the factual knowledge that he needs to render any opinion; and
- He cannot, nor could anyone else, render an opinion about NFPA 130 compliance, because no design for any proposed work has been completed.

Accordingly, Jacoby's testimony and report should be precluded.

## **FACTUAL BACKGROUND**

Jacoby was retained by the insurance companies in December 2014 for the sole purpose of offering an opinion as to Amtrak's compliance with NFPA 130.[1] Jacoby offers the opinion that Amtrak is legally exempt from complying with NFPA 130 based on a federal statute.[2]

> Q. In reaching that opinion, you relied on the Rail Passenger Service Act that's quoted in your report, right?
>
> A. In reaching which opinion?
>
> Q. That Amtrak isn't required to comply with NFPA 130.
>
> A. The Rail Passenger Service Act exempts Amtrak from local building – local and state building zoning and similar laws, and that's reinforced with the Amtrak Station Design document which says essentially the same thing.
>
> Q. And your opinion is that the NFPA -- that NFPA 130 is included in those things Amtrak is exempted from, correct?
>
> A. Yes.[3]

This opinion is an improper and inadmissible legal opinion.

Beyond rendering a legal opinion, Jacoby opines that the benchwalls need not be reconfigured to meet modern standards. He states this despite the fact that he does not know whether portions of the benchwall walkway are obstructed at certain heights, the configuration or even the dimensions of the benchwalls.

> Q. Okay. And it [the Jacoby Report] states, "The width at the top varies from approximately 24 inches to 42 inches." Do you see that?
>
> A. Yes.

---

[1] Deposition Transcript of David Jacoby, dated March 5, 2015, attached as Ex. A to the Declaration of Daniel J. Healy, dated June 30, 2015 ("Healy Decl."), at 16:8-18.

[2] Expert Report of David Jacoby, dated February 2, 2015, attached as Ex. B to the Healy Decl., at 10, 18.

[3] *See* Healy Decl., Ex. A at 82.

3

> Q. Where did you get that information from?
>
> A. As I said, it was in the General Description, and I believe that was also in the ICF Kaiser report.
>
> Q. Do you know where in the tunnels the bench wall is only 24 inches in width?
>
> A. Exactly? No.
>
> Q. And your answer would be the same for the question where in the bench – where in the tunnels the bench wall is 42 inches in width?
>
> A. It would be the same answer.
>
> Q. Did you ever take any measurements of the bench walls?
>
> A. Yes.
>
> Q. Where did you measure the bench walls?
>
> A. The exact location, I can't tell you off the top of my head. It was during our walk-through.
>
> Q. So it was in Line 4 of the ERT?
>
> A. Yes.
>
> Q. Do you know if it was in the portion of the line that runs under the river?
>
> A. I don't recall.[4]

He similarly did not know where the benchwalls stopped or started or where the benchwalls, or the pipes that run on top of them and on the wall above, them change configuration:

> Q. Okay. And are there other areas where there is a bench wall on one side and not the other?
>
> A. I don't know.
>
> Q. And are there areas where the bench walls have different configurations depending on where in the -- in the length of the tunnel you are?
>
> A. It's possible, yes.
>
> Q. And do you know what those configurations are?
>
> A. Exactly? No.
>
> Q. Okay. Do you know where they stop or start?

---

[4]  *See id.* at 52:2-53:8.

4

A. No

    *     *     *

Q. Okay. Have you ever performed any analysis of the use of the ladders?

A. No.

    *     *     *

Q. So the cabling on the wall of one side of Line 2 may be different from the cabling on the liner wall on the other side of Line 2, right?

A. I do not know what the individual cables are.

Q. And the same would be true for the equipment that you referenced; it might be different on one side as to the other?

A. It may be.

Q. And you talk about piping that's also on top of the bench wall. Do you know if it's the same piping on both sides?

A. I cannot identify the individual pipes.

    *     *     *

Q. Do you know how many pipes there are?

A. No.[5]

Jacoby demonstrated that he does not have actual knowledge of the benchwalls or their configuration, despite having offered the opinion that they can be used largely in the state they are in (in stark contrast to Paul Kelley's opinion) and can be connected to a new portion of benchwall constructed to different specifications and dimensions replacing inundated portions.

He opines that Amtrak should partially demolish and replace the benchwalls (replacing only the portion that was submerged) with a new, middle section built to modern specifications. According to him, a "transition" from the old portions of the benchwalls to the new portions, he further opines, would be NFPA 130 compliant.[6] He

---

[5]  *See id.* at 54:4-18, 55:3-5, 55:23-56:14, 58:15-17.

[6]  Healy Decl., Ex. B at 19.

5

admits, however, that he cannot actually render an NFPA 130 compliance opinion at this time.

> Q. Because that project never progressed to the design phase, you were not able to determine whether or not it would be NFPA 130 compliant, right?
>
> MR. CLEEMANN: Objection. Mischaracterizes testimony.
>
> A. That project, complete determination with NFPA 130 was not determined because it was never carried far - far enough forward.
>
> Q. Right. And before you said it never got to the design phase.
>
> A. (No response.)
>
> MR. CLEEMANN: Is there a question?
>
> Q. Is that right, it never got to the design phase?
>
> A. Correct.[7]

The reason for the lack of opinion is because a full design of the new benchwall would have to be completed by architects and engineers before anyone, including Jacoby, could render a compliance opinion.[8] Accordingly, his current opinion is entirely speculative, on top of the fact that he admittedly lacks any reasonable level of knowledge of the facts of the current benchwall configurations.

Jacoby's opinions about the benchwalls lack sufficient factual support and would be entirely fanciful and speculative. At best, they would mislead the jury.

Moreover, he admits that Amtrak should follow NFPA 130, even though he argues that Amtrak is not required to do so.

> Q. So, do I have it right that your -- your opinion is that, while you don't believe that they are required to follow it, they should follow it?

---

[7] Healy, Decl., Ex. A at 34:17-35:10.

[8] *Id.* at 134:12-14.

6

A. Yes.[9]

He further admits that he cannot recall ever recommending that any project not comply with NFPA 130.[10]  This admission alone undermines any argument that he is not just a hired gun offering a legal opinion coupled with a premature, speculative conclusion about benchwalls and future designs to replace those benchwalls, that Jacoby know almost nothing about.

## ARGUMENT

### A.  Jacoby's Purported Expert Testimony Is Not Admissible Because He Is Not Qualified to Testify about Damage to the Electrical Components of a Railroad, Particularly in Tunnels.

Rule 702 of the Federal Rules of Evidence provides, in pertinent part, that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his opinion if:

> (a) the expert's scientific, technical, or other specified knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 591-92 (1993) and its progeny, this Court is the "gatekeeper for expert testimony." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).  The proponent of expert testimony bears the

---

[9]     *Id.* at 145:2-6.

[10]    *Id.* at 198:23-199:7.

7

burden of establishing the admissibility of that testimony by a preponderance of the evidence. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

To be relevant, expert testimony must fit the facts of the case. *Daubert*, 509 U.S. at 591-92; *Johnson Elec. N. Am., Inc. v. Mabuchi Am. Motor Corp.*, 103 F. Supp.2d 268, 279-80, 81 (S.D.N.Y. 2000). An expert only will be allowed to testify if his or her analysis, including the methodology used for such analysis, is reliable. *See Johnson Elec.*, 103 F. Supp. 2d at 283 (*citing General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[E]xpert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples to oranges comparison." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996); *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984).

Similarly, experts cannot offer legal opinions. *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 528 (S.D.N.Y. 2001) (abrogated on other grounds) (citing *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992).) Opinions concerning the statutory or contractual duties of parties are inadmissible because they improperly usurp the role of the judge. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 475 (S.D.N.Y. 2010) (allowing some expert opinions but excluding those that offered opinions about the parties legal duties.)

An expert's opinion also must be based upon his own experience, education, and training, and be "adequately supported by reliable data" such as information reasonably relied upon by experts in the field. *Hananburgh v. Metro-North Commuter R.R.*, 13-CV-2799 (JMF), 2015 U.S. Dist. LEXIS 34008 (S.D.N.Y. Mar. 18, 2015)(citing *Freitas v.*

8

*Michelin Tire Corp.*, No. 94-CV-1812 (DJS), 2000 U.S. Dist. LEXIS 22719, at *2 (D. Conn. Mar. 2, 2000) and *Reyes v. Delta Dallas Alpha Corp.*, No. 92-CV-4418 (AGS), 2000 U.S. Dist. LEXIS 5668, at *2 (S.D.N.Y. May 2, 2000) (finding expert testimony admissible when the expert's findings were "adequately grounded in the methods and procedures of science, and were based on more than subjective belief or unsupported speculation.")).

Opinions that are not scientific and may mislead a jury should be stricken. *Pretter v. Metro N. Commuter R.R.*, 206 F. Supp. 2d 601, 603-04 (S.D.N.Y. 2002) (Rakoff, J.) (striking expert testimony that was vague to the point of being unscientific or offering legal and factual conclusions about parties' negligence and exposure to certain conditions).

Where an expert's testimony is based in part on the analysis of others, "district courts must make an independent determination that the material in question is sufficiently reliable for experts in the field to rely upon it and are not bound merely 'to accept expert testimony based on questionable data simply because other experts use such data in the field.'" *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531, 562 (S.D.N.Y. 2004) (*quoting United States v. Locascio*, 6 F.3d 924, 938 (2d Cir.1993)).

"In assessing the reliability of an expert opinion, a resort to common sense is not inappropriate." *Johnson Elec.*, 103 F. Supp.2d at 286 (excluding an expert damages analysis which, "despite its dazzling sheen of erudition and meticulous methodology, reaches a result which any average person could readily recognize as preposterous").

Jacoby's expert report and deposition testimony demonstrate that first, he offers an unwarranted legal opinion and second, a premature opinion that would be contrary to

9

every other recommendation he has previously made regarding benchwalls and NFPA 130 compliance. The Court should preclude both his testimony and report.

### B. David Jacoby's Expert Opinion Should Be Excluded from Trial as Unreliable and Speculative

#### 1. Jacoby Does Not Offer Any Proper Expert Opinion and Will Not Assist the Jury under Fed. R. Evid. 702(a)

Under Federal Rule of Evidence 701, "lay testimony results from a process of reasoning familiar in everyday life" whereas "expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x. 378, 380-81 (2d Cir. 2012). Jacoby offers the opinion that Amtrak is legally exempt from NFPA 130 and local codes that include NFPA 130. Based on the above case law, that opinion is not admissible because it usurps the role of the Court.

#### 2. Jacoby Lacks Factual Knowledge Regarding the Opinions He offers about the Configuration of New Benchwalls

Jacoby opines that the benchwalls can be replaced only in part and be compliant with NFPA 130. But he admits that he lacks the factual knowledge to determine what the configuration of the benchwalls is at this time, let alone what the design of the new benchwalls will be. Without knowing what the configuration of the current benchwalls is, he cannot possibly opine that the portions that he contends need not be replaced would be part of a compliant benchwall once the middle portion is rebuilt to a new, lower height. Yet, he was forced to admit at deposition, as set forth in the quoted testimony above, that he does not know basic information about the benchwall structure: where in the tunnels there are one or two benchwalls, what the widths are at the various points in the tunnels, whether the widths or other dimensions vary from one tunnel to another and

10

whether the pipes and other equipment in the tunnels obstruct the walkways.[11] He also admitted that he has not measured the various obstructions and does not know if they actually interfere with the path of egress – which is the primary function of the benchwalls:

> Q. And, therefore, there's only need for one bench wall in the ERT and NRT?
> A. For compliance with NFPA, yes. For egress.
> Q. So then is it your opinion that the structures you mentioned before do not interfere with the path of egress?
> A. Like I said, we have to measure.
> Q. So you don't know?
> A. I don't know.[12]

Jacoby's lack of any factual information to support his opinion leaves his opinions speculative and misleading.

His testimony will confuse the jury. Accordingly, Jacoby should be precluded from providing any expert testimony in this case.

### 3. Jacoby Admitted He Cannot Yet Render an Opinion as to NFPA 130 Compliance

Jacoby claims that the replacement of the middle portion of the benchwalls that was inundated will permit Amtrak to rebuild the damaged portion of the benchwalls in compliance with NFPA 130. But, as set forth in the quoted testimony above, he cannot actually yet perform a code analysis to determine if the plan is NFPA 130 compliant until a complete design has been prepared.[13] There is no dispute that there is no design at

---

[11]   *See supra* note 5.

[12]   Healy Decl., Ex. A at 111:9-18.

[13]   *See id.* at 34:17-35:10.

11

this time for the replacement of any of the benchwalls.  According to Jacoby's own testimony, his opinions are therefore premature and speculative.  They would be unreliable because he lacks the information he claims he needs to develop them, even in concept.  And they likely would only be conceptual, given his lack of factual information.  At best, his opinion is that hypothetically a benchwall, not necessarily Amtrak's exact benchwalls, could be designed to have a modern compliant portion in the middle that transitions to other portions of different heights and be compliant with NFPA 130.  That opinion is speculative, unreliable and without connection to the facts.  He should not be permitted to offer it at trial.

### 4.     Jacoby's Own Testimony Undermines His Opinions that Amtrak Need Not Follow NFPA 130

Jacoby cannot recall ever recommending that a project not be in compliance with NFPA 130.[14]  Jacoby also repeatedly stated that Amtrak *should* follow NFPA 130.  He even stated that his opinion is that Amtrak does not legally have to follow it, but definitely should follow it, neither of which is an actual expert opinion.  That opinion essentially is a Catch 22 for Amtrak, not a scientific or expert opinion about Amtrak's engineering requirements.

> Q. So is it your opinion that they don't officially have to comply with NFPA 130?
>
> A. Per their -- the Rail Passenger Service Act, they do not have to comply with any local, state, building, fire, zoning or similar law.[15]

Jacoby repeatedly testified that it is his opinion that Amtrak should comply with NFPA 130 and other portions of NFPA guidelines.  Among other things, he confirmed

---

[14]    *See id.* at 198:23-199:7.

[15]    *Id.* at 12:2-8.

that Amtrak should comply with NFPA 130 when Amtrak performs installation of emergency ventilation systems for the ERT and NRT, because NFPA 130 is an industry standard used for designing and installing such systems.[16] He confirmed that Amtrak should comply with NFPA 25 with regard to standpipe in Penn Station.[17] He confirmed that Amtrak should comply with NFPA 130 regarding standpipe in the ERT and NRT.[18] He confirmed that Amtrak should comply with NFPA 130 for lighting in the tunnels.[19] Amtrak also should comply, as he testified, with electrical design and ventilation control system requirements from NFPA 130.[20]

Logically, this analysis applies, of course, to the benchwalls as well. Only one means of egress is required by NFPA 130 and, *for that reason*, Jacoby's opined that only one means of egress is required.[21]

Jacoby's testimony demonstrates the inappropriateness of his opinions. Jacoby opines that Amtrak need not worry about NFPA 130 because Amtrak is not legally required to follow it. But he is not a lawyer or legal expert; he is an engineer. His legal opinion about what Amtrak may legally be required to follow is undermined by his engineering experience and intuition: that Amtrak certainly ought to follow NFPA 130. And that is what he recommends as an engineer.

---

[16]   *Id.* at 152:13-153:13.

[17]   *Id.* at 156:5-158:22.

[18]   *Id.* at 161:3-162:8,187:16-189:3.

[19]   *Id.* at 162:17-163:20.

[20]   *Id.* at 165:2-166:4,166:17-168:9.

[21]   *Id.* at 175:18-25.

13

Jacoby's testimony does not meet the standards of Rule 702 or *Daubert*.

### C. The Jacoby Report Should Be Excluded Because It Violates Fed. Rule Evid. 801

Out-of-court statements that are introduced to prove the truth of the matter asserted are hearsay. Fed. R. Evid. 801(c). Such statements are only admissible if they bear adequate indicia of reliability. *405 Condo Assocs. LLC v. Greenwich Ins. Co.*, 2010 U.S. Dist. LEXIS 181922, *13 (S.D.N.Y. 2012). Documents that are considered sufficiently reliable to be admissible are detailed under Rule 803. *See generally* Fed. R. Evid. 803.

Jacoby's Report, is an out of court statement. Expert reports are not an exception listed under Rule 803. As such, no exception applies to the Jacoby Report. Further, the report contains purportedly expert opinions without a proper proponent to explain it. Although Jacoby has been designated as an expert in this case, he is not a proper expert and his opinions fall far short of the standards for experts set by the rules of evidence and *Daubert*. Thus, any testimony from him regarding the explanation of his report or findings contained therein is inadmissible. Therefore, the report is inadmissible under Federal Rule of Evidence 801, at least as to the electrical components it addresses.

### D. Jacoby's Testimony and Report Should Be Excluded Because Each Violates Fed. R. Evid. 401

Under the Federal Rules of Evidence, evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" is "generally admissible." Fed. R. Evid. 401, 402.

Jacoby is an expert witness hired well into the litigation process who lacks actual knowledge of any facts. His knowledge is based almost entirely on information received

from counsel or other witnesses in the case. The only tunnel visit he made was to ERT Line 4, which was not inundated with Sandy waters. Accordingly, Jacoby has no factual information and will not make the existence of any fact more or less likely. He should not be permitted to testify as a lay witness at trial.

## **CONCLUSION**

For all of the foregoing reasons, Amtrak respectfully requests that its Motion To Strike the Expert Testimony and Report of David Jacoby should be granted in its entirety.

Dated: June 30, 2015

By: /s/
Rhonda D. Orin, Esq. (RO-0359)
rorin@andersonkill.com
Daniel J. Healy, Esq. (DH-7396)
dhealy@andersonkill.com
Marshall Gilinsky, Esq. (MG-8398)
mgilinsky@andersonkill.com
ANDERSON KILL, L.L.P.
1717 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-416-6500

Finley T. Harckham, Esq. (FH-8219)
fharckham@andersonkill.com
Peter A. Halprin, Esq. (PH-2514)
phalprin@andersonkill.com
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

*Attorneys for Plaintiff*