**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> ARCH SPECIALTY INSURANCE COMPANY; <br> ASPEN SPECIALTY INSURANCE COMPANY; <br> COMMONWEALTH INSURANCE COMPANY; <br> FEDERAL INSURANCE COMPANY; <br> LEXINGTON INSURANCE COMPANY; <br> LIBERTY MUTUAL FIRE INSURANCE COMPANY; <br> CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON <br> and CERTAIN LONDON MARKET INSURANCE <br> COMPANIES subscribing to Policy Nos. <br> 507/N11NA08240, 507/N11NA08241, 507/N11NA08242, <br> 507/N11NA08244, 507/N11NA08244, 507/N11NA08245 <br> and GEP 2944; <br> MAIDEN SPECIALTY INSURANCE COMPANY; <br> MAXUM INDEMNITY COMPANY; <br> NAVIGATORS INSURANCE COMPANY; <br> PARTNER REINSURANCE EUROPE plc; <br> RSUI INDEMNITY COMPANY; <br> SCOR GLOBAL P & C; <br> STEADFAST INSURANCE COMPANY; <br> TORUS SPECIALTY INSURANCE COMPANY; and <br> WESTPORT INSURANCE CORPORATION, <br><br><br> Defendants. | Civ. Action No.:14-cv-7510 (JSR) <br><br><br><br> **ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION TO EXCLUDE THE TESTIMONY AND REPORTS**
**OF ROBERT VECCHIO AND SAUL LIEBERMAN**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ............................................................................................................. 3

I.    Dr. Vecchio's and Dr. Lieberman's Testimony and Reports Are
      Inadmissible Because They Are Lay Witnesses .................................................. 4

      A.    Dr. Vecchio's and Dr. Lieberman's Proposed Testimony Is
            Prohibited by Rule 701 .............................................................................. 4

      B.    Dr. Vecchio's and Dr. Lieberman's Testimony Are
            Inadmissible Because They Were Not Disclosed as Expert
            Witnesses ................................................................................................ 6

      C.    Dr. Vecchio's and Dr. Lieberman's Testimony Is Prohibited
            by Rule 602 .............................................................................................. 8

II.   Dr. Vecchio's and Dr. Lieberman's reports should be excluded
      because they violate Rule 801 ........................................................................... 11

III.  Dr. Vecchio's and Dr. Lieberman's testimony and reports should be
      should be excluded because they violate Rule 401 ............................................ 12

IV.   Dr. Vecchio's and Dr. Lieberman's testimony and reports are
      inadmissible because they do not meet the standards of scientific
      testimony required by Daubert and its progeny. ................................................. 13

V.    Dr. Vecchio's and Dr. Lieberman's testimony and reports should be
      excluded because they violate Rule 403. ........................................................... 15

CONCLUSION .......................................................................................................... 17

nydocs1-1051540.3
nydocs1-1051540.3

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

CASES

*405 Condo Assocs. LLC v. Greenwich Ins. Co.*,
  No. 11 Civ. 9662, 2010 U.S. Dist. LEXIS 181922
  (S.D.N.Y. Dec. 26, 2012) ................................................................................. 9, 11

*523 IP LLC v. CureMD.Com*,
  48 F. Supp. 3d 600 (S.D.N.Y. 2014) ........................................................................ 5

*Bank of China v. NBM LLC*,
  359 F.3d 171 (2d Cir. 2004) ................................................................................... 5

*Capitol Records, LLC v. Escape Media Group, Inc.*,
  12-CV-06646 (AJN) (SN), 2014 U.S. Dist LEXIS 183098
  (S.D.N.Y. May, 28, 2014) ....................................................................................... 7

*Daubert v. Merrell Dow Pharmaceuticals*,
  509 U.S. 579 (1993), and (5) ................................................................... 4, 13, 15, 16

*DVL, Inc. v. Niagara Mohawk Power Corp.*,
  490 F. App'x 378 (2d Cir. 2012) ...................................................................... 4, 7, 8

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ................................................................................. 13

*Pretter v. Metro N. Commuter R.R.*,
  206 F. Supp. 2d 601 (S.D.N.Y. 2002) (Rakoff, J.) ................................................... 13

*U.S. v. Fama*,
  12-CR-186 (WFK), 2012 U.S. Dist. LEXIS 174887
  (E.D.N.Y. Dec. 10, 2012) ........................................................................................ 4

*U.S. v. Garcia*,
  413 F.3d 201 (2d Cir. 2005) ................................................................................... 5

OTHER AUTHORITIES

Fed. R. Civ. P. 26 ........................................................................................................ 2

Fed. R. Civ. P. 26(a)(2) ........................................................................................... 1, 3

Fed. R. Civ. P. 26(a)(2)(A) ......................................................................................... 6

Fed. R. Civ. P. 26(a)(2)(B) ......................................................................................... 6

Fed. R. Civ. P. 26(a)(2)(C) ......................................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

Fed. R. Civ. P. 37(c)(1) ................................................................. 1, 3, 7

Fed. R. Evid. 401 ........................................................................ 1, 3, 12

Fed. R. Evid. 402 ............................................................................... 12

Fed. R. Evid. 403 ....................................................................... 1, 3, 15

Fed. R. Evid. 602 .................................................................... 1, 3, 8, 9

Fed. R. Evid. 701 ................................................................. 1, 2, 3, 4, 5

Fed. R. Evid. 701(c) ............................................................................. 5

Fed. R. Evid. 702 ............................................................................ 4, 13

Fed. R. Evid. 801 ............................................................................... 12

Fed. R. Evid. 801(c) ........................................................................... 11

Fed. R. Evid. 803 ............................................................................... 11

2000 Advisory Committee Notes, Fed. R. Evid. 201 ........................... 5

nydocs1-1051540.3
nydocs1-1051540.3

Plaintiff National Railroad Passenger Corporation ("Amtrak") submits this Memorandum of Law in Support of Plaintiff's Motion to Exclude the Reports and Testimony of Robert Vecchio and Saul Lieberman.

## PRELIMINARY STATEMENT

Plaintiff respectfully requests that the Court preclude the testimony and reports of Robert Vecchio and the testimony of Saul Lieberman, both of LPI, Inc., Consulting Engineers ("LPI").  Preclusion is warranted by the Federal Rules Civil Procedure 26(a)(2) and 37(c) and Federal Rules of Evidence 701, 602, 401 and 403.  Dr. Vecchio is a licensed professional engineer with a Ph.D. in Fracture Mechanics.  Dr. Lieberman is a licensed professional engineer with a Ph.D. in Materials Science and Engineering. They oversaw the sampling and testing of various components of the metallic portions of the damaged structures in this case, including the third rail and running rail and in Amtrak's tunnels, and issued a series of reports addressing the results.  However, neither Dr. Vecchio nor Dr. Lieberman was named as an expert in this action.  As such, their testimony and reports are inadmissible.

Drs. Vecchio and Lieberman were retained by Defendants to serve as expert consultants during the insurance adjusting process that preceded this lawsuit.  Between March 2014 and April 2014, Drs. Vecchio and Lieberman proposed a series of protocols to sample and test the metallic components of Amtrak's damaged property, purportedly to help ascertain the impacts of Superstorm Sandy.  Although they identified the testing protocols that they deemed appropriate, based on their expertise, the testing approach actually followed was altered considerably following conversations with Mark Andrews of Thornton Tomasetti, a lead member of Defendants' adjustment team. Drs. Vecchio and

Lieberman ultimately proceeded with four test methodologies, none of which directly addressed whether chloride was present on the rails.  Drs. Vecchio and Lieberman oversaw the sampling and collection efforts in accordance with the protocol and issued a series of twelve reports, which collect, assemble, interpret and draw conclusions on the testing results obtained.[1]  Uniformly, those reports conclude that: (1) there was no observable damage to metallic components, including rail or third rail components of Amtrak's facilities as a result of Sandy; (2) no correlations could be drawn from the testing results to Sandy-affected locations; and (3) no correlations could be drawn between inundated and uninundated areas or water levels in Amtrak's facilities.

Drs. Vecchio and Lieberman have been listed as fact witnesses on Defendants' Rule 26 disclosures.[2] But their only connection to this case, however, is their oversight of certain testing that they memorialized in reports.  These reports and any expected testimony involve specialized education, training and experience.  Thus, Drs. Vecchio and Lieberman could only aid the jury if they were named and disclosed as expert witnesses.  But Dr. Vecchio and Dr. Lieberman have never been disclosed as expert witnesses and their reports do not meet the requirements of Rule 26(a)(2).  Accordingly, their reports and expected testimony are inadmissible under Rule 701.

In addition, other than first-hand personal observations made during tunnel walk-throughs, any testimony from Dr. Vecchio or Dr. Lieberman represents hearsay, and in

---

[1]    Examples of the reports of Drs. Vecchio and Lieberman which should be excluded can be found at DX 1447-1454, annexed as Ex. A to the Declaration of Rhonda D. Orin, dated June 30, 2015 ("Orin Decl.").  Per Your Honor's Individual Rules of Practice, these examples of the inadmissible reports will be provided directly to the Court.

[2]    *See* Certain Insurers' Initial Disclosures, dated November 10, 2014, annexed as Ex. B to the Orin Decl., at 7.

2

many cases multiple levels of hearsay, since they relied upon the work of others in

evaluating and interpreting the data and information received.  With the exception of

certain "hardness" tests performed by Dr. Lieberman, no tests were actually performed

by Dr. Vecchio or Dr. Lieberman.  Instead, the tests were performed by others and were

reported to and reviewed by Dr. Vecchio and Dr. Lieberman, who then reduced the data

to a series opinions and conclusions contained in their pre-litigation reports.  The

witness or witnesses who did the work will not be before the court and will not be

subject to cross-examination.  This is the essence of the hearsay-based objection,

which applies directly in this case - an inability to cross-examine a critical witness

concerning his or her observations.  Without the opportunity to cross-examine the actual

witnesses who did the work, Plaintiff is denied the opportunity to test the reliability of the

analysis and conclusions of Dr. Vecchio and Dr. Lieberman.

Finally, the testimony and reports of Dr. Vecchio and Dr. Lieberman are irrelevant

and prejudicial in violation of Rules 401 and 403.  They do not tend to prove anything

and seek unfairly to prejudice the fact finder with irrelevant or marginally relevant

evidence.

For all the foregoing reasons, and as discussed in more detail below, Plaintiff

respectfully requests that the Court preclude the testimony and reports of Dr. Vecchio

and Dr. Lieberman in accordance with Federal Rules of Civil Procedure 26(a)(2) and

37(c) and Federal Rules of Evidence 701, 602, 401 and 403.

## ARGUMENT

The testimony and reports of Dr. Vecchio and Dr. Lieberman do not meet the

standards for admissibility under the Federal Rules of Evidence or Civil Procedure.

Their opinion testimony should be excluded because: (1) it is expert testimony only and their reports require expert testimony to interpret, yet they have not been named as experts; (2) their reports and testimony are hearsay without an applicable exception; (3) their testimony is irrelevant because it does not tend to make any fact of consequence more or less likely; (4) their reports and the data and analysis on which they are based do not meet the standards of Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and (5) their reports are unfairly prejudicial.

## I.   DR. VECCHIO'S AND DR. LIEBERMAN'S TESTIMONY AND REPORTS ARE INADMISSIBLE BECAUSE THEY ARE LAY WITNESSES

### A.   Dr. Vecchio's and Dr. Lieberman's Proposed Testimony Is Prohibited by Rule 701.

Under Federal Rule of Evidence 701, opinions or inferences of a lay witness are limited to those that are: "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701; *see also U.S. v. Fama*, 12-CR-186 (WFK), 2012 U.S. Dist. LEXIS 174887 (E.D.N.Y. Dec. 10, 2012).  According to Federal Rule of Evidence 701, "lay testimony results from a process of reasoning familiar in everyday life" whereas "expert testimony results from a process of reasoning which can be mastered only by specialists in the field."  *Id. see also DVL, Inc. v. Niagara Mohawk Power Corp.*, 490 F. App'x 378, 380-81, (2d Cir. 2012) (striking proposed engineer's testimony as undisclosed expert testimony). Rule 701 is intended to reduce: (1) the risk that the reliability requirements set forth in Rule 702 will be evaded through offering an expert witness in lay witness clothing; and (2) the risk that a party may evade the

4

disclosure requirements of Rule 26 by calling an expert witness as a lay witness. *See* Fed. R. Evid. 701, 2000 Advisory Committee Notes.  *See also U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005); *523 IP LLC v. CureMD.Com*, 48 F. Supp. 3d 600 (S.D.N.Y. 2014). It is possible for the same witness to provide lay and expert testimony in a single case, but before such expert testimony can be proffered pursuant to Rule 702, a party must satisfy the disclosure requirements of the Federal Rules of Civil Procedure.  *Bank of China v. NBM LLC*, 359 F.3d 171, 182 (2d Cir. 2004).

Pursuant to Defendants' Rule 26(a)(2) disclosures, Dr. Vecchio and Dr. Lieberman are not designated as expert witnesses.[3]  Therefore, each must be a fact or lay witness.  Federal Rule of Evidence 701 prohibits lay witnesses from testifying as to scientific, technical or other specialized knowledge, which would otherwise be under the scope of Rule 702 of the Federal Rules of Evidence.  Fed. R. Evid. 701(c).

The testimony of Dr. Vecchio and Dr. Lieberman fall within Rule 702, not 701. Dr. Vecchio is a professional engineer.[4]  He has two masters' degrees – one in Fracture Mechanics and another in Metallurgical Engineering, as well as a Ph.D. in fracture mechanics.[5]  Dr. Vecchio has spent his professional career at LPI, where he is the CEO and an equity owner.[6]   Dr. Lieberman is also a professional engineer who holds a

---

[3]      *See id.*

[4]      *See* Deposition of Robert Vecchio, dated  February 6, 2015, annexed as Ex. C to the Orin Decl., at 72:16-23.

[5]      Orin Decl., Ex. C at 23:24-24:20.

[6]      *Id.* at 6:7- 7:7.

Ph.D. from the Georgia Institute of Technology in Material Science and Engineering. [7]

Both of these specialist, professional engineers utilized their specific technical areas of expertise to oversee a testing protocol not chosen by them, but involving scientific analysis and interpretation culminating in a series of reports and conclusions. In fact, their scientific qualifications appear to be the precise reason they were engaged in this matter.  Their reports identify their evaluation as "an investigation of Superstorm Sandy effects of metallic components at Amtrak's facilities. [8]"  Their reports continue, stating that "[t]hese analyses were conducted to help assess the effects of brackish water inundation during Superstorm Sandy…."[9]  Clearly, the proposed testimony of Dr. Vecchio and Dr. Lieberman does not amount to lay testimony and their analyses and reports fall squarely under the prohibitions of Rule 701(c).

### B.      Dr. Vecchio's and Dr. Lieberman's Testimony Are Inadmissible Because They Were Not Disclosed as Expert Witnesses

Rule 26(a)(2)(A) requires a party to disclose all witnesses that it intends to call as experts at trial.  Under Rule 26(a)(2)(B) experts who are specially retained to give testimony, or regularly give testimony as part of their duties, must produce a written report with (a) a complete statement of all opinions the witness will express and the basis and reasons for them; (b) the facts and data considered by the witness in forming them; (c) any exhibits that will be used to summarize or support them; (d) the witness' qualifications, including a list of all publications authored in the previous 10 years; (e) a

---

[7]     *See* Deposition of Scott Lieberman, dated March 18, 2015, annexed as Ex. D to the Orin Decl., at 8: 2-6.

[8]     *See* Orin Decl., Ex. C at 227:22- 228:11 (discussing Vecchio Ex.19, p. 2).

[9]     *Id.*

list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (f) a statement of the compensation to be paid for the study and testimony in the case.  Under Rule 26(a)(2)(C) even if the individual is not specially retained for the case, he or she must still provide a summary of the facts and opinions to which the witness is expected to testify and fully disclose the subject matter on which the witness is expected to present evidence.

Under Rule 37(c)(1), if a party fails to make these required disclosures, the court may prohibit the party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also Capitol Records, LLC v. Escape Media Group, Inc.*, 12-CV-06646 (AJN) (SN), 2014 U.S. Dist LEXIS 183098 (S.D.N.Y. May 28, 2014).  Indeed, this Court has gone so far as to note that untimely expert submissions "are not admissible [at trial] unless the proponent of the evidence can demonstrate that their delay in complying with the required deadlines was 'substantially justified' or that it was harmless, that is, that it did not prejudice the other side. " *Capitol Records*, 2014 U.S. Dist. LEXIS at *24-25 (*quoting Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037, 2005 U.S. Dist. LEXIS 44802, at *8 (S.D.N.Y.  Apr. 11, 2005)).

In *DVL, Inc.*, the Second Circuit upheld the striking of an engineer's proposed expert testimony because it violated Federal Rule of Evidence 701 and Federal Rule of Civil Procedure 26.  490 F. App'x at 381-382. The engineer was proposing to offer conclusions as to the presence and migration of certain chemicals in water.  The court held that these conclusions and opinions required scientific evidence and specialized experience.   *Id.* at 381. The Second Circuit further held that the expert's undisclosed

opinions were not harmless, as the mere designation of the witness as a lay or fact witness in the proffering party's pre-trial disclosures did not adequately put the opposing party on notice of the opinions of the proposed expert, particularly not that he would be offering unique opinions.  *Id.* (The engineer in question was an employee of the New York Department of Environmental Quality, a non-party to the litigation.  He performed an investigation and, at trial, proposed to offer certain conclusions that went beyond the findings of the Department of Environmental Quality generally.)

Dr. Vecchio's and Dr. Lieberman's opinions are not admissible unless Defendants can show that failure to adhere to the Federal Rules is "substantially justified" or "harmless."  But that is not the case for the reasons set forth above.  In addition, as set forth in Section 3, *infra*, Plaintiff was not able to test the methodologies or, ultimately, the conclusions of Dr. Vecchio and Dr. Lieberman because they performed very little of the actual work themselves.

### C.  Dr. Vecchio's and Dr. Lieberman's Testimony Is Prohibited by Rule 602.

Lay witness testimony is limited to matters in which the witness has personal knowledge.  Fed. R. Evid. 602.  Federal Rule of Evidence 602 states "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony."  Rule 602 requires a witness to "be a percipient witness whose testimony is grounded in first-hand information obtained through one of her or her five senses . . . .The required threshold . . . however, is low, requiring only enough 'to support a finding' by some rational juror of

personal knowledge. "  *405 Condo Assocs. LLC v. Greenwich Ins. Co.*, No. 11 Civ. 9662, 2010 U.S. Dist. LEXIS 181922, *13 (S.D.N.Y. Dec. 26, 2012).

Even by Rule 602's low standard, Dr. Vecchio and Dr. Lieberman do not have personal knowledge of any facts of importance.  In fact, Dr. Vecchio's deposition testimony is more notable for what he did not do and did not know than the converse. What Dr. Vecchio did "know" was his conclusory and unsubstantiated "expert" opinions, as stated in the various reports that he signed.  But when asked details about how he came to those opinions and conclusions, Dr. Vecchio did not know or recall any details of the following:

- Whether the scope of his work included metallic components in the benchwall or tunnel lining;[10]

- Whether as of March 2014, when addressing protocols, he knew it was related to Superstorm Sandy;[11]

- Whether his company performed their chloride analysis using ion chromatography;[12]

- Whether his company did x-ray energy dispersive spectroscopy;[13]

- Whether he recommended that any particular tests be performed;[14]

- Whether he recommended that any tests be taken of the concrete liner or benchwalls;[15]

---

[10]   Orin Decl., Ex. C at 103:25-104:6.

[11]   *Id.* at 107:25-104:8.

[12]   *Id.* at 117:15-20 (discussing deposition Exhibit 5).

[13]   *Id.* at 118:18-119:2.

[14]   *Id.* at 123:13-16.

[15]   *Id.* at 128:10-16.

nydocs1-1051540.3
nydocs1-1051540.3

- Whether he took samples of the rail, third rail or fasteners;[16]

- Whether he ever considered testing the metallic components within the tunnel, including the ladders and refuse niches;[17]

- How the zones of inundation, which set out the testing methodology, came to be determined;[18] and

- What methodology was used to test for chlorides and/or are available to test for chlorides;[19]

- What EPA Method 300.0 is, how it is used and what it tests.[20]

This last item underscores the problem with Dr. Vecchio's lack of first-hand knowledge regarding his sampling, testing, analysis, reporting and the reason he should not be allowed to testify in any capacity -- fact witness or otherwise.  A critical component of his reports, analyses and opinions involves the chloride testing that was overseen by his company through a testing lab locally known as LTI.[21]  Dr. Vecchio's and Dr. Lieberman's chloride testing methodology called for samples to be taken in accordance with the Society for Protective Coatings Technology Guide 15 ("SSPC"), as modified by Dr. Vecchio and Dr. Lieberman.[22]  The samples were then sent to an

---

[16]     *See id.* at 128:4-9.

[17]     *See id.* at 130:2-12.

[18]     *See id.* at 138:14-20.

[19]     *See id.* at 142:10-19.

[20]     *See id.* at 146:4-18.

[21]     LTI is an independent testing laboratory, unassociated with LPI.  *See id.* at 47:7-19.

[22]     *See id.* at 39:12-15; 109:5-110:5; Orin Decl, Ex. D at 14:17-15:15.

10

independent laboratory by the name of Laboratory Testing Inc. ("LTI").[23]  Unfortunately, Drs. Vecchio's and Dr. Lieberman's reports fail to identify LTI and fail to identify any specification at all.  They simply discuss their results without referencing a standard to which LPI tested.[24]

As a result, Dr. Vecchio and Dr. Lieberman have little personal knowledge of any fact of relevance to this claim.  Dr. Vecchio and Dr. Lieberman did not perform testing themselves.  They did not know why certain tests were useful or should be performed. Because Dr. Vecchio and Dr. Lieberman do not meet the standards set forth by Rule 602, they should be prohibited from testifying as fact witnesses.

## II.   DR. VECCHIO'S AND DR. LIEBERMAN'S REPORTS SHOULD BE EXCLUDED BECAUSE THEY VIOLATE RULE 801.

Out-of-court statements that are introduced to prove the truth of the matter asserted are considered hearsay. Fed. R. Evid. 801(c). Such statements are only admissible if they bear adequate indicia of reliability. *405 Condo Assocs. LLC*, 2012 U.S. Dist. LEXIS at *14. Documents that are considered sufficiently reliable to be admissible are detailed under Rule 803.  *See generally* Fed. R. Evid. 803.

Dr. Vecchio and Dr. Lieberman's reports are out of court statements and hearsay.  In addition, because the tests referenced in those reports were performed by others, the results amount to hearsay-within-hearsay.  Expert reports and test results done by others are not an exception under Rule 803.  As such, no exception applies to Dr. Vecchio and Dr. Lieberman's reports or the data within them.

---

[23]    *See* Orin Decl., Ex. C at 146:25-147:22.

[24]    *See*, *e.g. id.* at 243:11-16, 247:5, 248:9.

Further, the reports contain scientific or technical data without a proper proponent to explain the data.  As noted above, Dr. Vecchio and Dr. Lieberman are not designated as experts in this matter, and any testimony from them regarding the explanation of their report or findings contained therein is inadmissible. Therefore, their reports are inadmissible under Rule 801.

**III.    DR. VECCHIO'S AND DR. LIEBERMAN'S TESTIMONY AND REPORTS SHOULD BE SHOULD BE EXCLUDED BECAUSE THEY VIOLATE RULE 401.**

Under the Federal Rules of Evidence, evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable" is "generally admissible."  Fed. R. Evid. 401, 402.

The only thing Dr. Vecchio and Dr. Lieberman have done that does not encroach upon scientific or technical expertise is to visit the tunnels. Even physically taking samples utilizing a method that has been modified from an accepted methodology, SSPC Technical Guide 15, amounts to the work of an expert and requires specialized scientific or technical expertise.  Testimony to the effect that Dr. Vecchio and Dr. Lieberman visited the tunnels, however, is irrelevant unless Dr. Vecchio and/or Dr. Lieberman testify as to their professional opinions and observations as experts. This they cannot do.  Accordingly, it would serve no purpose, and would only serve to waste judicial time and resources, to have Dr. Vecchio or Dr. Lieberman testify as to their observations during their visits in the tunnels years after Superstorm Sandy.

**IV.   DR. VECCHIO'S AND DR. LIEBERMAN'S TESTIMONY AND REPORTS ARE INADMISSIBLE BECAUSE THEY DO NOT MEET THE STANDARDS OF SCIENTIFIC TESTIMONY REQUIRED BY *DAUBERT* AND ITS PROGENY.**

While Dr. Vecchio and Dr. Lieberman have not been named as experts, and while any testimony by them or use of the analysis and findings in their reports would be the subject of a further *Daubert* hearing, it is worth noting here that Dr. Vecchio's and Dr. Lieberman's testimony and reports, could not meet the scrutiny of Federal Rule of Evidence 702 and *Daubert* in any event.

The Supreme Court in *Daubert*, held that scientific evidence must be relevant, reliable, precise and falsifiable. 509 U.S. 579 (1993).  Expert testimony must also be given to a reasonable degree of scientific certainty.  *Pretter v. Metro N. Commuter R.R.,* 206 F. Supp. 2d 601, 603 (S.D.N.Y. 2002) (Rakoff, J.) (striking proposed expert's testimony because it was neither reliable nor to a reasonable degree of scientific certainty). Because the court is the "gatekeeper" of all proposed scientific testimony, it falls to the sitting judge to determine whether proposed scientific evidence is sufficiently relevant and reliable as to be helpful to the jury.  *Daubert*, 509 U.S. at 588; *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). The judge must determine whether the evidence will sufficiently assist the trier of fact as to be admissible. *Nimely*, 414 F.3d at 396.

Putting aside that  Dr. Vecchio's and Dr. Lieberman's work and reports are not given to a reasonable degree of scientific certainty.  their methodology is so inherently flawed as to be unreliable.  Dr. Lieberman's lack of involvement in the entire protocol and testing process demonstrates the serious deficiencies in methodology. First, while Dr. Lieberman prepared the protocol specifying the sampling method for chloride testing

13

utilizing SSPC Technology Guide 15, Dr. Lieberman admitted that he modified SSPC Technology Guide 15 in accordance with his experience.  Yet, when questioned further, he admitted that he could not recall a single instance of having performed sampling or swab testing using SSPC Technology Guide 15.[25]   Instead, he admitted that he was relying upon the experience of others.[26]

Second, Dr. Lieberman admitted that he did not independently determine the general areas to be inspected.  That decision was made by Defendants' agent, Thornton Tomasetti.  The same is true for the ultimate determination of which tests to perform.  Thornton Tomasetti initially directed Dr. Lieberman to provide a general summary of his inspection and engineering services, but Thornton Tomasetti then identified what tests to perform, without recommendation or input from Dr. Lieberman. This direction included the decision *not* to perform certain tests that Dr. Lieberman knew that those test would prove useful in making an assessment of corrosion of metals.[27] The decision not to perform any laboratory testing of metals, for example, as addressed in Dr. Lieberman's protocol, came from Thornton Tomasetti as well.[28]  In fact, Dr. Lieberman admitted repeatedly that neither he nor his company, LPI, made any of the decisions regarding testing or what tests to perform.[29] All of those critical decisions were made by Defendants' agent, Thornton Tomasetti.

---

[25]     Orin Decl., Ex D. at 16:17; 17:4.

[26]     *See id.* at 17:5-20.

[27]     *See id.* at. 25:10; 27:6; 30:6-12

[28]     *See id.* at. 31:4-14.

[29]     *See id.* at 39:4-23; 44:7-18.

It is little surprise, therefore, that the tests that were done are unreliable in answering the questions at hand.  For example, two of the tests performed by Dr. Vecchio and Dr. Lieberman, Hardness and XRF testing, are meaningless for purposes of evaluating corrosion of metals.  Even Defendants' railroad expert, Philip Walsh of Alfred Benesch and Company, questioned the basis for such testing.  In an email about LPI's proposed protocol, he advised that he is "[n]ot sure what the basis of hardness testing is?"[30]

Ultimately, Dr. Vecchio and Dr. Lieberman performed tests that they were directed to perform by others.[31]  They made no independent scientific analysis regarding what tests to perform or the usefulness of those tests.[32]  The only work that either of them did of relevance was to walk through the tunnels. That is not the type of effort that can withstand *Daubert* scrutiny and such speculative, admittedly meaningless, and unreliable opinions are not admissible.

## V.   DR. VECCHIO'S AND DR. LIEBERMAN'S TESTIMONY AND REPORTS SHOULD BE EXCLUDED BECAUSE THEY VIOLATE RULE 403.

Testimony must be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403.  Under *Daubert*, the court has a special

---

[30]   *See* Email communications between Mark Andrews and Phil Walsh, dated April 24, 2014, annexed to the Orin Decl. as Ex. E.

[31]   *See* Ex. D at 39:4-23, 41:12-24, 44:7-18.

[32]   *See id.*

responsibility to weigh the potential prejudice of expert testimony against its probative value.  This responsibility arises because of the high likelihood of prejudice if a jury is permitted to hear what is termed expert testimony.  As a result, *Daubert* directs that the court exercise more control over expert testimony and evidence than over lay witnesses testimony and evidence.

In this case, the lack of useful testing, the avoidance of meaningful testing, and the lack of knowledge concerning the testing that was performed amounts to unfair prejudice to Plaintiff.  To allow Drs. Lieberman or Vecchio to testify regarding what little first-hand, factual knowledge either had would be a waste of judicial time and cause undue delay, because neither man has any unique factual knowledge.

**CONCLUSION**

For the foregoing reasons, Plaintiff Amtrak respectfully requests that its Motion In Limine to Exclude Testimony and Report of Dr. Robert Vecchio and Dr. Saul Lieberman be granted in its entirety.

Dated:  June 30, 2015

Respectfully Submitted,

/s/ _____
Rhonda D. Orin, Esq. (RO-0359)
rorin@andersonkill.com
Daniel J. Healy, Esq. (DH-7396)
dhealy@andersonkill.com
Marshall Gilinksy, Esq. (MG-8398)
mgilinsky@andersonkill.com
ANDERSON KILL, L.L.P.
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: 202-416-6500


Finley T. Harckham, Esq. (FH-8219)
fharckham@andersonkill.com
Peter A. Halprin, Esq. (PH-2514)
phalprin@andersonkill.com
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
Telephone:  212-278-1000

*Attorneys for Plaintiff*

17