```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x
NATIONAL RAILROAD PASSENGER CORPORATION,          :

                    Plaintiff,                    :

                                                  :
     -against-                                    :

                                                  :
ARCH SPECIALTY INSURANCE COMPANY;                 :
ASPEN SPECIALTY INSURANCE COMPANY;                :
COMMONWEALTH INSURANCE COMPANY;                   :
FEDERAL INSURANCE COMPANY;                        :
LEXINGTON INSURANCE COMPANY;                      :
LIBERTY MUTUAL FIRE INSURANCE COMPANY;            :
CERTAIN UNDERWRITERS AT LLOYD'S OF                :
LONDON and CERTAIN LONDON MARKET                  :
COMPANIES Subscribing to Policy Nos.              :
507/N11NA08240, 507/N11NA08241,                   :
507/N11NA08242, 507/N11NA08244,                   :
507/N11NA08244, 507/N11NA08245 and GEP 2944;      :
MAIDEN SPECIALTY INSURANCE COMPANY;               :
MAXUM INDEMNITY COMPANY;                          :
NAVIGATORS INSURANCE COMPANY;                     :
PARTNER REINSURANCE EUROPE plc;                   :
RSUI INDEMNITY COMPANY;                           :
STEADFAST INSURANCE COMPANY;                      :
TORUS SPECIALTY INSURANCE COMPANY;                :
and WESTPORT INSURANCE CORPORATION,               :
                                                  :
                    Defendants.                   :
------------------------------------------------x
```

┌──────────────────────────────┐
│ **USDC SDNY**                │
│ **DOCUMENT**          .      │
│ **ELECTRONICALLY FILED**     │
│ **DOC #:**_____      │
│ DATE FILED: 9/26/18          │
└──────────────────────────────┘

14-cv-7510 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

Superstorm Sandy, among so much other damage, caused direct
and indirect problems to the tunnels that carry train traffic
underneath the Hudson River. Various plans to get the tunnels
(which were built in 1910) adequately repaired or replaced have
been mired ever since in political controversies and

1

administrative intransigence that appears to be interminable. This epidemic of delay has now infected even the one small aspect of the dispute currently before this Court.

By way of background, one effect of Superstorm Sandy (which struck New York on October 29, 2012) was to flood substantial portions of the tunnels that carry trains under the Hudson River. In 2014, the National Railroad Passenger Corporation (commonly known as "Amtrak") brought the instant lawsuit, seeking to collect on several insurance contracts that allegedly covered this and other damage. One of the many contractual provisions at issue was a "demolition and increased cost of construction" clause (the "DICC clause") present in each of the insurance policies. This clause provides that the insurers are liable for various costs relating to the demolition, repair, or reconstruction of undamaged property if the damage covered by the policies "cause[d] the enforcement of any law, ordinance, governmental directive or standard regulating the construction, repair, use, or occupancy of property." E.g., Federal Ins. Co. Policy ¶ 8.A. This clause was of importance if, as seemed not unlikely, Amtrak was required to repair the tunnels portal-to-portal, let alone if new tunnels were required.

In 2015, this Court held that Amtrak was not entitled to collect under the DICC Clause because no law or governmental directive had been enforced against it. Nat'l R.R. Passenger

2

Corp. v. Arch Specialty Ins. Co., 124 F. Supp. 3d 264, 278-79

(S.D.N.Y. 2015). Accordingly, the Court granted summary judgment

to the insurers on this issue, as well as on several others. On

appeal, the Court of Appeals for the Second Circuit, while

otherwise affirming this Court's rulings, vacated the grant of

summary judgment on the DICC Clause issue. Nat'l R.R. Passenger

Corp. v. Aspen Specialty Ins. Co., 661 Fed. App'x 10, 14-15 (2d

Cir. 2016). Specifically, the Court of Appeals, while agreeing

"that Amtrak is not entitled to [DICC] coverage as of now," held

that the grant of summary judgment was "premature" because "a

directive from the [Federal Railroad Administration] or a

requirement of the [Americans with Disabilities Act] may

obligate Amtrak to make changes to undamaged portions of the

tunnels in the future." Id. at 15 & n.4.[1]

On remand, after consulting with the parties, this Court

ordered that the proceedings be stayed, with status updates

every six months. See Order, ECF No. 347. The Court further

ordered that if no new claims were filed by December 1, 2018,

the case would be dismissed without prejudice. Id.

In April of 2018, Amtrak notified the insurers and the

Court that it was pursuing its stayed DICC claims. Amtrak

---

[1] The insurers have taken the position, both in the Second Circuit and before this Court, that Amtrak cannot recover under the DICC in any event because the DICC's $125 million sublimit cannot be "stacked" on top of the $125 million sublimit for flood damage. Neither the Second Circuit nor this Court have yet ruled on that dispute, and the Court declines to do so now.

claimed that the Federal Railroad Administration ("FRA") had

"imposed a requirement on Amtrak to demolish and reconstruct

undamaged portions of the tubes under the Hudson River." Joint

Status Report (April 30, 2018) Exh. 1, at 1, ECF No. 352-1.

Amtrak based this assertion on the FRA's issuance in June 2017

of a Draft Environmental Impact Statement ("DEIS"), which

included the following language:

> As a result of steel corrosion that has caused the
> concrete to spall, the continuous bench walls and duct
> work cannot perform reliably or be repaired. While the
> tunnel is structurally sound and safe for continuing
> passenger rail use, these conditions necessitate that
> the existing bench walls be replaced with new bench
> walls. These should be constructed at the proper height
> to meet current fire-life safety standards (National
> Fire  Protection  Association  (NFPA)  130).  This
> replacement should occur portal to portal, since it is
> not practical to construct the middle portion of a bench
> wall at different height than the two ends, given that
> the bench wall operates as one continuous system
> providing emergency egress and housing duct work inside.
> . . .
>
> The damage to the bench walls and ballast and track
> systems necessitates full portal-to-portal replacement
> of these elements, which form integrated systems running
> the length of the tunnel. Moreover, both systems would
> need to be reconstructed to meet modern standards
> including fire and life safety; it would be both
> impractical and unsafe to reconstruct a portion of
> either system to a higher standard while other portions
> remain constructed to an older, incompatible standard.

Federal Railroad Administration, Hudson Tunnel Project Draft

Environmental Impact Statement, Ch. 1 § 1.4.1 (June 2017),

http://hudsontunnelproject.com/documents/deis/01%20Purpose%20and

%20Need.pdf. The insurers responded that the DEIS did not

4

constitute the enforcement of any law, since the FRA had not yet directed Amtrak to actually undertake the repairs and since the content of the final report might change. See Joint Status Report Exh. 2, at 2.

Following a conference with the parties on June 21, 2018, this Court agreed with the insurers that no action should be taken until a final order had issued. But it was this Court's fervent hope that the matter could be given urgent attention, so that the people of New York and New Jersey would not need to wait another decade or two before seeing some light at the end of these tunnels. The parties were therefore directed to organize a conference call with a representative from the FRA. See Order dated June 21, 2018, ECF No. 355. At that phone conference, which took place on July 12, the representative of the FRA, in response to the Court's entreaties that the matter be given expedited treatment, stated that they would do their best to proceed expeditiously but that it would be a matter of months before a final ruling issued, and could take more than a year. This gave the Court some hope, and accordingly it asked the parties and the FRA to convene another conference call on September 17, 2018, to give a status report.

But at the September 17 conference, the FRA effectively backtracked. Specifically, the FRA reported that it could no longer give even an estimate as to when the final EIS would be

5

completed. Indeed, despite repeated entreaties from this Court, the FRA representatives refused even to give a "worst-case scenario" projection.

The Court finds this astonishing. The Court understands that the completion of the final Environmental Impact Statement involves consultation between the FRA and numerous other agencies. But it is precisely the threat of interminable delay that this poses to the entire project that, one might have hoped, would lead the FRA, not only to expedite matters at its end, but also to solicit expedition from its sister agencies. As it is, the FRA representatives on the September 17 conference call were not willing to reassure the Court that the final EIS would even issue "sometime in the next 20 years." This response suggests, at a minimum, that the FRA is experiencing "tunnel vision," heedless of the impact of extended delay on the needs of the people. Is this any way to run a railroad?

Nonetheless, it is now clear that no final FRA directive will issue at any time even close to the December 1, 2018 deadline previously set by the Court. Accordingly, rather than wait until then, the Court hereby dismisses Amtrak's remaining claims without prejudice to being renewed if and when Amtrak is ordered to make repairs to the undamaged portions of the tunnels by the FRA (or any other governmental body with the authority to do so).

Clerk to enter judgment.

SO ORDERED.

Dated:    New York, NY

September $\partial 6$ 2018                    JED S. RAKOFF, U.S.D.J.